Marc A. Lackner (SBN 111753)
mlackner@reedsmith.com
Peter J. Kennedy (SBN 166606)
pkennedy@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
Telephone:   (213) 457-8000
Facsimile:    (213) 457-8080

Keith Noreika (admitted *pro hac vice*)
knoreika@cov.com
Andrew Soukup (admitted *pro hac vice*)
asoukup@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone:   (202) 662-6000
Facsimile:    (202) 778-5066

Attorneys for Defendant
BANK OF AMERICA, N.A.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD M. LUSNAK, on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>BANK OF AMERICA, N.A.; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 2:14-CV-01855-GHK-AJW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Hon. George H. King<br><br>Date:    September 29, 2014<br>Time:   9:30 a.m.<br>Courtroom:  650 |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DC: 5396480-2

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION .............................................................................................1

BACKGROUND ...............................................................................................2

    A.    The Parties...........................................................................2

    B.    Bank of America's Federal Authority To Make Mortgages and Provide Escrow Account Services. .........................................3

    C.    Plaintiff's Mortgage and Related Escrow Account. .................4

    D.    The Allegations In the First Amended Complaint....................5

PROCEDURAL STANDARD .............................................................................6

ARGUMENT ..................................................................................................7

I.    THE NATIONAL BANK ACT PREEMPTS PLAINTIFF'S STATE-LAW STATUTORY CLAIM. ..............................................................7

    A.    The Usual Presumption Against Preemption Does Not Apply To The National Bank Act. ................................................8

    B.    National Banks Have Federal Authority To Set Terms And Conditions For Their Mortgage Loans, To Offer Escrow Accounts, And To Charge Fees. ..............................................9

    C.    The National Bank Act And Accompanying OCC Regulations Preempt Plaintiff's Claims. ...................................................10

    D.    The Dodd-Frank Act Does Not Affect The Preemption Analysis. .............................................................................13

II.    PLAINTIFF FAILS TO STATE A CLAIM BASED ON FEDERAL LAW. ..................................................................................17

    A.    The HUD Handbook Does Not Require National Banks To Pay Interest On Escrow Account Balances...................................17

    B.    15 U.S.C. § 1639d Does Not Require National Banks To Pay Interest On Escrow Account Balances...................................18

III.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT. ...........................................................................20

CONCLUSION ...............................................................................................22

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
BANK OF AMERICA, N.A.'S MOTION TO DISMISS

1

# TABLE OF AUTHORITIES

2 **Cases**

3 *Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................6, 7

4 *Bank of Am. v. City & Cnty. of San Francisco*,
   309 F.3d 551 (9th Cir. 2002)....................................................8, 10, 13, 17
5

6 *Baptista v. JPMorgan Chase Bank, N.A.*,
   640 F.3d 1194 (11th Cir. 2011) ................................................................ 14

7 *Barnett Bank of Marion Cnty., N.A. v. Nelson*,
   517 U.S. 25 (1996) ...........................................................................passim

8 *Cassese v. Wash. Mut., Inc.*,
   2008 WL 8652499 (E.D.N.Y. Jun. 27, 2008) ...........................................21

9 *Copeland-Turner v. Wells Fargo Bank*,
   800 F. Supp. 2d 1132 (D. Or. 2011)..........................................................13
10

11 *Deming v. Merrill Lynch & Co.*,
   528 F. App'x 775 (9th Cir. 2013) ........................................................12, 15

12 *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
   458 U.S. 141 (1982) .............................................................................11, 21

13 *First Fed. Sav. & Loan Ass'n of Boston v. Greenwald*,
   591 F.2d 417 (1st Cir. 1979) .....................................................................11

14 *Flagg v. Yongers Sav. & Loan Ass'n*,
   396 F.3d 178 (2d Cir. 2005)..........................................................11, 13, 21
15

16 *Flagg v. Yonkers Sav. & Loan Ass'n*,
   307 F. Supp. 2d 565 (S.D.N.Y. 2004)........................................................21

17 *Gutierrez v. Wells Fargo Bank, N.A.*,
   704 F.3d 712 (9th Cir. 2012)...............................................................12, 15

18 *Hayes v. Wells Fargo Bank, N.A.*,
   2014 WL 3014906 (S.D. Cal. July 3, 2014)..........................................11, 13

19 *In re Mortgage Escrow Deposit Litig.*,
   1995 WL 59238 (N.D. Ill. Feb. 9, 1995).....................................................18
20

21 *Kho v. Wells Fargo & Co.*,
   2012 WL 3240041 (C.D. Cal. Aug. 6, 2012) ..............................................13

22 *Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994) ...................................................................................19

23 *Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001).........................................................................7

24 *Martinez v. Wells Fargo Home Mortgage, Inc.*,
   598 F.3d 549 (9th Cir. 2010)................................................................12, 13
25

26 *Monroe Retail, Inc. v. RBS Citizens, N.A.*,
   589 F.3d 274 (6th Cir. 2009).........................................................10, 13

27 *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*,
   513 U.S. 251 (1995) ...................................................................................11

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
BANK OF AMERICA, N.A.'S MOTION TO DISMISS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*O'Donnell v. Bank of Am., N.A.*,
 504 F. App'x 566 (9th Cir. 2013) .................................................. 12, 15

*Parks Sch. of Bus. v. Symington*,
 51 F.3d 1480 (9th Cir. 1995).......................................................... 6

*Patton v. Ocwen Loan Servicing LLC*,
 2011 WL 3236026 (M.D. Fla. July 28, 2011)................................. 18

*Rank v. Nimmo*,
 677 F.2d 692 (9th Cir. 1982)........................................................ 18

*Roberts v. Cameron-Brown Co.*,
 556 F.2d 356 (5th Cir. 1997)........................................................ 18

*Robinson v. Bank of Am., N.A.*,
 2011 WL 5870541 (C.D. Cal. Oct. 19, 2011).................................. 8

*Robinson v. Bank of Am., N.A.*,
 525 F. App'x 580 (9th Cir. 2013).................................................... 8

*Rose v. Chase Bank USA, N.A.*,
 513 F.3d 1032 (9th Cir. 2008)........................................................ 8

*Smiley v. Citibank (S.D.), N.A.*,
 517 U.S. 735 (1996) .................................................................... 13

*U.S. Bank N.A. v. Schipper*,
 812 F. Supp. 2d 963 (S.D. Iowa 2011)............................................ 14

*United States v. Locke*,
 529 U.S. 89 (2000) ...................................................................... 17

*Watters v. Wachovia Bank, N.A.*,
 550 U.S. 1 (2007) ...................................................................... 7, 8

*Wells Fargo Bank N.A. v. Boutris*,
 419 F.3d 949 (9th Cir. 2005)...................................................... 10, 11

*Whistler Invs., Inc. v. Depository Trust & Clearing Corp.*,
 539 F.3d 1159 (9th Cir. 2008)........................................................ 7

*Wis. League of Fin. Insts. v. Galecki*,
 707 F. Supp. 401 (W.D. Wis. 1989)................................................ 11

*Zlotnick v. U.S. Bankcorp*,
 2009 WL 5178030 (N.D. Cal. Dec. 29, 2009) ................................ 11

