E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1855-GHK (AJWx) | Date | October 29, 2014 |
|---|---|---|---|
| Title | *Donald M. Lusnak v. Bank of America, N.A.* | | |

| **Presiding: The Honorable** | **GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE** | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     **(In Chambers) Order re:** Defendant's Motion to Dismiss [Dkt. 26]

    This matter is before us on Defendant Bank of America, N.A.'s ("Defendant") Motion to Dismiss ("Motion"). We have considered the papers filed in support of and in opposition to this Motion and deem this matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows:

**I.    Factual Background**

    On March 12, 2014, Plaintiff Donald Lusnak ("Plaintiff") filed this consumer fraud class action against Bank of America, N.A. ("Defendant") based on Defendant's alleged per se violation of California Civil Code Section 2954.8, which requires financial institutions that "receive[] money in advance for payment of taxes and assessments on . . . property, for insurance, or for other purposes relating to the property" to pay the borrower interest of at least 2 percent per year. Cal. Civ. Code § 2954.8(a). Plaintiff seeks to represent a class of "mortgage loan customers of Bank of America (or its subsidiaries), whose mortgage loan is for a one-to-four family residence located in California, and who paid Bank of America money in advance for payment of taxes and assessments on the property, for insurance, or for other purposes relating to the property, and did not receive interest on the amount held by Bank of America." (FAC at ¶ 21.) Plaintiff's First Amended Complaint ("FAC")[1] alleges the following underlying facts:

    Plaintiff purchased a home in 2008 and entered into a mortgage agreement with Countrywide Financial, which later merged with Defendant. (*Id.* at ¶ 15.) In 2009, "Plaintiff entered into a refinance

---

    [1] On June 25, 2014, we vacated the hearing on Defendant's first Motion to Dismiss and approved the Parties' Stipulation to grant Plaintiff leave to file a FAC, [Dkt. 21], because a FAC "could potentially streamline the litigation and further judicial economy by voluntarily eliminating challenged causes of action." (*See* June 20, 2014 Stipulation, at 2, Dkt. 19.) Plaintiff filed his FAC on June 27, 2014. [Dkt. 22.]

| CV-90 (06/04) | **CIVIL MINUTES - GENERAL** | Page 1 of 14 |
|---|---|---|

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1855-GHK (AJWx) | Date | October 29, 2014 |
|---|---|---|---|
| Title | *Donald M. Lusnak v. Bank of America, N.A.* | | |

agreement with Countrywide (which by that time had been acquired by [Defendant]), pursuant to which Plaintiff's original 2008 loan agreement with Countrywide was extinguished and a new loan was issued with a new applicable interest rate and other revised terms." (Opp'n at 5; *see also* Supp. RJN, Ex. E.[2]) In 2011, Defendant provided Plaintiff with a loan modification. (FAC at ¶ 15.) From 2008 to present, Plaintiff "has been required to make $250 in monthly payments to [Defendant] . . . for the pre-payment of property tax and insurance on the property" and never received interest on these prepaid funds. (*Id.* at ¶¶ 15-16.) Plaintiff's loan agreements with Defendant expressly provide that Defendant "would comply with applicable state and federal law." (*Id.* at ¶ 38.)

In 2010, Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"). This law allegedly made "explicit that Congress['s] intent was [to] permit states to enact and enforce laws that require mortgage lenders to pay interest on impound accounts." (*Id.* at ¶ 8.) Wells Fargo Bank, N.A., Defendant's "chief competitor and the largest mortgage originator in the U.S." pays interest on borrowers' escrow accounts. (*Id.* at ¶ 2.)

Based on these alleged facts, Plaintiff's FAC asserts two claims: (1) violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code Section 17200, and (2) breach of contract. On July 31, 2014, Defendant filed this Motion, arguing that both of Plaintiff's claims rely on Section 2954.8, which is preempted by the National Bank Act ("NBA"). Plaintiff opposes this Motion.

Along with their submissions, both Parties request that we take judicial notice of several mortgage-related documents. Although review under Rule 12(b)(6) is generally limited to the contents of the complaint, we may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Thus, "[e]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the . . . document forms the basis of the plaintiff's claim." *Id.* This "incorporation by reference doctrine" has been extended "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). We **GRANT** Defendant's Request as to Exhibit A, Plaintiff's 2008 mortgage agreement, as it is a public record and is generally appropriate for judicial notice, and Plaintiff does not object. We also **GRANT** Defendant's Request as to Exhibits B through D because these documents help form the basis of Plaintiff's Complaint, and Plaintiff does not challenge them. We **DENY** Plaintiff's Request for Judicial

---

[2] On September 12, 2014, Defendant filed a Supplemental Request for Judicial Notice asking us to also take notice of this 2009 loan agreement. [*See* Dkt. 31.] Plaintiff apparently does not disagree inasmuch as he states that "[t]he FAC inadvertently did not include reference to the 2009 agreement." (Opp'n at 5.) Defendant's Supplemental Request is **GRANTED**.