**Statutes**

12 U.S.C. § 21 historical & statutory note.............................................. 9

12 U.S.C. § 24(Seventh) ........................................................ 3, 9, 10, 15

12 U.S.C. § 25b ............................................................................ 16

12 U.S.C. § 25b(b) ........................................................................ 16

12 U.S.C. § 25b(b)(1) .................................................................... 14

12 U.S.C. § 25b(b)(1)(B) .......................................................... 14, 16

12 U.S.C. § 25b(b)(1)(C) ................................................................ 15

12 U.S.C. § 371 ...................................................................... 9, 10, 15

– iii –

12 U.S.C. § 371(a) ................................................................................................ 3, 9

12 U.S.C. § 2605 ...................................................................................................... 3

12 U.S.C. § 2609 ...................................................................................................... 3

12 U.S.C. § 5551 .................................................................................................... 16

15 U.S.C. § 1639d ...................................................................................... 17, 18, 19

15 U.S.C. § 1639d(a) ............................................................................................. 19

15 U.S.C. § 1639d(f)(2) ......................................................................................... 19

15 U.S.C. § 1639d(g) ......................................................................................... 2, 19

15 U.S.C. § 1639d(g)(3) ................................................................................. passim

Pub. L. 63-43, § 24 .................................................................................................. 9

Pub. L. 110-203, § 1400(c)(3) ............................................................................... 18

Pub. L. 111-203, § 1041 ........................................................................................ 16

Pub. L. 111-203, § 1041(a)(1) .............................................................................. 16

Pub. L. 111-203, § 1041(a)(2) .............................................................................. 16

Pub. L. 111-203, § 1043 ........................................................................................ 13

Pub. L. 111-203, § 1044 ........................................................................................ 16

Pub. L. 111-203, § 1048 ........................................................................................ 15

Pub. L. 111-203, § 1461 ........................................................................................ 17

Cal. Bus. & Prof. Code § 17200 .............................................................................. 6

Cal. Civ. Code § 2954.8 .................................................................................. passim

**Regulations**

12 C.F.R. § 7.4002(a) ........................................................................................... 10

12 C.F.R. § 34.4 ............................................................................................... 14, 15

12 C.F.R. § 34.4(a)(4) ....................................................................................1, 3, 12

12 C.F.R. § 34.4(a)(6) ....................................................................................1, 3, 11

12 C.F.R. § 560.2(a) .............................................................................................. 13

12 C.F.R. § 560.2(b) .............................................................................................. 11

12 C.F.R. § 560.2(b)(4) .......................................................................................... 13

12 C.F.R. § 560.2(b)(5) .......................................................................................... 13

12 C.F.R. § 560.2(b)(6) .................................................................................... 11, 13

**Other administrative materials**

Bureau of Consumer Financial Protection, *Designated  Transfer Date*,
     75 Fed. Reg. 57,252 (Sept. 20, 2010)................................................... 15, 18

HUD Handbook 4330.1, Rev-5 ........................................................................2, 6, 17

HUD Handbook 4330.1, Rev-5, § 2-5(C) ............................................................2, 17

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
BANK OF AMERICA, N.A.'S MOTION TO DISMISS

HUD, *Real Estate Settlement Procedures Act (Regulation X): Escrow Accounting Procedures*,
  59 Fed. Reg. 53,890 (Oct. 26, 1994) ............................................................... 17

OCC Interp. Ltr. 1041,
  2005 WL 3629258 (Sept. 28, 2005) ........................................................... 3, 10

OCC, *Bank Activities & Operations; Real Estate Lending & Appraisals*,
  69 Fed. Reg. 1904 (Jan. 13, 2004) ................................................................. 15

OCC, Conditional Approval No. 276,
  1998 WL 363812 (May 8, 1998) .......................................................... 3, 9, 10

OCC, Corporate Decision No. 99-06,
  1999 WL 74103 (Jan. 29, 1999) .................................................................. 10

OCC, *Dodd-Frank Act Implementation*,
  76 Fed. Reg. 43,549, 43,557 (July 21, 2011) ....................................... 14, 15

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
BANK OF AMERICA, N.A.'S MOTION TO DISMISS

# INTRODUCTION

Defendant Bank of America, N.A. ("Bank of America") is a national bank chartered under the National Bank Act.  The National Bank Act gives Bank of America broad authority to make mortgage loans and to provide escrow account services.  Under this grant of authority, Bank of America establishes for mortgage-loan customers, including Plaintiff, escrow accounts from which tax and insurance payments are made.

No federal law requires Bank of America to pay interest on these escrow account balances.  In addition, any state law that would "prevent or significantly interfere" with Bank of America's power to set the terms and conditions for mortgage loans and escrow accounts is preempted by the National Bank Act.  *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996).

Plaintiff nevertheless filed this Complaint to prevent Bank of America from offering escrow accounts to mortgage customers in California unless it first complies with a state-law requirement to pay interest on those account balances.  According to Plaintiff, Cal. Civ. Code § 2954.8 requires Bank of America to pay him an above-market rate of at least 2 percent interest on his escrow account balance.  Plaintiff also claims that Bank of America contractually agreed to comply with Section 2954.8.

For several reasons, Plaintiff's claims lack merit, and the First Amended Complaint (the "Complaint") should be dismissed.  *First*, Plaintiff's attempt to force Bank of America to comply with Section 2954.8 is preempted by the National Bank Act.  A state-law requirement to pay interest  "prevents or significantly interferes" with Bank of America's powers under the National Bank Act to offer mortgages and establish escrow accounts.  Federal regulations confirm this conclusion:  12 C.F.R. § 34.4 provides that state laws relating to "[t]he terms of credit" and "escrow accounts" are preempted.  12 C.F.R. § 34.4(a)(4), (6).  Plaintiff acknowledges that preemption applied until recently, but claims that Dodd-Frank somehow abrogated this preemption.  First Am. Compl. ¶¶ 3-4.  Yet none of the changes created by Dodd-

1  Frank applies to the preemption analysis here.  Any claims that rely on Section 2954.8
2  should therefore be dismissed.

3      *Second*, Plaintiff's assertion that federal law requires Bank of America to pay
4  interest lacks merit.  While the Complaint cites HUD Handbook 4330.1, that
5  Handbook has no legal force, and it actually undermines Plaintiff's position by
6  observing that "HUD regulations neither forbid nor require that escrow accounts earn
7  interest."  HUD Handbook 4330.1, Rev-5, § 2-5(C).  Plaintiff's reliance on 15 U.S.C.
8  § 1639d(g) is similarly misplaced.  That statute took effect nearly two years after
9  Plaintiff modified his mortgage agreement and does not apply to Plaintiff's escrow
10 account.  Moreover, Section 1639d(g) only requires interest payments if those
11 payments are otherwise required "by *applicable* State or Federal law."  15 U.S.C.
12 § 1639d(g)(3) (emphasis added).  No such *applicable* laws exist here.  Therefore, any
13 claims based on federal law should therefore be dismissed.