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1855-GHK (AJWx) | Date | October 29, 2014 |
|---|---|---|---|
| Title | *Donald M. Lusnak v. Bank of America, N.A.* | | |

Notice of the closing documents for his 2009 loan refinance agreement. [Dkt. 29.] Plaintiff asks us to take notice of these documents only as evidence of his 2009 agreement. (*See* Opp'n at 5.) As we take notice of his 2009 mortgage agreement, these closing documents are superfluous and need not be considered.

**II.     Motion to Dismiss**

    **A.     Legal Standard**

To survive dismissal for failure to state a claim, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Although we must accept the allegations of the complaint as true and construe them in the light most favorable to the plaintiff, we need not accept as true legal conclusions "cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

    **B.     Discussion**

Plaintiff's UCL and breach of contract claims are both premised upon Defendant's alleged violations of California Civil Code § 2954.8 and 15 U.S.C. § 1639d.[3] (*See* FAC at ¶ 32 (Defendant committed "per se violations" of both laws); ¶ 38 ("Defendant failed to perform the express terms . . . that stated Defendant would comply with applicable state and federal law . . . .").) Defendant claims that since Section 2954.8 and Section 1639d do not apply to its transaction with Plaintiff, Plaintiff's FAC must be dismissed. Accordingly, we analyze the applicability of each statute in turn.

        **1.     California Civil Code § 2954.8**

Defendant argues that we should dismiss Plaintiff's FAC because "Plaintiff's attempt to force Bank of America to comply with Section 2954.8 is preempted by the National Bank Act." (Mot. at 1.) The relevant portion of Section 2954.8 is as follows:

---

[3] Plaintiff's FAC also cites 12 U.S.C. § 5551 and Housing and Urban Development ("HUD") Handbook as evidence that Defendant is violating federal law. (*See* FAC at ¶ 9.) But, as Defendant notes, Plaintiff failed to respond to Defendant's arguments on these subjects and thus, seems to have abandoned his related claims. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1855-GHK (AJWx) | Date | October 29, 2014 |
|---|---|---|---|
| Title | *Donald M. Lusnak v. Bank of America, N.A.* | | |

(a) Every financial institution that makes loans upon the security of real property containing only a one- to four-family residence and located in this state . . . and that receives money in advance for payment of taxes and assessments on the property, for insurance, or for other purposes relating to the property, shall pay interest on the amount so held to the borrower. The interest on such amounts shall be at the rate of at least 2 percent simple interest per annum. . . .

Plaintiff's argument that Section 2954.8 is not preempted primarily hinges on his assertion that Dodd-Frank "created a new statutory framework governing the standards applicable to determining whether state consumer financial laws are preempted by the NBA and other federal banking laws." (Opp'n at 7.) The Parties agree that, in light of Plaintiff's 2011 loan modification agreement, Dodd-Frank supplies the relevant preemption standard here. (*See* Opp'n at 8; Reply at 4.) But, the Parties dispute the extent to which Dodd-Frank changed the NBA preemption standard that existed before 2010. (*See* Mot. at 13-14, Opp'n at 7.)[4]

        a.      **Dodd-Frank's Impact on the NBA Preemption Analysis**

"The NBA was enacted to establish a national banking system and to protect banks from intrusive state regulation." *Robinson v. Bank of Am., N.A.*, 2011 WL 5870541, at *2 (C.D. Cal. Oct. 19, 2011). Before the passage of Dodd-Frank, courts typically found that the usual presumption against preemption of state laws by federal law did not apply to national banks. *See, e.g.*, *Bank of Am. v. City & Cnty. of San Francisco*, 309 F.3d 551, 559 (9th Cir. 2002) ("[B]ecause there has been a 'history of significant federal presence' in national banking, the presumption against preemption of state law is inapplicable."); *Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949, 956 (9th Cir. 2005) ("[T]he usual presumption against federal preemption of state law is inapplicable to federal banking regulation."). Courts frequently struck down state laws that in any way encroached upon national banks' banking activities or authority. *See, e.g.*, *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 283 (6th Cir. 2009) ("[T]he level of 'interference' that gives rise to preemption under the NBA is not very high.").