14     *Third*, Plaintiff's breach-of-contract claim depends on the assertion that Bank of
15 America voluntarily agreed to pay interest on Plaintiff's escrow account balance.  No
16 such agreement was made.  As Plaintiff admits, the mortgage agreement specifies that
17 Bank of America "shall not be required to pay [Plaintiff] any interest on earnings on
18 the Funds" unless "Applicable Law" required otherwise.  First Am. Compl. ¶ 10.
19 Since no "Applicable Law" required Bank of America to pay interest on escrow
20 account balances, Plaintiff's breach of contract claim should therefore be dismissed.

## BACKGROUND

21
22     **A.     The Parties.**

23     Plaintiff is a California resident who obtained a mortgage in July 2008, which
24 Plaintiff modified in "early 2011."  First Am. Compl. ¶ 15.

25     Defendant Bank of America is a national bank chartered under the National
26 Bank Act.  *See id.* ¶ 17.  Bank of America's predecessor originated Plaintiff's
27 mortgage, Bank of America agreed to modify Plaintiff's mortgage in early 2011, and
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 2 –

Bank of America currently owns and services Plaintiff's mortgage and related escrow account. *See id.* ¶¶ 15-17.

**B.      Bank of America's Federal Authority To Make Mortgages and Provide Escrow Account Services.**

National banks are empowered by the National Bank Act to "make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate." 12 U.S.C. § 371(a). National banks are also authorized to exercise "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24(Seventh). For nearly 40 years, the Office of the Comptroller of the Currency ("OCC") – the primary federal regulator of national banks – has recognized that these grants of authority permit national banks to "provid[e] escrow services in a variety of contexts." OCC Interp. Ltr. 1041, 2005 WL 3629258, at *2 (Sept. 28, 2005) (citing, among other authorities, Interp. Ltr. (May 13, 1975)).

Under an escrow account like the one at issue in the Complaint, a certain percentage of a customer's monthly mortgage payment is set aside to pay tax and insurance bills. *See, e.g.*, First Am. Compl. ¶¶ 11, 15, 17. This service provides a "benefit to the borrowers as it relieves them of the tasks of paying such regular tax and insurance obligations in a lump sum." OCC, Conditional Approval No. 276, 1998 WL 363812, at *9 (May 8, 1998). Escrow accounts are also often required by national banks making mortgage loans in order to protect their security interests.

No federal law requires national banks to pay interest on these escrow account balances. Instead, federal law closely regulates the circumstances when a national bank may require an escrow account and the maximum balance that may be held in that account. *See, e.g.*, 12 U.S.C. §§ 2605, 2609. Federal law also authorizes national banks to make real estate loans "without regard to state law limitations concerning … [t]he terms of credit" and "escrow accounts, impound accounts, and similar accounts." 12 C.F.R. § 34.4(a)(4), (6).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 3 –

### C.     Plaintiff's Mortgage and Related Escrow Account.

Plaintiff alleges that he entered into a mortgage contract with Countrywide Financial ("Countrywide") in 2008,[1] and that the mortgage is now owned by Bank of America.  First Am. Compl. ¶ 15.  Plaintiff admits that, in exchange for obtaining a mortgage, Plaintiff agreed that a portion of his monthly mortgage payment would be set aside into an escrow fund that would be used to pay "taxes and assessments and other items which can attain priority over [the mortgage] as a lien or encumbrance on the property" and "premiums for any and all insurance required."  Mortgage Agreement § 3;[2] *see also* First Am. Compl. ¶ 10.  Plaintiff also acknowledged that the Mortgage Agreement provided that Bank of America "shall not be required to pay [Plaintiff] any interest on earnings on the Funds" unless "Applicable Law" required otherwise.[3]  First Am. Compl. ¶ 10; *see also* Mortgage Agreement § 3.

Plaintiff was repeatedly notified that he would not receive interest on funds deposited in his escrow account.  For example, on the same day that Plaintiff obtained his mortgage from Countrywide, he was provided a "Notice Concerning Your Escrow Account" that informed Plaintiff:

> The federal law and regulations that Countrywide is subject to do not require the payment of interest on escrow accounts. Accordingly, you will not receive interest on your escrow accounts even if your state has a law concerning the payment of interest on escrow accounts.

---

[1]     Like Bank of America, Countrywide was a federally chartered depository institution – specifically, a federal savings association chartered under the Home Owners' Loan Act of 1933 ("HOLA").

[2]     A copy of the "Deed of Trust" dated June 27, 2008, which is referred to herein as the "Mortgage Agreement," is attached to Bank of America's Request for Judicial Notice and Request for Consideration of Certain Incorporated Documents ("Request for Judicial Notice") at Exhibit "A."

[3]     The Mortgage Agreement defines "Applicable Law" as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."  *See* Mortgage Agreement, Definitions, § (J).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 4 –

First Escrow Notice.[4]  Similarly, after Bank of America acquired Plaintiff's mortgage, Bank of America provided Plaintiff with a similar notice that stated:

> As a federally chartered bank, Bank of America is subject to federal law and the Office of the Comptroller of the Currency regulations, and in most cases is not subject to state laws that regulate or otherwise affect its credit activities.  The federal law and regulations that Bank of America is subject to do not require the payment of interest on escrow accounts.  Accordingly, you will not receive interest on your escrow account even if your state has a law concerning the payment of interest on escrow accounts.

Second Escrow Notice.[5]

In 2011, after Plaintiff had fallen behind on his mortgage payments, Plaintiff and Bank of America agreed to modify the terms of Plaintiff's 2008 mortgage.  *See* First Am. Compl. ¶ 15; *see also* Modified Mortgage Agreement at 2.[6]  The Modified Mortgage Agreement changed Plaintiff's monthly payment requirements (including the amount that would be deposited in Plaintiff's escrow account), but it did not change any other terms of the mortgage.  *See, e.g.*, Modified Mortgage Agreement at 2 (besides the monthly payment terms, "[a]ll other terms and conditions of the Mortgage will remain the same for the Modified Mortgage").

### D.    The Allegations In the First Amended Complaint.

Although Plaintiff's escrow funds have been deposited in a non-interest-bearing account since 2008, Plaintiff now contends that state law requires Bank of America to pay him at least 2 percent interest on his escrow funds.  *See, e.g.*, First Am. Compl.

---

[4]    A copy of the "Notice Concerning Your Escrow Account" dated June 27, 2008, which is referred to herein as the "First Escrow Notice," is attached to the Request for Judicial Notice at Exhibit "C."

[5]    A copy of the "Notice Concerning Your Escrow Account" dated March 25, 2009, which is referred to herein as the "Second Escrow Notice," is attached to the Request for Judicial Notice at Exhibit "D."

[6]    A copy of the "Commitment To Modify Mortgage" dated January 25, 2011, which is referred to herein as the "Modified Mortgage Agreement," is attached to the Request for Judicial Notice at Exhibit "B."

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
BANK OF AMERICA, N.A.'S MOTION TO DISMISS

¶ 1.  Count I asserts claims under Cal. Bus. & Prof. Code § 17200 based on the theory that Cal. Civil Code § 2954.8, HUD Handbook 4330.1, and 15 U.S.C. § 1693d(g)(3) require interest payments on Plaintiff's escrow account balance.  First Am. Compl. ¶ 32.  Count II asserts a common-law claim for breach of contract, which likewise rests on the theory that Bank of America agreed to "comply with applicable state and federal law" that allegedly mandates interest payments on escrow account balances.[7] *Id.* ¶ 38.