Section 1044 of Dodd-Frank, codified at 12 U.S.C. § 25b, clarified the relevant NBA preemption standard:

State consumer financial laws are preempted, only if—

---

[4] Plaintiff also seems to waver on this point. At times, Plaintiff alleges that Dodd-Frank "changed the landscape" and "created a new statutory framework" for NBA preemption. (*See* FAC ¶ 5; Opp'n at 7.) But, Plaintiff also argues that under "pre-Dodd-Frank preemption standards . . . the result would be the same because . . . the focus of an NBA conflict preemption analysis [prior to Dodd-Frank] was [also] on congressional intent." (Opp'n at 17.)

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1855-GHK (AJWx) | Date | October 29, 2014 |
|---|---|---|---|
| Title | *Donald M. Lusnak v. Bank of America, N.A.* | | |

(A) application of a State consumer financial law would have a discriminatory effect on national banks, in comparison with the effect of the law on a bank chartered by that State;

(B) in accordance with the legal standard for preemption in the decision of the Supreme Court of the United States in *Barnett Bank of Marion County, N. A. v. Nelson, Florida Insurance Commissioner, et al.*, 517 U.S. 25 (1996), the State consumer financial law prevents or significantly interferes with the exercise by the national bank of its powers; and any preemption determination under this subparagraph may be made by a court, or by regulation or order of the Comptroller of the Currency on a case-by-case basis, in accordance with applicable law; or

(C) the State consumer financial law is preempted by a provision of Federal law other than title 62 of the Revised Statutes.[5]

12 U.S.C. § 25b(b)(1)

To the extent that Plaintiff asserts that Dodd-Frank significantly changed the relevant NBA preemption standard, he is mistaken.[6] (*See* Opp'n at 7.) Dodd-Frank only made significant changes in the Home Owners' Loan Act ("HOLA") preemption analysis, stating that HOLA no longer occupies the entire field of lending regulation. *See Settle v. World Sav. Bank, F.S.B.*, 2012 U.S. Dist. LEXIS 4215, at *13 (C.D. Cal. Jan. 11, 2012) ("The Dodd-Frank Act provides that HOLA does not occupy the field in any area of state law and that preemption is governed by the standards applicable to national banks."). But, with regards to the NBA, Dodd-Frank simply affirmed that *Barnett Bank* is the appropriate standard for courts and the Office of the Comptroller of the Currency ("OCC")[7] to apply to NBA preemption decisions. *See* S. Rep. No. 111-176, at 175 (2010) (emphasis added) ("Section 1044 amends the National Bank Act to clarify the preemption standard relating to State consumer financial laws as applied to national banks . . . ."); *see also U.S. Bank Nat. Ass'n v. Schipper*, 812 F. Supp. 2d 963, 968

---

[5] "[T]itle 62 of the Revised Statutes" includes the majority of the NBA.

[6] The only case Plaintiff cites for this proposition, *Ascher v. Grand Bank for Sav., FSB*, 2014 U.S. Dist. LEXIS 33763 (N.D. Ill. Mar. 14, 2014), does not specifically reference the NBA, and instead, focuses on Home Owners' Loan Act ("HOLA") preemption before and after Dodd-Frank.

[7] The OCC is "the agency charged by Congress with supervision of the NBA [and] oversees the operations of national banks and their interactions with customers." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 6 (2007). "To carry out this responsibility, the OCC has the power to promulgate regulations and to use its rulemaking authority to define the 'incidental powers' of national banks beyond those specifically enumerated in the [NBA]." *Martinez v. Wells Fargo Home Mortg.*, 598 F.3d 549, 555 (9th Cir. 2010).

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1855-GHK (AJWx) | Date | October 29, 2014 |
|---|---|---|---|
| Title | *Donald M. Lusnak v. Bank of America, N.A.* | | |

n.1 (S.D. Iowa 2011) (finding Dodd-Frank did not "raise[] the standard for NBA preemption"); *Cline v. Bank of Am.*, N.A., 823 F. Supp. 2d 387, 396 (S.D. W.Va. 2011) ("The recent [Dodd-Frank] amendments are better understood as clarifications of the law as opposed to substantive changes thereof.").