Plaintiff effectively concedes that he has no claim under Cal. Bus. & Prof. Code § 17200 for conduct that occurred before Dodd-Frank's effective date.  *See* First Am. Compl. ¶ 3 (alleging that national banks refused to pay interest on escrow account balances because of "the preemptive effects of regulations of … the Office of the Comptroller of the Currency").  Plaintiff instead alleges that Dodd-Frank changed the legal landscape and that Bank of America is now required to comply with Section 2954.8's requirement to pay above-market interest on escrow account balances.  *E.g.*, First Am. Compl. ¶ 4.  Although Plaintiff admits that the OCC has "reaffirm[ed] its prior broad preemption regulations" in the wake of Dodd-Frank, Plaintiff nevertheless claims that these regulations are "unenforceable."  *Id.*

## PROCEDURAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  To avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Conclusory allegations or allegations that merely state a legal conclusion "are not entitled to the assumption of truth."  *Id.* at 679.  A complaint that offers mere "labels and conclusions," a "formulaic recitation of the

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

---

[7]  Although Plaintiff's original Complaint asserted claims for declaratory relief, unjust enrichment, money had and received, and negligence, Plaintiff has abandoned those claims in the First Amended Complaint.

1   elements," "naked assertions," or "unadorned, the-defendant-unlawfully-harmed me

2   accusation[s]" will not be sufficient to state a claim upon which relief can be granted.

3   *Id.* at 678 (citations and internal quotation marks omitted).  Claims that are preempted

4   may be dismissed under Rule 12(b)(6).  *See, e.g.*, *Whistler Invs., Inc. v. Depository*

5   *Trust & Clearing Corp.*, 539 F.3d 1159, 1163 (9th Cir. 2008) (affirming Rule 12(b)(6)

6   dismissal based on preemption).

7          When ruling on a motion to dismiss under Rule 12(b)(6), this Court is not

8   limited to the allegations in a complaint.  *Lee v. City of Los Angeles*, 250 F.3d 668,

9   688 (9th Cir. 2001).  Instead, without converting a Rule 12(b)(6) motion into one for

10  summary judgment, this Court may consider both matters on which a court "may take

11  judicial notice" and documents that "are not physically attached to the complaint," but

12  whose "authenticity is not contested and the plaintiff's complaint necessarily relies on

13  them."  *Id.* at 688-89 (internal punctuation omitted).  Here, Bank of America has

14  asked this Court to take judicial notice of the Mortgage Agreement and to consider the

15  Modified Mortgage Agreement, the First Escrow Notice, and the Second Escrow

16  Notice.  *See, e.g.*, Request for Judicial Notice.

17                              **ARGUMENT**

18  **I.    THE NATIONAL BANK ACT PREEMPTS PLAINTIFF'S STATE-LAW**

19         **STATUTORY CLAIM.**

20         In Count I, Plaintiff claims that Bank of America violated Cal. Civ. Code

21  § 2954.8 by failing to pay interest on Plaintiff's escrow account balance.  However,

22  the National Bank Act preempts state laws that "prevent or significantly interfere with

23  [a] national bank's exercise of its powers."  *Barnett Bank of Marion Cnty., N.A. v.*

24  *Nelson*, 517 U.S. 25, 33 (1996); *see also Watters v. Wachovia Bank, N.A.*, 550 U.S. 1,

25  13 (2007)  (state law preempted if it would "curtail or hinder a national bank's

26  efficient exercise of any … power, incidental or enumerated").  As explained below,

27  Plaintiff's attempt to force Bank of America to comply with a state-law requirement to

28  pay interest on his escrow account balance is preempted because Section 2954.8

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 7 –

would "prevent or significantly interfere" with Bank of America's power to set the terms and conditions for mortgage loans and escrow accounts.

**A.    The Usual Presumption Against Preemption Does Not Apply To The National Bank Act.**

For more than a hundred years, the Supreme Court has recognized that a grant of federal authority under the National Bank Act preempts state-law restrictions on the exercise of that authority. *See generally Watters*, 550 U.S. at 1-13.  This "history of significant federal presence" in the regulation of national banks gives the National Bank Act a preemptive force that other federal laws do not enjoy. *Bank of Am. v. City & Cnty. of San Francisco*, 309 F.3d 551, 559 (9th Cir. 2002) (internal quotation and citation omitted).  The strong preemptive force of the National Bank Act is necessary to prevent the "[d]iverse and duplicative superintendence of national banks' engagement in the business of banking" that would result from the application of state laws with their individual "limitations and restrictions." *Watters*, 550 U.S. at 13-14; *see also Robinson v. Bank of Am., N.A.*, 2011 WL 5870541, at *2, 6 (C.D. Cal. Oct. 19, 2011) (King. J.) (accepting magistrate judge's finding and recommendation that "[t]he [National Bank Act] was enacted to establish a national banking system and to protect banks from intrusive state regulation"), *aff'd*, 525 F. App'x 580 (9th Cir. 2013).

For these reasons, the "usual presumption against federal preemption of state law is inapplicable to federal banking regulation." *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1037 (9th Cir. 2008) (internal quotation and citation omitted).  Instead, the "enumerated and incidental powers" granted to national banks under the National Bank Act "ordinarily pre-empt[] contrary state law." *Barnett Bank*, 517 U.S. at 32 (quotation marks omitted).  In other words, "where Congress has not expressly conditioned the grant of 'power' upon a grant of state permission, the Court has ordinarily found that no such condition applies." *Id.* at 34.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**B.     National Banks Have Federal Authority To Set Terms And Conditions For Their Mortgage Loans, To Offer Escrow Accounts, And To Charge Fees.**

Plaintiff's attempt to force Bank of America to comply with Section 2954.8 implicates three banking powers:  the power to offer mortgages, the power to offer escrow accounts, and the power to charge fees.

*First*, 12 U.S.C. § 371 empowers national banks to "make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate."  12 U.S.C. § 371(a).[8]  This power to offer mortgages includes the right to set the terms and conditions of mortgages.  To protect against the risk that the property secured by a mortgage may become subject to a lien, banks often include as a "term" of a mortgage that a borrower make tax and insurance payments into an escrow account.  While banks could charge higher interest rates as compensation for this risk, escrow accounts provide an alternative way for a bank to mitigate the risk that the loan security might face from the borrower's failure to pay taxes or have the property properly insured.  Banks often refuse to make or acquire secured mortgage loans without these escrow accounts.  *See* OCC, Conditional Approval No. 276, 1998 WL 363812, at *9 (May 8, 1998) (observing that "the secondary mortgage market typically requires the establishment of escrow accounts").

*Second*, federal law empowers national banks to establish escrow accounts.  12 U.S.C. § 24(Seventh) authorizes national banks to exercise "all such incidental powers as shall be necessary to carry on the business of banking."  The power conferred by Section 24(Seventh) includes the power to engage in any conduct that "is convenient or useful in connection with the performance of one of the bank's established activities pursuant to its express powers under the National Bank Act."  *Wells Fargo*

---

[8]     12 U.S.C. § 371 is not part of Title 62 of the Revised Statutes.  *See* 12 U.S.C. § 21 historical & statutory note (listing provisions of the United States Code that were part of Title 62 of the Revised Statutes).  Instead, 12 U.S.C. § 371 was enacted in 1913 as Section 24 of the Federal Reserve Act.  *See* Pub. L. 63-43, § 24.