Dodd-Frank also helped clarify the level of deference we should give OCC regulations regarding NBA preemption. Congress made clear that courts need not use *Chevron* deference for OCC decisions regarding NBA preemption. *See* 12 U.S.C. § 25b(b)(5) ("A court reviewing [OCC] determinations . . . regarding preemption of a State law by title 62 of the Revised Statutes or section 371 of this title shall assess the validity of such determinations, depending upon the thoroughness evident in the consideration of the agency, the validity of the reasoning of the agency, the consistency with other valid determinations made by the agency, and other factors which the court finds persuasive and relevant to its decision."); *see also* 12 U.S.C. § 25b(b)(5) ("No [OCC] regulation or order . . . prescribed under subsection (b)(1)(B), shall be interpreted or applied so as to invalidate, or otherwise declare inapplicable to a national bank, the provision of the State consumer financial law, unless substantial evidence, made on the record of the proceeding, supports the specific finding regarding the preemption of such provision in accordance with" *Barnett Bank*). But, even this directive does not seem entirely new, as courts do not typically wholly rely on agency preemption determinations when deciding whether a state law is preempted. *See, e.g.*, *Wyeth v. Levine*, 555 U.S. 555, 576 (2009) (deciding to perform "its own conflict determination, relying on the substance of state and federal law and not on agency proclamations of pre-emption"); *Smiley v. Citibank (S. Dakota), N.A.*, 517 U.S. 735, 744 (1996) (assuming (without deciding) that the "question of whether a statute is pre-emptive . . . must always be decided de novo by the courts").

The biggest change Dodd-Frank made to the NBA preemption analysis involved new directives for the OCC's NBA preemption determinations. In part, Section 25b was Congress' attempt to undo "broader [preemption] standards adopted by rules, orders, and interpretations issued by the OCC in 2004." S. Rep. No. 111-176, at 175; *see also* H.R. Rep. No. 111-517 (2010) (Section 25b "revises the standard the OCC will use to preempt state consumer protection laws"). All future OCC NBA preemption determinations must now be made on a "case-by-case basis" and according to the guidelines Section 25b sets out. 12 U.S.C. § 25b(b)(1)(B); *see also* 12 U.S.C. § 25b(b)(3)(A) (defining "case-by-case basis" as only "concerning the impact of a particular State consumer financial law" or "the law of any other State with substantively equivalent terms").

E-FILED
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1855-GHK (AJWx) | Date | October 29, 2014 |
|---|---|---|---|
| Title | *Donald M. Lusnak v. Bank of America, N.A.* | | |

### b. Preemption of Section 2954.8(a)[8] Under *Barnett Bank*

As a preliminary matter, it is clear that Section 2954.8 is not preempted under Section 25b(b)(1)(A) as having a "discriminatory effect on national banks." Section 2954.8 applies to "[e]very financial institution," state-chartered and national banks alike. *See* Cal. Civ. Code. § 2954.8(a). Defendant also does not argue that the law is preempted by anything other than the NBA or its related regulations. Thus, Section 25b(b)(1)(C), which permits preemption by federal laws besides the NBA, is inapplicable here. The relevant question is whether Section 2954.8 is preempted under the legal standard set out by the Supreme Court in *Barnett Bank*. *See* 12 U.S.C. § 25b(b)(1)(B).

*Barnett Bank* requires us to determine whether the federal and state statutes here are in "irreconcilable conflict." *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 31 (1996). This can occur when complying with both laws is a "physical impossibility"[9] or the state law "stand[s] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (internal quotation marks removed). The preemption question "is basically one of congressional intent." *Id.* at 30; *Aguayo v. U.S. Bank*, 653 F.3d 912, 918 (9th Cir. 2011) ("Regardless of the name attached to the type of preemption, the dispositive issue in any federal preemption question remains congressional intent."). As Congressional intent is not always explicit, we must assume that "normally Congress would not want States to forbid, or to impair significantly, the exercise of a power that Congress explicitly granted." *Barnett Bank*, 517 U.S. at 33. In this context, "[l]egislative grants of both enumerated and incidental 'powers' to national banks historically have been interpreted as grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law." *Id.* at 32. But, "[t]o say this is not to deprive States of the power to regulate national banks, where . . . doing so does not prevent or significantly interfere with the national bank's exercise of its powers." *Id.* at 33.

---

[8] Section 2954.8(b) prohibits financial institutions from charging escrow account fees that would cause a borrower to receive less than 2 percent interest. Cal. Civ. Code. § 2954.8(b). Defendant claims that Section 2954.8(b) is also preempted because it impedes national banks' power under 12 C.F.R. § 7.4002(a) to charge "non-interest charges and fees." (Mot. at 10.) But, Plaintiff insists that his claims are not derived from Section 2954.8(b). (Opp'n at 16.) Even though Plaintiff included language from Section 2954.8(b) in the FAC (*see* FAC at ¶ 1) and accused Defendant of violating the entire statute, not just Section 2954.8(a) (*see* FAC at ¶ 32), we take Plaintiff at his word that he has abandoned any possible claim under Section 2954.8(b).

[9] Plaintiff argues that Wells Fargo's alleged payment of interest on its escrow accounts demonstrates that complying with both state and federal law is not impossible here. (Opp'n at 11.) This may be true. But, the relevant question here is whether allowing California to *force* a national bank to pay interest on escrow accounts would significantly interfere with any of its banking powers under *Barnett Bank*.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1855-GHK (AJWx) | Date | October 29, 2014 |
|---|---|---|---|
| Title | *Donald M. Lusnak v. Bank of America, N.A.* | | |

Here, we must ask: would imposing this escrow account interest payment requirement on national banks "prevent or significantly interfere" with national bank powers explicitly granted by Congress?