*Bank N.A. v. Boutris*, 419 F.3d 949, 960 (9th Cir. 2005) (internal quotation marks omitted).  It has long been recognized that the grants of authority in 12 U.S.C. § 371 and § 24(Seventh) include the power to provide "escrow services in the context of collecting real estate taxes."  OCC Interp. Ltr. 1041, 2005 WL 3629258, at *2 (Sept. 28, 2005).[9]

*Finally*, federal law empowers national banks to charge "non-interest charges and fees."  12 C.F.R. § 7.4002(a).  This power includes the power to charge fees for servicing an escrow account.  *See Bank of Am.*, 309 F.3d at 562 (national banks have "authority to collect fees for provision of authorized services").  Pursuant to this grant of authority, the Mortgage Agreement gives Bank of America the right to charge Plaintiff a fee if Plaintiff receives interest on his escrow account balance.  *See* Mortgage Agreement § 3.

## C.   The National Bank Act And Accompanying OCC Regulations Preempt Plaintiff's Claims.

For three reasons, the National Bank Act preempts Plaintiff's attempt to force Bank of America to comply with Section 2954.8.  *See, e.g.*, *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 283 (6th Cir. 2009) ("[T]he level of 'interference' that gives rise to preemption under the [National Bank Act] is not very high.").

*First*, the Complaint seeks to impose state-law conditions on the exercise of a national bank's power to provide escrow account services.  Plaintiff seeks to prohibit Bank of America from exercising its federal authority to offer escrow accounts unless the national bank first agrees to comply with a state law requiring the payment of at least 2 percent interest on that escrow account balance.  However, it is black-letter law

---

[9]   *See also* OCC, Corporate Decision No. 99-06, 1999 WL 74103, at *2 (Jan. 29, 1999) ("[N]ational banks are authorized to provide … escrow services to their loan … customers as activities that are part of or incidental to the business of banking."); OCC, Conditional Approval No. 276, 1998 WL 363812, at *9 (May 8, 1998) ("National banks have long been permitted to service the loans that they make and servicing frequently entails the assurance that local real estate taxes are paid on time, particularly when such loans involve tax and insurance escrow accounts.").

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

that a state may not condition a national bank's exercise of any enumerated or incidental power upon compliance with state law. *See Barnett Bank*, 517 U.S. at 34 ("[W]here Congress has not expressly conditioned the grant of 'power' upon a grant of state permission, the Court has ordinarily found that no such condition applies").

OCC regulations confirm that Section 2954.8 "prevents or significantly interferes" with Bank of America's exercise of its power to offer escrow accounts.[10] In particular, 12 C.F.R. § 34.4 provides that national banks may exercise their mortgage-lending authority "without regard to state law limitations concerning … [e]scrow accounts, impound accounts, and similar accounts." 12 C.F.R. § 34.4(a)(6). Courts have likewise agreed that federal law preempts state laws requiring federally chartered banks to pay interest on escrow account balances. *See Flagg v. Yongers Sav. & Loan Ass'n*, 396 F.3d 178, 181-85 (2d Cir. 2005);[11] *First Fed. Sav. & Loan Ass'n of Boston v. Greenwald*, 591 F.2d 417, 425-26 (1st Cir. 1979). *Cf. Hayes v. Wells Fargo Bank, N.A.*, 2014 WL 3014906, at *5-6 (S.D. Cal. July 3, 2014) (federal law preempted California claim challenging manner in which national bank serviced escrow accounts); *Wis. League of Fin. Insts. v. Galecki*, 707 F. Supp. 401, 404-06 (W.D. Wis. 1989) (federal law preempted state-law attempts to regulate escrow-related disclosures).

---

[10] OCC regulations that interpret and apply the National Bank Act have the same preemptive force as the National Bank Act itself. *See, e.g.*, *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) (federal regulations "have no less preemptive effect than federal states"). Congress has entrusted the OCC with "primary responsibility for surveillance of the 'business of banking' authorized by § 24 Seventh," *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256 (1995), and the OCC has "authority to displace contrary state regulation," *Boutris*, 419 F.3d at 962.

[11] *Flagg* involved 12 C.F.R. § 560.2(b), which preempts "state laws purporting to impose requirements regarding … escrow accounts, impound accounts, and similar accounts." 12 C.F.R. § 560.2(b)(6). Because the preemption regulation in 12 C.F.R. § 34.4(a) is "almost identical to" the preemption regulation in 12 C.F.R. § 560.2(b), "the preemption analysis remains the same." *Zlotnick v. U.S. Bankcorp*, 2009 WL 5178030, at *6 (N.D. Cal. Dec. 29, 2009).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 11 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    *Second*, the Complaint seeks to impose state-law conditions on the

2    circumstances under which banks may extend mortgage credit.  As a condition of

3    underwriting a mortgage, banks often require a consumer to establish an escrow

4    account as a "term of credit" to ensure that funds remain available to pay taxes and

5    keep the property secured by the mortgage free of liens.  A bank that is unable to

6    require such a provision might refuse to make the mortgage loan in light of the

7    heightened risk to its security interest from the borrower's failure to pay taxes or to

8    properly insure the property.  Indeed, Plaintiff acknowledges that his escrow account

9    was one of "the express terms of the [mortgage] contracts."  First Am. Compl. ¶ 10;

10   *accord id.* ¶ 16.  Section 2954.8 undermines national banks' mortgage-lending powers

11   by prohibiting banks from having a term in mortgage loans requiring an escrow

12   account unless the bank first pays interest on that account balance.  *Barnett Bank*

13   specifically prohibits this result.  *See* 517 U.S. at 34.

14   Again, 12 C.F.R. § 34.4 confirms this conclusion.  12 C.F.R. § 34.4(a)(4)

15   provides that banks may exercise their mortgage-lending authority without regard to

16   state laws relating to the "terms of credit."  An escrow account is a "term of credit"

17   because it affects the payment a borrower must pay each month, and the nature of the

18   security that the borrower has given to the bank on the loan note, to ensure the

19   borrower does not default on the loan.  The Ninth Circuit has consistently recognized

20   the broad preemptive force of Section 34.4.  *See, e.g., Deming v. Merrill Lynch & Co.*,

21   528 F. App'x 775, 777 (9th Cir. 2013); *O'Donnell v. Bank of Am., N.A.*, 504 F. App'x

22   566, 568 (9th Cir. 2013); *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712, 726 (9th

23   Cir. 2012); *Martinez v. Wells Fargo Home Mortgage, Inc.*, 598 F.3d 549, 556-57 (9th

24   Cir. 2010).

25   *Third*, the Complaint seeks to restrict the amount of fees national banks may

26   charge in connection with their lending authority.  If Bank of America elects to pay

27   interest on Plaintiff's escrow account – which it has not done in this case – the