### i. Whether Escrow Accounts are Part of a National Bank's Lending Power[10]

12 U.S.C. § 371 gives banks the power to "make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate." 12 U.S.C. § 24 (Seventh) allows national banks to exercise "all such incidental powers as shall be necessary to carry on the business of banking" including "by loaning money on personal security." A bank's "incidental powers" are activities that are "convenient or useful in connection with the performance of one of the bank's established activities pursuant to its express powers under the National Bank Act." *Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949, 960 (9th Cir. 2005).

The OCC has issued several informal opinions that national banks' "incidental powers" include providing and servicing escrow accounts for collecting real estate taxes and insurance. As a preliminary matter, the OCC has "discretion to authorize activities beyond those specifically enumerated" in 12 U.S.C. § 24 (Seventh) and OCC regulations that interpret the NBA have the same force of law as the statute itself.[11] *NationsBank of N. Carolina, N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 258 n.2 (1995); *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153-54 (1982) (finding that regulations interpreting federal banking laws are "subject to judicial review only to determine whether [the OCC] has exceeded [its] statutory authority or acted arbitrarily"). But, we can defer to informal OCC interpretations, like the letters Defendant relies on here, only "to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris County*, 529 U.S. 576, 587 (2000); *see also Bank of Am.*, 309 F.3d at 563 (internal quotation marks omitted) (finding that if OCC informal position is "reasonable" it is "entitled to great weight").

---

[10] Plaintiff does not challenge Defendant's arguments that maintaining and servicing escrow accounts are incidental national bank powers. Instead, Plaintiff argues that Section 2954.8(a) does not significantly interfere with this (or any other) national bank power.

[11] Dodd-Frank's impact on OCC regulations is limited to the OCC's preemption determinations and does not apply to OCC regulations clarifying the meaning of the NBA's provisions. *See* 12 U.S.C. § 25b(b)(5)(B) (beyond review of OCC preemption decisions, "nothing in this section shall affect the deference that a court may afford to the Comptroller in making determinations regarding the meaning or interpretation" of the NBA); *see also* 12 U.S.C. § 25b(b)(1)(b); *Smiley*, 517 U.S. at 743-44 (distinguishing regulations that interpret the substantive meaning of statutes from those that opine on statutes' preemptive effects).

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1855-GHK (AJWx) | Date | October 29, 2014 |
|---|---|---|---|
| Title | *Donald M. Lusnak v. Bank of America, N.A.* | | |

Here, we are persuaded by the OCC's reasoning regarding escrow services. In deciding that "national banks are authorized to provide . . . escrow services to their loan or title policy customers as activities that are part of or incidental to the business of banking," the OCC reviewed judicial precedent and found that "three general principles" should guide whether activities fall within the "business of banking." OCC, Corporate Decision No. 99-06, 1999 WL 74103, at *1-2 (Jan. 29, 1999). The OCC asks: "(1) is the activity functionally equivalent to or a logical outgrowth of a recognized banking activity; (2) would the activity respond to customer needs or otherwise benefit the bank or its customers; and (3) does the activity involve risks similar in nature to those already assumed by banks?" *Id.* In the case of escrow services, "[n]ational banks have long been permitted to service the loans that they make and servicing frequently entails the assurance that local real estate taxes are paid on time." OCC, Conditional Approval No. 276, 1998 WL 363812, at *9 (May 8, 1998). Escrow services are "also of benefit to the borrowers as [they] relieve [ borrowers] of the tasks of paying such regular tax and insurance obligations in a lump sum." *Id.* These OCC letters persuade us that escrow accounts are logically related to the provision of real estate loans and are often a necessary and beneficial part of national banks' services in this arena. Thus, national banks are empowered to offer and service escrow accounts.

Further, other courts have concluded that bank services and activities with more attenuated connections to banks' lending powers can still be classified as "incidental powers." For example, some courts have held that account fee disclosures are part of a bank's deposit-taking powers. *See, e.g.*, *Robinson v. Bank of Am., NA*, 525 Fed. Appx. 580, 582 (9th Cir. 2013). Other courts consider credit card disclosures and offers to be part of a bank's lending activities. *See, e.g.*, *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1034 (9th Cir. 2008); *Am. Bankers Ass'n v. Lockyer*, 239 F. Supp. 2d 1000, 1016 (E.D. Cal. 2002). Only services with no logical connection to national banks' enumerated powers, like "operating a general travel agency," have not qualified. *See, e.g.*, *Arnold Tours, Inc. v. Camp*, 472 F.2d 427 (1st Cir. 1972). These cases help affirm the reasonableness of the OCC's interpretation that escrow accounts fall within the scope of a national bank's powers.