28   Mortgage Agreement gives Bank of America the right to charge a fee for servicing the

– 12 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   escrow account.  *See* Mortgage Agreement § 3.  However, Section 2954.8(b) limits

2   the amount of any fee Bank of America may charge by providing that the amount of

3   any escrow-related fee may not reduce the interest paid to the escrow account balance

4   below 2 percent.  Given current interest rates, Section 2954.8 simultaneously requires

5   Bank of America to pay an above-market interest rate and prohibits Bank of America

6   from charging *any* fees.[12]  Courts have repeatedly rejected comparable attempts to

7   limit a bank's right to exercise its federal power to charge similar fees.  *See Smiley v.*

8   *Citibank (S.D.), N.A.*, 517 U.S. 735, 739-47 (1996) (preempting limits on late fees);

9   *Martinez*, 598 F.3d at 556 (preempting limits on underwriting fees); *Monroe*, 589 F.3d

10  at 283-84 (preempting limits on garnishment fees); *Bank of Am.*, 309 F.3d at 563-64

11  (preempting limits on ATM fees).[13]

12  **D.    The Dodd-Frank Act Does Not Affect The Preemption Analysis.**

13      The Complaint effectively concedes that before Dodd-Frank was enacted, state

14  requirements like Section 2954.8 would have been preempted by the National Bank

15  Act and OCC regulations.  *See* First Am. Compl. ¶¶ 2-3.  In his Complaint, Plaintiff

16  instead asserts that the Dodd-Frank Wall Street Reform and Consumer Protection Act,

17  _____

    [12]    The actual interest rate on FDIC-insured deposit accounts is well less than 2
18  percent.  *See, e.g.*, http://bankrate.com/compare-rates.aspx#tab=3 (last viewed on July
    24, 2014) (national average for 1-year CD is 0.91%).

19  [13]    As the successor-in-interest to the federal savings association, Countrywide,
    that originated Plaintiff's mortgage, Bank of America also benefits from the same
20  field preemption that Countrywide enjoyed.  *See, e.g., Kho v. Wells Fargo & Co.*,
    2012 WL 3240041, at *4 n.2 (C.D. Cal. Aug. 6, 2012).  At the time Countrywide
21  originated Plaintiff's mortgage, Countrywide was a federal savings association
    chartered under HOLA.  And at the time the mortgage was made, federal savings
22  associations enjoyed field preemption.  *See* 12 C.F.R. § 560.2(a) (HOLA "occupie[d]
    the entire field of lending regulation.").  Regulations promulgated under HOLA
23  specifically preempted "state laws purporting to impose requirements regarding …
    [t]he terms of credit, … [l]oan-related fees, … [and e]scrow accounts, impound
24  accounts, and similar accounts."  12 C.F.R. § 560.2(b)(4), (5), (6); *accord Flagg*, 396
    F.3d at 181-85 (Section 560.2(b)(6) preempted state law requiring payment of interest
25  on escrow account balances); *Hayes*, 2014 WL 3014906, at *5-6 (Section 560.2(b)(6)
    preempted state law claims challenging national bank's servicing of escrow account).
26  Dodd-Frank specifically preserved these field preemption regulations as applied to
    contracts like the Mortgage Agreement, which were "entered into on or before" July
27  21, 2010.  Pub. L. 111-203, § 1043; *accord Copeland-Turner v. Wells Fargo Bank*,
    800 F. Supp. 2d 1132, 1138 (D. Or. 2011).

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
BANK OF AMERICA, N.A.'S MOTION TO DISMISS

1    Pub. L. 111-203, altered the preemption analysis to now require national banks to

2    comply with Section 2954.8.  *See* First Am. Compl. ¶¶ 4-6.  For several reasons,

3    Plaintiff is mistaken.

4          Although Dodd-Frank contains provisions addressing the preemption of state

5    law under the National Bank Act, *see* 12 U.S.C. § 25b(b)(1), those provisions do not

6    affect the preemption analysis discussed above.  As numerous courts have recognized,

7    Dodd-Frank merely codified the preemption framework set forth in *Barnett Bank* and

8    applied above.  *See, e.g.*, *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194,

9    1197 (11th Cir. 2011); *U.S. Bank N.A. v. Schipper*, 812 F. Supp. 2d 963, 968 n.1 (S.D.

10   Iowa 2011) ("the Dodd-Frank Act did not materially alter the standard for

11   preemption").  The applicable statutory framework instructs courts to apply "the legal

12   standard for preemption in the decision of the Supreme Court of the United States in

13   *Barnett Bank*" and preempt state laws that "prevent[] or significantly interfere[] with

14   the exercise by the national bank of its powers."  12 U.S.C. § 25b(b)(1)(B).  As

15   explained above, Section 2954.8 is preempted because it "prevents or significantly

16   interferes with the exercise by [a] national bank of its powers" to offer mortgages, to

17   offer escrow accounts, and to charge fees.

18         12 C.F.R. § 34.4 continues to reflect the OCC's agreement that state laws like

19   Section 2954.8 prevent or significantly interfere with a national bank's power to offer

20   escrow account services.  After Dodd-Frank was enacted, the OCC reexamined its

21   preemption regulations, including 12 C.F.R. § 34.4, and "confirm[ed] that the specific

22   types of laws cited in the rules are consistent with the standard for conflict preemption

23   in the Supreme Court's *Barnett* decision." OCC, *Dodd-Frank Act Implementation*, 76

24   Fed. Reg. 43,549, 43,557 (July 21, 2011).  For example, the OCC concluded that laws

25   that "affect the ability of national banks to underwrite and mitigate credit risk" and

26   "manage credit risk exposures" interfere with banks' powers "in the lending arena."

27   *Id.*  With respect to escrow accounts, the OCC specifically concluded that

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 14 –

state laws that would affect the ability of national banks to … manage loan-related assets, such as laws concerning … escrow standards … would meaningfully interfere with fundamental and substantial elements of the business of national banks and with their responsibilities to manage that business and those risks.

*Id.*  The Ninth Circuit has continued to recognize the preemptive force of Section 34.4 even after Dodd-Frank.  *See Deming*, 528 F. App'x at 777; *O'Donnell*, 504 F. App'x at 568; *Gutierrez*, 704 F.3d at 726.

Plaintiff's arguments to the contrary rely on distortions or misrepresentations of Dodd-Frank.  They should all be rejected.

For example, Plaintiff claims that 12 C.F.R. § 34.4 has no force here because the OCC failed to make a "case-by-case" analysis of a state's law before making a preemption determination, *see* First. Am. Compl. ¶ 4, but this is irrelevant for four reasons.  *First*, preemption here rests independently on the fact that Section 2954.8 prevents or significantly interferes with Bank of America's exercise of its federal *statutory* banking powers under 12 U.S.C. § 371 and § 24(Seventh); Section 34.4 is not necessary to reach this conclusion.  *Second,* Section 34.4 was promulgated under 12 U.S.C. § 371,[14] which is not part of Title 62 of the Revised Statutes, *see supra* at 9 n.8, and therefore is not subject to any case-by-case requirement.  *See* 12 U.S.C. § 25b(b)(1)(C).  *Third*, regulations such as Section 34.4, which were "in effect prior to the effective date[,] are not subject to the case-by-case requirement."  76 Fed. Reg. at 43,557.[15]  *Fourth*, only the OCC is subject to Dodd-Frank's case-by-case requirement; "any preemption determination" under Dodd-Frank may still be made by "a court"

---

[14]  *See, e.g.*, OCC, *Bank Activities & Operations; Real Estate Lending & Appraisals*, 69 Fed. Reg. 1904, 1908-1910, 1911 (Jan. 13, 2004).