### ii. Whether Section 2954.8(a) Significantly Impairs This Power

As escrow services qualify as a national banking power, the next inquiry under *Barnett Bank* is whether Section 2954.8(a) significantly interferes with this power.[12] Defendant argues it does because under Section 2954.8(a), Defendant could offer escrow accounts only if it paid "at least 2 percent interest on . . . escrow account balance[s]." (Mot. at 10.) Defendant further argues that Plaintiff's

---

[12] The only case law about preemption of state laws regarding escrow accounts analyzes the issue under pre-Dodd-Frank HOLA field preemption, which is not analogous. *See, e.g.*, *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178 (2d Cir. 2005) (internal quotation marks removed) (concluding that having "occupie[d] the entire field of lending regulation for federal savings associations" state laws that required lenders to pay interest on escrow accounts were preempted); *First Fed. Sav. & Loan Ass'n of Boston v. Greenwald*, 591 F.2d 417, 425 (1st Cir. 1979) (same).

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1855-GHK (AJWx) | Date | October 29, 2014 |
|---|---|---|---|
| Title | *Donald M. Lusnak v. Bank of America, N.A.* | | |

"Complaint seeks to impose state-law conditions on the circumstances under which banks may extend mortgage credit." (Mot. at 12.) This is because banks treat an escrow account as a "term of credit" and may begin to refuse loans without the security such accounts provide. (*Id.*)[13]

We find that Section 2954.8(a) constitutes a significant interference. Requiring Defendant to pay all of its borrowers 2 percent interest would allow a state to impose "costly operational and administrative burdens on national banks' lending activities" and would jeopardize a helpful (and free) service that Defendant provides its real estate borrowers. *See Am. Bankers Ass'n*, 239 F. Supp. 2d at 1016 (finding costly California credit card disclosure requirements are preempted as to national banks)[14]; *see also Schipper*, 812 F. Supp. 2d at 973 (finding state law preempted under *Barnett Bank* partly because it required national banks to reimburse certain fees to state banks). Further, Section 2954.8(a)'s rigid 2 percent requirement does not take changing prevailing interest rates into account. Thus, it would interfere with a national bank's ability to make loans given evolving and potentially fluid market conditions. The NBA was passed to "protect banks from intrusive state regulation." *Robinson*, 2011 WL 5870541, at *2. Forcing Defendant to comply with Section 2954.8(a) is contrary to that intent. Finally, as Defendant points out, holding otherwise might subject Defendant to different interest rate requirements in the 49 other states in which it operates. (Reply at 5.) "Diverse and duplicative superintendence of national banks' engagement in the business of banking" is exactly what "the NBA was designed to prevent." *Watters*, 550 U.S. at 13-14.

Plaintiff's FAC is not an attempt to subject a national bank to a state law of general applicability, which would be permissible. *See id.* at 11 ("Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA."). In other words, Section 2954.8 does not require of Defendant what it would of all businesses—"to refrain from fraudulent, unfair, or illegal behavior." *See Martinez v. Wells Fargo Home Mortg.*, 598 F.3d 549, 555 (9th Cir. 2010); *Cabrera v. Countrywide Home Loans*,

---

[13] To support its preemption arguments, Defendant also points to 12 C.F.R. § 34.4, the OCC's regulation announcing the categories of state laws preempted by the NBA. Specifically, 12 C.F.R. § 34.4(a)(6) states that national banks need not follow "state law limitations concerning . . . [e]scrow accounts, impound accounts, and similar accounts [and] terms of credit." Plaintiff argues that we cannot defer to this regulation because: (1) it does not involve a case-by-case evaluation of state laws and (2) under Dodd-Frank, we need not defer to the OCC's preemption decisions. But, even without relying on Section 34.4, we conclude that Section 2954.8(a) is preempted as applied here.

[14] Plaintiff claims that we cannot use pre-Dodd-Frank cases to inform our preemption analysis. (*See* Opp'n at 15.) We do not agree. As discussed above, Dodd-Frank merely clarified that *Barnett Bank* is the appropriate standard. Thus, where courts have looked beyond OCC regulations and "ruled consistently with *Barnett Bank*, the end result after the Dodd-Frank Act will not change." *See* Debra Lee Hovatter, *Preemption Analysis Under the National Bank Act: Then and Now*, 67 Consumer Fin. L.Q. Rep. 5, 11 (2013).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1855-GHK (AJWx) | Date | October 29, 2014 |
|---|---|---|---|
| Title | *Donald M. Lusnak v. Bank of America, N.A.* | | |

*Inc.*, 2013 U.S. Dist. LEXIS 47801, at *21-23 (N.D. Cal. Apr. 2, 2013) (unfair foreclosure claim). Instead, Plaintiff seeks to directly impede Defendant's authority under the NBA to provide and service its escrow accounts as it sees fit.