[15]  Dodd-Frank's preemption provisions "bec[a]me effective on the designated transfer date," Pub. L. 111-203, § 1048, which was July 21, 2011, Bureau of Consumer Financial Protection, *Designated  Transfer Date*, 75 Fed. Reg. 57,252 (Sept. 20, 2010).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 15 –

1  regardless of whether the OCC has conducted a case-by-case inquiry.  12 U.S.C.

2  § 25b(b)(1)(B).

3        Plaintiff also argues that the National Bank Act does not preempt state laws that

4  provide "'greater protection' than federal finance laws," First Am. Compl. ¶ 9, but this

5  argument has no applicability here.  Plaintiff's argument rests on 12 U.S.C. § 5551,

6  which was originally enacted as Section 1041 of Dodd-Frank and was intended to

7  save some, but not all, state laws from preemption.  *See* Pub. L. 111-203, § 1041.

8  Specifically, Section 1041 provides that Title X of Dodd-Frank,

> *other than sections 1044 through 1048*, may not
> construed as annulling, altering, or affecting, or exempting
> any person subject to the provisions of this title from
> complying with the statutes, regulations, orders, or
> interpretations in effect in any State, except to the extent that
> any such provision of law is inconsistent with the provisions
> of this title ….[16]

14  Pub. L. 111-203, § 1041(a)(1) (emphasis added).  Here, however, preemption rests on

15  Section 1044 of Dodd-Frank – later codified at 12 U.S.C. § 25b – which is expressly

16  carved out from Section 1041's savings clause.  In other words, a state law that

17  provides greater protection to consumers as compared to federal law nevertheless is

18  still preempted if the state law "prevents or significantly interferes" with Bank of

19  America's exercise of its federal banking powers.  12 U.S.C. § 5551 therefore has no

20  applicability here.[17]

21        Finally, Plaintiff has argued that 15 U.S.C. § 1639d(g)(3) is a separate savings

22  clause that overrides the National Bank Act's preemptive force.  But Section 1639d is

---

[16]    Section 1041(a)(2) goes on to provide that a state law "is not inconsistent with the provisions of this title if the protection that" state law "affords to consumers is greater than the protection provided under this title."  Pub. L. 111-203, § 1041(a)(2).

[17]    Plaintiff appears confused about whether Section 2954.8 is a "State consumer financial law," *see* First Am. Compl. ¶ 6, but this is irrelevant.  State laws that are not "State consumer financial laws" are still preempted under the general preemption principles of *Barnett Bank* applied above.  State laws that are "State consumer financial laws" are subject to the preemption framework in 12 U.S.C. § 25b(b), which simply instructs courts to apply the preemption principles of *Barnett Bank*.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 16 –

1  not a "savings clause," and it says nothing about preemption.  *See infra* at 18-19

2  (further discussing 15 U.S.C. § 1639d).  To the contrary, Section 1639d is not part of

3  the National Bank Act, and it does not even appear in the same title as Dodd-Frank's

4  preemption provisions.  *See* Pub. L. 111-203, § 1461 (enacting 15 U.S.C. § 1639d).

5  This Court should therefore decline Plaintiff's invitation to interpret Section 1639d to

6  save state laws from preemption when Section 1639d does not even mention

7  preemption in the first place.  *See, e.g.*, *United States v. Locke*, 529 U.S. 89, 106

8  (2000) ("We decline to give broad effect to saving clauses where doing so would

9  upset the careful regulatory scheme established by federal law."); *Bank of Am.*, 309

10  F.3d at 565-65 (express anti-preemption provision in Title 15 of the United States

11  Code did not override the preemptive force of the National Bank Act provisions that

12  appear in Title 12 of the Code).

13  **II.    PLAINTIFF FAILS TO STATE A CLAIM BASED ON FEDERAL LAW.**

14        Count I also seeks relief on the theory that HUD Handbook 4330.1 and 15

15  U.S.C. § 1639d(g)(3) require Bank of America to pay Plaintiff interest on Plaintiff's

16  escrow account balance.  *See* First Am. Compl. ¶ 32.  As explained below, neither

17  provision imposes such a requirement.

18        **A.    The HUD Handbook Does Not Require National Banks To Pay**

19        **Interest On Escrow Account Balances.**

20        Plaintiff alleges that HUD Handbook 4330.1 requires national banks to pay

21  interest.  *See* First Am. Compl. ¶¶ 9, 32.  Plaintiff's argument is contradicted by the

22  Handbook itself, which observes that "HUD regulations neither forbid nor require that

23  escrow accounts earn interest."  HUD Handbook 4330.1, Rev-5, § 2-5(C).  In fact, the

24  HUD Handbook reflects the Department of Housing and Urban Development's

25  longstanding position that it lacks "legal authority to require payment of interest on

26  escrow accounts."  HUD, *Real Estate Settlement Procedures Act (Regulation X):*

27  *Escrow Accounting Procedures*, 59 Fed. Reg. 53,890, 53,891 (Oct. 26, 1994).

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
BANK OF AMERICA, N.A.'S MOTION TO DISMISS

1    Even if the HUD Handbook addressed interest payments on Plaintiff's escrow

2  accounts – and it does not – "the Handbook is neither a statute nor a regulation," and

3  "HUD has not promulgated the Handbook such to give it the force of law." *In re*

4  *Mortgage Escrow Deposit Litig.*, 1995 WL 59238, at *3 (N.D. Ill. Feb. 9, 1995); *see*

5  *also Rank v. Nimmo*, 677 F.2d 692, 698-99 (9th Cir. 1982) ("[N]umerous decisions of

6  other courts … have held agency handbooks … [are] unenforceable."); *Roberts v.*

7  *Cameron-Brown Co.*, 556 F.2d 356, 361 (5th Cir. 1997) ("HUD has chosen not to

8  publish the Handbook, thus prohibiting it from having the force and effect of law.").

9  The HUD Handbook therefore does not establish a federal requirement to pay interest

10  on Plaintiff's escrow account balance.

### B.    15 U.S.C. § 1639d Does Not Require National Banks To Pay Interest On Escrow Account Balances.

13    Plaintiff also claims that 15 U.S.C. § 1639d(g)(3) requires national banks to pay

14  interest on escrow account balances. *See* First Am. Compl. ¶¶ 8, 32. Here, too,

15  Plaintiff is mistaken.

16    As a threshold matter, Section 1639d did not take effect until January 21, 2013

17  – nearly two years after Plaintiff alleges that he modified his mortgage. *See* Pub. L.