### iii.   Impact of Section 1639d on Preemption Analysis

Plaintiff claims that "Congress's enactment of 15 U.S.C. § 1639d(g)(3) . . . expressly signaled that, as of that time, Congress viewed the application of Cal. Civ. Code § 2954.8(a) and similar state laws to national banks as being consistent with national banks' powers." (Opp'n at 12.) We disagree. Section 1639d of the Truth in Lending Act ("TILA") requires "creditors"[15] "in connection with the consummation of a consumer credit transaction secured by a first lien on the principal dwelling of the consumer" to establish escrow accounts for the payment of taxes and insurance in certain specified circumstances. 15 U.S.C. § 1639d. Section 1639d(g)(3) provides rules for the administration of these "mandatory escrow or impound accounts," including the payment of interest. 15 U.S.C. § 1639d(g)(3). Specifically, "[i]f prescribed by applicable State or Federal law, each creditor shall pay interest to the consumer on the amount held in any impound, trust, or escrow account that is subject to this section in the manner as prescribed by that applicable State or Federal law." *Id.* In situations where a mandatory escrow account is not required, Section 1639d clarifies that parties may still voluntarily agree to establish escrow accounts "on terms mutually agreeable to the parties to the loan." 15 U.S.C. § 1639d(f)(1).

It is unlikely that Congress would be so subtle in requiring national banks to comply with state laws that would otherwise significantly interfere with their banking powers. *See Barnett Bank*, 517 U.S. at 34; *United States v. Locke*, 529 U.S. 89, 106-07 (2000) ("We think it quite unlikely that Congress would use a means so indirect . . . to upset the settled division of authority" between federal and state governments). The statute in question must "contain language from which it can be reasonably inferred that Congress intended to disrupt other federal laws including the National Bank[] Act by an implicit reservation of the power to administratively regulate banks to the states." *Bank of Am.*, 309 F.3d at 565 n.9.

This is not the case here. While Section 1639d does impose additional federal requirements on "creditors" (including national banks like Defendant), it contains no language from which we can "reasonably infer" that Congress intended to limit NBA preemption.[16] First, the context in which

---

[15] TILA's definition of the term "creditor" is broad enough to include national banks like Defendant. *See* 15 U.S.C. § 1602 (g) (a "creditor" "both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit . . . and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable . . .").

[16] Defendant argues that "[t]wo Ninth Circuit decisions illustrate the difficulty Plaintiff faces in showing how provisions codified in Title 15 of the Unites States Code contain the necessary 'explicit

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1855-GHK (AJWx) | Date | October 29, 2014 |
|---|---|---|---|
| Title | *Donald M. Lusnak v. Bank of America, N.A.* | | |

Congress passed Section 1639d demonstrates that it should have no impact on preemption under the NBA. "Congress is presumed to be familiar with the background of existing law when it legislates." *Abebe v. Gonzales*, 493 F.3d 1092, 1101 (9th Cir. 2007); *see also Cannon v. University of Chicago*, 441 U.S. 677, 699 (U.S. 1979) ("[I]t is not only appropriate but also realistic to presume that Congress was thoroughly familiar with . . . important precedents . . . and that it expected its enactment to be interpreted in conformity with them."). Here, where Congress wanted to make changes to existing NBA preemption standards, it did so explicitly by eliminating HOLA field preemption and clarifying the appropriate standard for OCC and federal court preemption review going forward. *See* 12 U.S.C. § 25b. Section 1639d does not mention national banks, the NBA, or preemption. Further, Section 1639d is located in a different Title of the United States Code and as part of a different statutory scheme. Thus, it lacks sufficient logical connection to the NBA to demonstrate Congressional intent to change the NBA's preemptive scope in this arena.

Further, Section 1639d's plain language does not support Plaintiff's interpretation. Under Section 1639d(g)(3)'s terms creditors must pay interest on the accounts under this section only "if" required by "applicable State or Federal law." 15 U.S.C. § 1639d(g)(3). There is no "applicable" state law because Section 2954.8(a) is preempted by the NBA, and therefore is not capable of being applied to national banks. *See Ransom v. FIA Card Servs., N.A.*, 131 S. Ct. 716, 724 (2011) (defining "'applicable' as 'capable of being applied: having relevance' or 'fit, suitable, or right to be applied: appropriate'"). Congress's use of conditional terms such as "if" and "applicable" demonstrates that Section 1639d was not meant, in and of itself, to override established rules of preemption in a different statutory scheme. If anything, Congress recognized that such laws might not always "apply" to certain creditors under certain circumstances and made no affirmative changes to when this would occur. The inclusion of such conditional language also means that Congress did not need to explicitly "exclude national banks from this requirement" as Plaintiff suggests. (Opp'n at 12.) Accordingly, 1639d does not alter our preemption analysis.