18  110-203, § 1400(c)(3) (providing that any section of Title XIV of Dodd-Frank for

19  which no regulations have been issued shall take effect "on the date that is 18 months

20  after the designated transfer date"); Bureau of Consumer Financial Protection,

21  *Designated  Transfer Date*, 75 Fed. Reg. 57,252 (Sept. 20, 2010) (transfer date was

22  July 21, 2011). Section 1639d therefore cannot apply to Plaintiff's escrow account.

23  *See Patton v. Ocwen Loan Servicing LLC*, 2011 WL 3236026, at *4 (M.D. Fla. July

24  28, 2011) (requirements imposed by Title XIV of Dodd-Frank do not apply to conduct

25  occurring after Dodd-Frank enacted but before Title XIV's effective date).

26    Nor can Section 1639d be retroactively applied to Plaintiff's mortgage

27  agreement. Applying a provision that took effect in January 2013 to a contract made

28  in 2008 and modified in 2011 would violate a well-established "presumption against

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 18 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   retroactive legislation" that "is deeply rooted in our jurisprudence." *Landgraf v. USI*

2   *Film Prods.*, 511 U.S. 244, 265 (1994).  Under Plaintiff's interpretation, Section

3   1639d would "impose new duties with respect to transactions already completed." *Id.*

4   at 280.  Section 1639d therefore may not be applied retroactively because there is no

5   "clear congressional intent favoring such a result." *Id.*

6         Even if Section 1639d applied to Plaintiff's mortgage agreement – and it does

7   not – Section 1639d(g)(3) does not independently require interest payments as a

8   matter of federal law.  Rather, that statute simply requires interest payments "[i]f

9   prescribed by *applicable* State or Federal law." *Id.* (emphasis added).  The

10  preemptive force of the National Bank Act, coupled with the absence of any federal

11  requirement to pay interest, means that no *applicable* law requires Bank of America to

12  pay interest on Plaintiff's escrow account balance.

13        Moreover, the provisions of Section 1639d(g) dealing with interest payments on

14  escrow account balances only apply to "an escrow … account subject to this section,"

15  but Plaintiff's escrow account is not "subject to" Section 1639d.  An escrow account

16  is only "subject to" Section 1639d if that Section imposes an obligation on a borrower

17  to maintain an escrow account.  *See, e.g.*, 15 U.S.C. § 1639d(a).  Plaintiff does not

18  allege that Section 1639d required him to establish an escrow account as a condition

19  of obtaining a mortgage.  Nor could he, considering that Section 1639d did not take

20  effect until nearly five years after Plaintiff obtained his mortgage.  Rather, Plaintiff

21  alleges that his escrow account was established "based on the express terms of the

22  [mortgage] contracts."  First Am. Compl. ¶ 10; *accord id.* ¶ 16.  Escrow accounts like

23  Plaintiff's, which are established as a  matter of "the contract between the lender …

24  and the borrower," are not subject to Section 1639d.  15 U.S.C. § 1639d(f)(2).

25  Section 1639d(g)(3) simply has no impact here.

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
BANK OF AMERICA, N.A.'S MOTION TO DISMISS

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

### III.   PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.

In Count II, Plaintiff claims that Bank of America breached the terms of the Mortgage Agreement because it refused to pay interest on Plaintiff's escrow account balance. *See* First Am. Compl. ¶ 38. A cursory review of the Mortgage Agreement confirms that this claim lacks merit and should be dismissed.

Nothing in the Mortgage Agreement required Bank of America to pay interest on Plaintiff's escrow account. To the contrary, the Mortgage Agreement specifically provides that Bank of America "shall not be required to pay [Plaintiff] any interest on earnings on the Funds." Mortgage Agreement § 3; *see also* First. Am. Compl. ¶ 10. In addition, Plaintiff was repeatedly notified that "federal law and regulations … do not require the payment of interest on escrow accounts" and that Plaintiff "will not receive interest on your escrow account even if your state has a law concerning the payment of interest on escrow accounts." First Escrow Notice; Second Escrow Notice. These provisions remained operative after Plaintiff modified his mortgage. *See* Modified Mortgage Agreement at 2.

Plaintiff cannot argue that Bank of America nevertheless agreed to pay interest on his escrow account balance because such an obligation was imposed by "Applicable Law." The Mortgage Agreement defines "Applicable Law" as "all *controlling* applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Mortgage Agreement, Definitions, § (J) (emphasis added). As explained above, no federal law imposes a requirement to pay interest on escrow account balances. *See supra* at 17-19. Moreover, state law cannot constitute "Applicable Law" because it is preempted. *See supra* at 7-17.

Nor has Bank of America voluntarily agreed to comply with Section 2954.8. In arguing to the contrary, the Complaint cites the Mortgage Agreement's choice-of-law provision, which simply provides that

– 20 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1
2
3
4

This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in the Security Instrument are subject to any requirements and limitations of Applicable Law.

5   Mortgage Agreement § 16; *see also* First. Am. Compl. ¶ 10. The U.S. Supreme Court

6   has held that a choice-of-law provision in a California deed of trust that is

7   indistinguishable from the Mortgage Agreement did not require a federally chartered

8   depository institution to comply with a preempted state or local law. *Fid. Fed. Sav. &*

9   *Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 157 n.12 (1982) (choice-of-law provision

10  specified that deed of trust "is to be governed by the 'law of the jurisdiction' in which

11  the property is located"). Following *de la Cuesta*, courts have repeatedly held that

12  language nearly identical to the Mortgage Agreement's choice-of-law provision does

13  not incorporate state-law provisions that require the payment of interest on escrow

14  account balances. *See, e.g.*, *Flagg v. Yonkers Sav. & Loan Ass'n*, 307 F. Supp. 2d

15  565, 583 (S.D.N.Y. 2004) ("A general choice-of-law clause is, however, insufficient

16  as a matter of law to incorporate by reference preempted state laws as the terms of a

17  contract."), *aff'd* 396 F.3d at 186 ("While contracts may incorporate particular laws as

18  contract terms, the contract must do so with specificity."); *Cassese v. Wash. Mut.,*

19  *Inc.*, 2008 WL 8652499, at *8-9 (E.D.N.Y. Jun. 27, 2008) ("the choice-of-law

20  provisions here would only allow for the application of state law to the extent

21  permitted by federal law"). This conclusion is confirmed by the escrow notices, in

22  which Plaintiff was informed at the time he signed his mortgage documents that he

23  "will not receive interest on your escrow account even if your state has a law

24  concerning the payment of interest on escrow accounts." First Escrow Notice; Second

25  Escrow Notice.

26  ///

27  ///

28  ///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
BANK OF AMERICA, N.A.'S MOTION TO DISMISS

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant Bank of America's motion to dismiss.  Because Plaintiff has already amended his Complaint once, and because the deficiencies in the First Amended Complaint cannot be cured with an amendment, this Court should dismiss the First Amended Complaint with prejudice.

DATED:  July 31, 2014                    REED SMITH LLP

                                         COVINGTON & BURLING LLP


                                         By:/s/ Peter J. Kennedy
                                            Marc A. Lackner
                                            Peter J. Kennedy

                                            Keith Noreika
                                            Andrew Soukup

                                            Attorneys for Defendant
                                            BANK OF AMERICA, N.A.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
BANK OF AMERICA, N.A.'S MOTION TO DISMISS