       **2.     Plaintiff's Section 1639d Claims**

Plaintiff also claims that Defendant has committed per se violations of 15 U.S.C. § 1639d(g)(3). (Opp'n at 18.) But, Section 1639d does not apply to Defendant in this case. First, as discussed above,

---

statement' of Congress's intent to subject a national banking power to state law restrictions." (Reply at 8.) But, these cases are insufficiently analogous to inform our decision here. Granted, both cases held that savings clauses in specific Titles of the United States Code cannot trump preemption under the federal banking laws. *See Silvas v. E*Trade Mortgage*, 514 F.3d 1001, 1007 (9th Cir. 2008); *Bank of Am.*, 309 F.3d at 565. But, this was because the savings clauses involved explicitly limited their anti-preemptive effect to the subchapter in question. *See id.* Here, Plaintiff is effectively arguing that Section 1639d is a savings clause because it allegedly carves out a preemption exception for state laws requiring interest charges on escrow accounts. As 1639d includes no similar subchapter limitation, the cases Defendant cites are largely unhelpful.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1855-GHK (AJWx) | Date | October 29, 2014 |
|---|---|---|---|
| Title | *Donald M. Lusnak v. Bank of America, N.A.* | | |

Section 1639d requires Defendant to make interest payments only if required by "applicable" state law, which is not the case here, as Section 2954.8(a) is preempted. *See Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 448 (1st Cir. 1995) ("ERISA preemption . . . would dictate the applicable law."); *Atl. Richfield Co. v. Brown*, 1985 WL 3316, at *7 (N.D. Ill. Oct. 21, 1985) ("Because of . . . preemption, only the [federal law] is applicable law."). Second, this provision applies only to "an escrow . . . account subject to this section." 15 U.S.C. § 1639d(g)(2). Section 1639d requires the establishment of escrow accounts for certain types of loans made after January 21, 2013, the statute's effective date.[17] 15 U.S.C. § 1639d(a) ("a creditor, in connection with the consummation of a consumer credit transaction secured by a first lien on the principal dwelling of the consumer . . . shall establish, before the consummation of such transaction, an escrow or impound account . . . ."). As Plaintiff's account was established prior to Section 1639d's effective date, and Congress has expressed no intent that Section 1639d shall apply retroactively, his account is not subject to the requirements of this section. Thus, Plaintiff cannot state a claim under Section 1639d.

### 3. Impact of Preemption on Plaintiff's UCL and Contract Claims

As discussed above, Defendant has not violated state or federal law in not paying interest on Plaintiff's escrow accounts. Since Plaintiff's UCL claim is premised on these alleged violations, it must be dismissed.

Plaintiff's breach of contract claim also hinges on his allegations that Defendant violated "applicable law." (*See* FAC at ¶ 10 (agreement provides it would pay interest on escrow accounts if "Applicable Law requires interest to be paid").) The Parties' 2009 agreement defines "Applicable Law" as "all *controlling* applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." (Supp. RJN, Ex. E, at § J (emphasis added).) Neither Section 2954.8 nor Section 1639d is controlling on Plaintiff's loan agreements. Defendant has complied with "applicable law" in not paying interest on Plaintiff's escrow account. Accordingly, Plaintiff's breach of contract claim must also be dismissed.

## III. Conclusion

Based on the foregoing, we **DISMISS** Plaintiff's FAC with prejudice.

---

[17] *See* Pub. L. 110-203, § 1400(c)(3) (providing that any section of Title XIV of Dodd-Frank for which no regulations have been issued shall take effect "on the date that is 18 months after the designated transfer date"); Bureau of Consumer Financial Protection, *Escrow Requirements Under the Truth in Lending Act (Regulation Z)*, Fed. Reg. 4726-01 (Jan. 22, 2013) ("The Dodd-Frank Act requirements to be implemented by the Title XIV Rulemakings generally will take effect on January 21, 2013 . . . .").

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1855-GHK (AJWx) | Date | October 29, 2014 |
|---|---|---|---|
| Title | *Donald M. Lusnak v. Bank of America, N.A.* | | |

**IT IS SO ORDERED.**

-- : --

Initials of Deputy Clerk    Bea