Michael W. Sobol (State Bar No. 194857)
msobol@lchb.com
Roger N. Heller (State Bar No. 215348)
rheller@lchb.com
Avery S. Halfon (admitted *pro hac vice*)
ahalfon@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3336
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Richard D. McCune (State Bar No. 132124)
rdm@mccunewright.com
Elaine S. Kusel (admitted *pro hac vice*)
esk@mccunewright.com
MCCUNE WRIGHT AREVALO, LLP
3281 E. Guasti Road, Suite 100
Ontario, CA 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD M. LUSNAK, on behalf of himself and all others similarly situated,<br><br>             Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.; and DOES 1 through 10, inclusive,<br><br>             Defendant. | Case No. 2:14-cv-01855-GW (AFMx)<br><br>**[REDACTED VERSION]**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**<br><br>Date: November 14, 2019<br>Time: 8:30 a.m.<br>Judge: Hon. George Wu |

TO THE ABOVE-NAMED COURT AND TO THE PARTIES AND THEIR

ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 14, 2019, at 8:30 a.m., at 350

West 1st Street, Los Angeles, CA, 90012, Courtroom 9D, 9th Floor, Plaintiff

Donald M. Lusnak ("Plaintiff") will and hereby does move the Court to certify the

following "Class" pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3):

> All mortgage loan customers of Bank of America—for loans made by
> Bank of America or where Bank of America purchased obligations
> secured by the property—whose mortgage loan is for a one- to four-
> family residence located in California, and who paid Bank of America
> money in advance for payment of taxes and assessments on the
> property, for insurance, or for other purposes relating to the property,
> and did not receive at least 2 percent simple interest per annum on the
> amounts so held by Bank of America from July 1, 2008 to the date of
> class certification.  "Bank of America" as used in this Class definition
> includes Bank of America and its subsidiaries.

As discussed in the accompanying memorandum of points and authorities, the proposed Class should be certified because it satisfies all requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).

Additionally, Plaintiff will and hereby does move the Court to appoint Plaintiff as class representative to represent the Class, and to appoint his counsel (Lieff Cabraser Heimann & Bernstein LLP and McCune Wright Arevalo LLP) as Class Counsel to represent the Class pursuant to Fed. R. Civ. P. 23(g).  As discussed in the accompanying memorandum, Plaintiff and proposed Class Counsel satisfy all applicable standards for appointment.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on August 1, 2019. This motion is based on this Notice of Motion; the accompanying memorandum of points and authorities; the accompanying declarations of Donald Lusnak, Roger N. Heller, and Richard D. McCune; the argument of counsel; and all pleadings and papers on file in this case.

1

Dated:  August 8, 2019

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP


By:    /s/ *Roger N. Heller*[1]
    Roger N. Heller

Michael W. Sobol (State Bar No. 194857)
msobol@lchb.com
Roger N. Heller (State Bar No. 215348)
rheller@lchb.com
Avery S. Halfon (admitted pro hac vice)
ahalfon@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3336
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Richard D. McCune (State Bar No. 132124)
rdm@mccunewright.com
Elaine S. Kusel (admitted pro hac vice)
esk@mccunewright.com
MCCUNE WRIGHT AREVALO, LLP
3281 E. Guasti Road, Suite 100
Ontario, CA 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Attorneys for Plaintiff and the Proposed
Class*

---

[1] I, Richard D. McCune, attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Michael W. Sobol (State Bar No. 194857)
msobol@lchb.com
Roger N. Heller (State Bar No. 215348)
rheller@lchb.com
Avery S. Halfon (admitted *pro hac vice*)
ahalfon@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3336
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Richard D. McCune (State Bar No. 132124)
rdm@mccunewright.com
Elaine S. Kusel (admitted *pro hac vice*)
esk@mccunewright.com
MCCUNE WRIGHT AREVALO, LLP
3281 E. Guasti Road, Suite 100
Ontario, CA 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD M. LUSNAK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 2:14-cv-01855-GW (AFMx)<br><br>**[REDACTED VERSION]**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date: November 14, 2019<br>Time: 8:30 a.m.<br>Judge: Hon. George Wu |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

I. Mortgage Escrow Accounts ........................................................................ 3

II. Section 2954.8(a) ........................................................................................ 4

III. For More Than A Decade, BofA Deliberately Defied Section 2954.8(a) As A Matter of Company Policy. ........................................... 5

IV. Plaintiff Lusnak Was Among the Many Affected BofA Customers .............. 7

V. The Form Deeds of Trust of the Class Further Obligate BofA to Comply With the California Law. ............................................................ 7

VI. BofA Pervasively Told Customers It Was Not Required to Pay Them Escrow Interest Because of Preemption. .............................................. 9

VII. The Complaint and Judge King's Dismissal Order ..................................... 11

VIII. The Ninth Circuit Reverses, and Expressly Rejects BofA's NBA Preemption Justification. ....................................................................... 11

IX. ███████████████████████ .................................................. 11

LEGAL STANDARD ........................................................................................... 12

THE PROPOSED CLASS ..................................................................................... 12

ARGUMENT ......................................................................................................... 14

I. The Requirements of Rule 23(a) are Satisfied. ......................................... 14

   A. Numerosity (Rule 23(a)(1)) ............................................................. 14

   B. Commonality (Rule 23(a)(2)) .......................................................... 14

   C. Typicality (Rule 23(a)(3)) ................................................................ 17

   D. Adequacy (Rule 23(a)(4)) ................................................................ 18

   E. The Class Members Can Be Identified by Objective Criteria. .......... 18

II. Rule 23(b)(3) is Satisfied ......................................................................... 19

   A. Common Questions Will Predominate ............................................. 19

     1. Common Liability Questions Will Predominate. ................. 20

     2. Each Class Member's Restitution/Damages Amount is Capable of Calculation By Automated Means. ................. 22

   B. A Class Action is Superior to Other Methods of Adjudication .......... 23

III. The Court Should Appoint Plaintiff His Counsel to Represent the Class. .................................................................................................... 24

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allbritton v. Wiggins*,
No. 4:13-CV-00158-SWW, 2014 WL 12768317 (E.D. Ark. Mar. 14, 2014) ..... 16

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997)..................................................................................20, 23, 24

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)..........................................................................................12, 20

*Ayala v. U.S Xpress Enterprises, Inc.*,
No. EDCV 16-137-GW(KKX), 2017 WL 3328087
(C.D. Cal. July 27, 2017)..................................................................................17, 18

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017), *cert. denied*
sub nom. 138 S. Ct. 313 (2017) ..........................................................................19

*Bulmash v. Travelers Indem. Co.*,
257 F.R.D. 84 (D. Md. 2009) ................................................................15, 17, 20

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)..........................................................................................23

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ..........................................................................18

*Fendler v. Westgate-California Corp.*,
527 F.2d 1168 (9th Cir. 1975) ..........................................................................25

*In re Banc of California Sec. Litig.*,
326 F.R.D. 640 (C.D. Cal. 2018)..........................................................................14

*In Re Hyundai & Kia Fuel Econ. Litig.*,
No. MDL 13-2424-GW(FFMX), 2014 WL 12594158
(C.D. Cal. June 26, 2014) ..................................................................................19, 20

*In re Nassau Cty. Strip Search Cases*,
461 F.3d 219 (2d Cir. 2006) ..............................................................................21

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) ..........................................................................22, 24

*Lusnak v. Bank of Am., N.A.*,
883 F.3d 1185 (9th Cir.), *cert. denied*, 139 S. Ct. 567 (Nov. 19, 2018) ...... 1, 4, 11

*Mays v. Wal-Mart Stores, Inc.*,
330 F.R.D. 562 (C.D. Cal. 2019).......................................................................21

*Moore v. Int'l Cosmetics & Perfumes, Inc.*,
No. EDCV141179DMGDTBX, 2016 WL 7644849
(C.D. Cal. Mar. 17, 2016).................................................................................15

*Moran v. Prime Healthcare Mgmt., Inc.*,
3 Cal. App. 5th 1131 (2016)............................................................................15

*Murfitt v. Bank of Am. NA*,
No. EDCV131182JGBSPX, 2015 WL 13306363 (C.D. Cal. Oct. 8, 2015)........21

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) .......................................................... 12, 17

*Pulaski & Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015) ............................................................... 22

*Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ............................................................. 17

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) .................................................................. 20, 22

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................ 14

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ............................................................. 23

*Yamada v. Nobel Biocare Holding AG*,
  275 F.R.D. 573 (C.D. Cal. 2011) ......................................................... 14

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ............................................................. 24

**RULES**

Fed. R. Civ. P. 23(a) ...................................................................... 3, 12

Fed. R. Civ. P. 23(a)(1) ....................................................................... 14

Fed. R. Civ. P. 23(a)(2) ....................................................................... 14

Fed. R. Civ. P. 23(a)(3) ....................................................................... 17

Fed. R. Civ. P. 23(a)(4) ....................................................................... 18

Fed. R. Civ. P. 23(b)(3) ................................................................. passim

Fed. R. Civ. P. 23(c)(1)(B) .................................................................. 24

Fed. R. Civ. P. 23(g)(1) ....................................................................... 25

Fed. R. Civ. P. 23(g)(1)(A) .................................................................. 25

**TREATISES**

2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*
  § 4:25 (4th ed. 2002) ........................................................................... 21

5 *Moore's Federal Practice—Civil* § 23.22 (2016) ................................ 14

**INTRODUCTION**

This case involves the straightforward application of a single California statute to a common course of conduct whereby Defendant Bank of America, N.A. ("BofA") deliberately defied that statute.  Simply put, California law expressly requires "escrow interest" to be paid on the balances in California residential mortgage escrow (i.e., "impound") accounts, but BofA, by design as a matter of company policy, did not pay such interest for the proposed Class for the past decade.  All of the affected BofA customers are specifically identifiable from BofA's historical customer data, and the amount of each of their damages (i.e., the unpaid interest) can be readily calculated by automated means using that data.  This case is ideally suited for an efficient class-wide resolution, either through summary judgment or a streamlined class trial.

California Civil Code § 2954.8(a) requires all mortgage lenders in California to pay at least 2% interest per year on the balances held in California residential borrowers' escrow accounts (i.e., money customers pay to the bank in advance for the payment of property taxes, home insurance, and other purposes related to the property).  It is undisputed that, between 2008 and the end of 2018, BofA maintained a policy and practice whereby it deliberately did not pay escrow interest for certain large categories of escrow accounts covered by Section 2954.8(a).  For the years 2010 to 2018, alone, BofA failed to pay such interest to more than ▮▮▮▮▮ California customers.  As a result, BofA improperly pocketed ▮▮▮▮ ▮▮▮▮ of dollars that should have been paid to these consumers.

The erroneous, ostensible basis for BofA's no-interest policy was its position that it did not have to follow Section 2954.8(a) because it was preempted by the National Bank Act.  That position, however, was expressly rejected last year by the Ninth Circuit in this very case.  *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1188 (9th Cir.) ("the NBA does not preempt California Civil Code § 2954.8(a)."), *cert. denied*, 139 S. Ct. 567 (Nov. 19, 2018).

1　████████████████████████████████████

2　██████████████████████████████████████

3　██████████████████████████████████████

4　████████████████████████   BofA has **not** paid the putative Class members

5　the interest it failed to pay them through 2018.

6　This case is ideally suited for class treatment.  All putative Class members

7　were, by definition, subject to the exact same course of conduct by BofA.  Their

8　claims all arise under a single state's law and will be resolved predominately, if not

9　exclusively, through the answers to just two common questions: (1) Does California

10　Civil Code § 2954.8(a) require BofA to pay the escrow interest; and (b) Did BofA

11　pay such interest.

12　The first question—was BofA required by the statute to pay escrow

13　interest—presents a legal question the Court can resolve in one fell swoop for the

14　entire Class, the definition of which tracks the language of Section 2954.8(a).

15　The second question—did BofA pay the interest—will likewise be resolved

16　through common proof.  Indeed, BofA acknowledges, as it must, that it did not pay

17　the interest to the Class.  ████████████████████████████

18　██████████████████████████████████████

19　██████████████████████████████████████

20　██████████████████████████

21　In addition to being directly required by Section 2954.8(a) to pay the interest,

22　BofA's obligation to follow the California law is further enshrined in the Class

23　members' form loan contracts which expressly commit the Bank to comply with the

24　California law.  Plaintiff's second cause of action, for breach of contract, thus will

25　turn on the same two questions as their UCL "unlawful" prong claim, and the

26　additional common question of whether BofA's defiance of Section 2954.8(a) also

27　constituted a breach of its obligations under the form contracts.

28　Moreover, while not necessary for class certification, Plaintiffs' data analysis

1    expert, Arthur Olsen, confirms that each Class member can be identified, and the

2    exact amount of their restitution/damages (i.e., the unpaid escrow interest) can be

3    calculated, along with the applicable pre-judgment interest, using BofA's historical

4    customer data.  Indeed, Mr. Olsen has already performed these calculations for

5    more than ████████ Class members, as summarized in his accompanying report. The

6    results of Mr. Olsen's final analysis can be presented to the Court in an organized,

7    efficient manner.

8          The common questions here will absolutely predominate over any individual

9    questions, if any, and this case presents no significant manageability concerns.  In

10   fact, given that BofA undisputedly, by design, did not pay the interest in question,

11   and given that the Bank's ostensible excuse for that policy was rejected by the

12   Ninth Circuit, Plaintiff believes that a trial may not be necessary at all, and that

13   judgment likely can be entered against BofA through a motion for summary

14   judgment.  To the extent a trial is necessary, it would be concise and eminently

15   manageable.

16         The proposed Class meets all requirements for certification under Rules 23(a)

17   and 23(b)(3).  Plaintiff therefore respectfully requests that the Court certify the

18   proposed Class and appoint Plaintiff and his counsel to represent the Class.

19                              **BACKGROUND**

20   **I.**     **Mortgage Escrow Accounts**

21         Many of BofA's residential mortgage customers pay a fixed amount of

22   money each month into an escrow account (sometimes called an "impound"

23   account), on top of their monthly payment towards principal and interest.  In most

24   instances, the account is mandated by law, by the loan's guarantor (e.g., the federal

25   government), and/or by BofA itself.  BofA, in turn, holds these funds and draws

26   from them to pay, on the customer's behalf, certain expenses associated with the

27   property, such as property taxes, home insurance, and PMI insurance.  Customers'

28   escrow accounts regularly carry a significant positive balance, in part because the

customer makes monthly deposits but the Bank pays expenses associated with the property less often.  BofA has access to the funds in these accounts and benefits from having that access.  First Amended Complaint (Dkt. 22; "FAC"), ¶ 1.

Between 2010 and 2018, alone, BofA maintained active escrow accounts for more than ▉ million residential mortgage loans in California.[2]

## II.   Section 2954.8(a)

Enacted in 1976, Cal. Civ. Code § 2954.8(a) has long required mortgage lenders doing business in California (including BofA) to pay interest on customers' positive escrow account balances for all 1-4 family residential mortgages (hereinafter, "Residential Loans"), at a rate of at least 2 percent per annum:

> Every financial institution that makes loans upon the security of real property containing only a one- to four-family residence and located in this state or purchases obligations secured by such property and that receives money in advance for payment of taxes and assessments on the property, for insurance, or for other purposes relating to the property, shall pay interest on the amount so held to the borrower. The interest on such amounts shall be at the rate of at least 2 percent simple interest per annum. Such interest shall be credited to the borrower's account annually or upon termination of such account, whichever is earlier.

Cal. Civ. Code § 2954.8(a).  California is one of approximately ▉ states with statutes or regulations regarding the payment of escrow interest.[3]

---

[2] BofA has not yet produced the class data for 2008 or 2009.  Ex. A [Olsen Report ¶¶ 15, 25].  References herein to "Exs. A - OO" are to the exhibits attached to the accompanying Heller Decl.

[3] *Lusnak*, 883 F.3d at 1195; Ex. E [BANA0013522 at 523].

*Footnote continued on next page*

**III.    For More Than A Decade, BofA Deliberately Defied Section 2954.8(a) As A Matter of Company Policy.**

At all relevant times, BofA was well aware of Section 2954.8(a) and its mandate to pay escrow interest for Residential Loans in California. █████████

████████████████████████████████████████████████████████

██████████████████████████████.[4] ██████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████.[5] ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█ ████████████████████████████████████████

█ ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████.[6]

█████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[4] Ex. E [BANA0013522 at 523]; Ex. B [Orriss Dep. 103:3-22, 104:19-25]; Ex. D [Martin Dep. 66:14-22].

[5] Ex. E [BANA0013522 at 523]; Ex. B [Orriss Dep. 101:1-10].

[6] Ex. F [BANA0005957 at 979-980]; Ex. G [BANA0022230 at 257-258]; Ex. D [Martin Dep. 40:3-41:13]; Ex. B [Orriss Dep. 63:1-10, 77:22-79:8, 81:20-83:10, 88:8-25].

*Footnote continued on next page*

1  ███████████.[7] ██████████████████████████████

2  ████████████████████████████████████████████.[8] During

3  this time period, BofA monitored and periodically updated its loan data entry

4  systems and training to ensure that the above-described policy was being fully

5  adhered to and to address any problems with same.[9]

6         Notably, at the same time BofA was deliberately and systematically defying

7  Section 2954.8(a), BofA's chief competitor in California, Wells Fargo Bank, N.A.,

8  was paying escrow interest to its customers at 2% per annum in compliance with

9  the statute.[10]

10        BofA's policy and practice of defying Section 2954.8(a) remained in place

11  until at least this year (i.e., 2019) ██████████████████████████████

12  ██████████████████████████████████████████

13  ███████.  For the years 2010 to 2018, alone, pursuant to its policy and practice

14  described above, BofA failed to pay escrow interest for more than ████████

15  California Residential Loans.[11]  Through this policy and practice, BofA improperly

16  pocketed ████████████████ at the expense of California consumers who

17  _____

18  [7] Ex. H [BANA0013490 at 505] ████████████████████████

19  ████████████████████████████████; Ex. F [BANA0005957

20  at 979] ████████████████████████████████████

21  ████████████████████████ Ex. I

22  [BANA0009345] ████████████████████████; Ex. G [BANA0022230 at 257-

23  258]; Ex. E [BANA0013522 at 523]; Ex. B [Orriss Dep. 63:1-65:3, 72:13-73:9,
   101:1-10, 104:19-24 181:14-17, 183:14-21]; Ex. D [Martin Dep. 66:14-22].

24  [8] Ex. J [BANA0001672] ████████████████████████████

25  ████████████ Ex. G [BANA0022230 at 258] ██████████
   ████████████████████; Ex. K [BANA0013936 at 939];

26  Ex. B [Orriss Dep. 72:13-73:9, 83:15-22].

27  [9] Ex. B [Orriss Dep. 74:13-75:15, 77:22-79:8, 81:20-83:10, 88:8-25].

28  [10] FAC, ¶¶ 2, 7; Ex. B [Orriss Dep. 99:20-100:10].

    [11] Ex. A [Olsen Report ¶¶ 15, 25].

*Footnote continued on next page*

should have received this interest.[12]

## IV.   Plaintiff Lusnak Was Among the Many Affected BofA Customers

Plaintiff Donald Lusnak is one of the many California BofA Residential Loan customers who did not receive escrow interest as a result of BofA's policy and erroneous preemption assertion.  In connection with his loans, Mr. Lusnak was required to maintain a mortgage escrow account which regularly had positive balances.[13]  At no time—from the time he took out his original loan with BofA predecessor Countrywide until he discharged his BofA loan in 2018—did BofA pay Mr. Lusnak interest on the balances in his escrow account.[14]  According to the Bank's data, from 2010 to 2018, BofA failed to pay Mr. Lusnak $▇▇▇ in escrow interest it was required to pay him.[15]

## V.   The Form Deeds of Trust of the Class Further Obligate BofA to Comply With the California Law.

BofA and other mortgage lenders doing business in California utilize "industry standard" form loan documents for residential mortgage loans, including form deeds of trust.  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[16]▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[17]

Like Plaintiff Lusnak's deed of trust, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[12] Ex. A [Olsen Report ¶¶ 19, 25].

[13] *E.g.,* Ex. M [LUSNAK000039 at 41]; Ex. N [LUSNAK000044 at 46].

[14] FAC, ¶ 15-16; Ex. A [Olsen Report ¶¶ 20-21]; *see also,* Ex. O [LUSNAK000170 at 75] (BofA letter confirming it did not pay Lusnak escrow interest based on the Bank's assertion of preemption).

[15] Ex. A [Olsen Report ¶ 20].

[16] Ex. C [Strum Dep. 45:6-47:12, 51:22-52:5].

[17] Ex. P [BANA00024519]; Ex. C [Strum Dep. 60:23-61:7].

*Footnote continued on next page*

1

2

3    [redacted][18] Thus, in addition to directly violating

4    California Civil Code § 2954.8(a) (which is independently actionable under the

5    UCL's "unlawful" prong), BofA through its alleged defiance of the statute has also

6    breached its contractual obligations to follow California law.  FAC, ¶¶ 10, 35-39.

7          While the above contractual language suffices to create a separate contractual

8    duty to follow Section 2954.8(a), most of the deed of trust templates also include

9    additional provisions that hammer home this separate obligation.  They state that

10   the "rights and obligations contained in this Security Instrument are subject to any

11   requirements and limitations of Applicable Law," and they further provide that:

12   "Unless an agreement is made in writing or Applicable Law requires interest to be

13   paid on the [escrow account funds], Lender shall not be required to pay Borrower

14   any interest or earnings on the Funds."  "Applicable Law" is defined as "all

15   controlling applicable federal, state and local statutes, regulations, ordinances and

16   administrative rules and orders (that have the effect of law) as well as all applicable

17   final, non-appealable judicial opinions."[19]

18

19

_____

20   [18] Ex. Q [BANA0002223 at 226 and 231]; Exs. R-HH[BANA0000032 at 35 and
21   39, BANA0000078 at 81 and 85, BANA0000105 at 108-109 and 113,
     BANA0006714 at 716-717 and 722, , BANA0006787 at 790-791 and 794, , ,
22   BANA0006908 at 911-912 and  917, BANA0006935 at 938-939 and 943,
     BANA0006948 at 951-952 and 956, BANA0007022 at 25 and 30, , BANA0008346
23   at 348-349 and 354, BANA0008406 at 409-410 and 413, BANA0008498 at 501-
     502 and 507, BANA0000001 at 2-3 and 5, BANA0006766 at  767-768 and 770,
24   BANA0006808 at 809-810 and 812, BANA0006850 at 851-852 and 854,
25   BANA0007288 at 289-290 and 292].

     [19] Ex. R-CC [BANA0000032 at 35, BANA0000078 at 81, BANA0000105 at 108,
26   BANA0006714 at 717, BANA0006787 at 791, BANA0006908 at 912,
27   BANA0006935 at 938, BANA0006948 at 951, BANA0007022 at 25,
     BANA0008346 at 349, BANA0008406 at 410, BANA0008498 at 502].  Plaintiff
28   Lusnak's deed of trust has such a provision.  Ex. Q [BANA0002223 at 226].

*Footnote continued on next page*

**VI.    BofA Pervasively Told Customers It Was Not Required to Pay Them Escrow Interest Because of Preemption.**

Throughout the time (and apparently even after) BofA was purposefully defying Section 2954.8(a), it was also telling its customers it was not required to follow the statute because of preemption.  BofA's primary method for broadcasting this erroneous preemption message was through a standardized "Notice Concerning Your Escrow Account" (hereinafter, "Preemption Notice") that BofA sent to all California residential mortgage customers (at the time they originated or refinanced their loan) as a matter of standard company procedure, starting in or around 2008 and lasting until at least June 2019.[20]

The form Preemption Notice that BofA sent to Plaintiff Lusnak in connection with his March 2009 loan, for example, read:

> Your loan was originated by an operating subsidiary of Bank of America, N.A. ("Bank of America"). As a federally chartered bank, Bank of America is subject to federal law and the Office of the Comptroller of the Currency regulations, and in most cases is not subject to state laws that regulate or otherwise affect its credit activities. The Federal law and regulations that Bank of America is subject to do not require the payment of interest on escrow accounts. Accordingly, you will not receive interest on your escrow account even if your state has a law concerning the payment of interest on escrow accounts.[21]

---

[20] Ex. B [Orriss Dep. 164:13-165:25, 166:18-168:12] (Preemption Notice sent for new loans as a matter of company policy); Ex. II [BANA0023689 at 692] (Preemption Notice sent as part of loan pre-closing package); Ex. JJ [BANA007799].

[21] Ex. I [BANA0009345].  BofA made some tweaks to the Preemption Notice language over the years, but the message remained the same—i.e., BofA supposedly did not need to follow state escrow interest laws because of NBA preemption.  Ex. KK [BANA0000570] (minor change to Notice in 2012 to add reference to the Bureau of Consumer Financial Protection); Ex. LL

*Footnote continued on next page*

1       Inexplicably, BofA continued to send the Preemption Notices to new

2   customers even after the Ninth Circuit rejected BofA's preemption assertion and

3   even after BofA supposedly changed its policy in response to same. The Ninth

4   Circuit ruled on March 2, 2018, the U.S. Supreme Court denied BofA's *certiorari*

5   petition on November 19, 2018, ███████████████████████████████████

6   ████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████

8   ███████████████████████████████████████████.[22]

9       In addition to the Preemption Notices, BofA routinely provided the same

10  erroneous information to customers who inquired as to why they were not receiving

11  interest.  For example, Mr. Lusnak himself contacted BofA to inquire as to why he

12  did not receive interest on the positive balances that were regularly in his escrow

13  account.  BofA responded with canned language asserting the Bank's position that

14  the California law was preempted and that accordingly no such interest would be

15  paid:

16        During our recent conversation on August 8, 2012, we discussed your

17        concern regarding your escrow account and accumulated interest. As

18        discussed, when Bank of America pays interest on escrow funds,

19        Bank of America must follow state guidelines *unless* there is a conflict

20        with federal law.  If so, Bank of America will follow federal law under

21        Federal Preemption.  In this particular case, state law conflicts with

22        Federal law. As mentioned, Federal law supersedes state law. Records

23        indicate that Bank of America did not pay interest on escrow funds.[23]

24

25  _____

    [BANA0000571] (language circa 2013 through approximately 2018); *see also* Ex.

26  MM [BANA0001731] (June 2008 notice sent to Plaintiff by Countrywide).

    [22] Ex. B [Orriss Dep. 165:4-18] ███████████████████████████████

27  Ex. D [Martin Dep. 42:15-44:11] (████████████████████████████████

28  █████████████████████████████████

    [23] Ex. O [LUSNAK000170 at 75] (emphasis original).

**VII.** **The Complaint and Judge King's Dismissal Order**

Mr. Lusnak filed this putative class action in March 2014 (Dkt. 1), and filed the operative FAC in June 2014. (Dkt. 22) The FAC alleges claims under the UCL "unlawful" prong and for breach of contract, and seeks restitution/damages in the amount of the unpaid escrow interest, pre-judgment interest, and injunctive relief. BofA moved to dismiss the FAC on federal preemption grounds. On October 29, 2014, the Hon. George H. King (Ret.) granted BofA's motion. (Dkt. 33)

**VIII.** **The Ninth Circuit Reverses, and Expressly Rejects BofA's NBA Preemption Justification.**

In March 2018, the Ninth Circuit reversed Judge King's dismissal order, and expressly held that California Civil Code § 2954.8(a) is *not* preempted. *Lusnak*, 883 F.3d at 1188 ("[W]e hold that the NBA does not preempt California Civil Code § 2954.8(a).") After it unsuccessfully sought *en banc* review, BofA sought *certiorari* review by the Supreme Court, which denied BofA's petition in November 2018. 139 S. Ct. 567 (2018).

**IX.** ████████████████████████████████████████

████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████ ██████████████████████

───────────────────────

[24] Ex. B [Orriss Dep. 53:12-55:25, 61:2-10, 93:11-23, 154:16-155:5]; Ex. D [Martin Dep. 70:16-19]; Ex. NN [BANA0021248, at 250] (████████████████████████████

████████████████████████████████████████

██████████████. Ex. D [Martin Dep. 38:9-21, 45:3-21, 51:6-22].

*Footnote continued on next page*

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

██.[25]

It also bears emphasis that BofA willfully defied the Ninth Circuit's March 2018 ruling by not paying escrow interest in 2018.  In fact, even after the Supreme Court denied *certiorari* review in November 2018, BofA still had the opportunity to comply for 2018—BofA's practice, when it pays escrow interest, is to credit the interest to the customer's account on the last business day of the calendar year.[26]

████████████████████████████████████ ███.[27]

## **LEGAL STANDARD**

A party seeking class certification must satisfy the requirements of Rule 23(a) and at least one subsection of Rule 23(b).  The Court has broad discretion to grant class certification.  *See Parsons v. Ryan*, 754 F.3d 657, 673 (9th Cir. 2014). Here, Plaintiff seeks certification under Rule 23(b)(3).  "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (citation omitted).

## **THE PROPOSED CLASS**

Plaintiff seeks certification of the following "Class" pursuant to Fed. R. Civ. P. 23(a) and (b)(3):

> All mortgage loan customers of Bank of America—for loans made by
> Bank of America or where Bank of America purchased obligations
> secured by the property—whose mortgage loan is for a one- to four-

---

[25] Ex. D [Martin Dep. 45:3-12].

[26] Ex. B [Orriss Dep. 53:20-54:9, 138:9-18].

[27] Ex. B [Orriss Dep. 186:11-187:12]; Ex. D [Martin Dep. 32:20-36:6] ████
█████████████████████████████████████

family residence located in California, and who paid Bank of America
money in advance for payment of taxes and assessments on the
property, for insurance, or for other purposes relating to the property,
and did not receive at least 2 percent simple interest per annum on the
amounts so held by Bank of America from July 1, 2008 to the date of
class certification.  "Bank of America" as used in this Class definition
includes Bank of America and its subsidiaries.

Both of the claims in this case (UCL, breach of contract) are subject to four-year
statutes of limitations under California law, which would take the class period back
to March 12, 2010 (i.e., four years before Plaintiff filed this action) (Dkt. 1).
Plaintiff respectfully submits, however, that the Court in its discretion should apply
equitable tolling principles, and certify a Class that goes back to July 1, 2008, when
BofA launched its policy of deliberately defying the California statute.  Plaintiff
submits this is appropriate and not unduly prejudicial to BofA, in light of the willful
nature of BofA's defiance of the law and its apparent institutional cover up of its
misconduct and uniform company line that these customers were not legally
entitled to receive the interest and would not receive interest because of preemption.
While not the determinative basis for equitable tolling here, BofA's conduct is
exemplified by the fact that from approximately 2008 through 2018 (and even into
2019), BofA sent new loan and refinance customers the Preemption Notice, as part
of their loan closing materials, which stated in no uncertain terms that the
customers were not legally entitled to the interest because of NBA preemption.  To
the extent customers asked BofA why they did not get interest, they were told the
same thing, underscoring the uniformity of the Bank's cover up. *Supra*
Background § VI.

To the extent the Court is not comfortable certifying the Class as proposed
(i.e. with a class period going back to July 1, 2008), Plaintiff requests in the
alternative that the Court certify a Class defined exactly as proposed above, but

1   replacing "July 1, 2008" with "March 12, 2010."

2   **ARGUMENT**

3   **I.    The Requirements of Rule 23(a) are Satisfied.**

4       **A.    Numerosity (Rule 23(a)(1))**

5   Rule 23(a)(1) requires that "the class is so numerous that joinder of all class

6   members is impracticable."  Fed. R. Civ. P. 23(a)(1).  A "class of 41 or more is

7   usually sufficiently numerous."  5 *Moore's Federal Practice—Civil* § 23.22 (2016);

8   *see also In re Banc of California Sec. Litig.*, 326 F.R.D. 640, 646 (C.D. Cal. 2018).

9   Numerosity is easily satisfied here.  According to BofA's data produced in this

10  case, which has been analyzed by Plaintiffs' database and data analysis expert,

11  there are more than ▮▮▮▮ loans within the proposed Class definition.[28]  Joinder

12  of that many persons would clearly be impracticable.

13      **B.    Commonality (Rule 23(a)(2))**

14  Rule 23(a)(2)'s commonality requirement focuses on "the capacity of a

15  classwide proceeding to generate common answers apt to drive the resolution of the

16  litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, at 350  (2011) (italics

17  and citation omitted).  It is not required that all questions of fact or law be common,

18  or that the entire case can be resolved on a common basis, so long as "an issue that

19  is central to the validity of each one of the claims" is "capable of classwide

20  resolution."  *Id.*  Even a single common question that fits that criteria will satisfy

21  commonality.  *Id.* at 369; *Yamada v. Nobel Biocare Holding AG*, 275 F.R.D. 573,

22  577 (C.D. Cal. 2011).

23  This case challenges BofA's systemic policy and practice of defying Section

24  2954.8(a) for large, identifiable categories of Residential Loans in California.  The

25  core legal and factual questions that will drive the resolution of the claims here are

26  common to the Class, and include:

27

28  ────────────────

[28] Ex. A [Olsen Report ¶¶ 15, 25].

- Did Cal. Civ. Code § 2954.8(a) require BofA to pay escrow interest of at least 2% per annum to the Class members?

- Did BofA, in fact, pay such escrow interest to the Class members?

- Did BofA's failure to follow Cal. Civ. Code § 2954.8(a) violate the "unlawful" prong of the UCL?

- Did BofA's failure to follow Cal. Civ. Code § 2954.8(a) breach the Class members' form deeds of trust?

- Should BofA be ordered to pay restitution/damages to the Class in the amount of the unpaid escrow interest?

- Should BofA be required to pay pre-judgment interest to the Class?

*See Moore v. Int'l Cosmetics & Perfumes, Inc.*, No. EDCV141179DMGDTBX, 2016 WL 7644849, at *14 (C.D. Cal. Mar. 17, 2016) ("Plaintiff has adduced sufficient evidence that there is a significant common question regarding the existence of such policies or practices, and their legality, which would resolve the question of ICP's liability on a class-wide basis.").

Plaintiff's UCL "unlawful" prong claim is grounded in BofA's alleged failure to pay escrow interest in compliance with California Civil Code § 2954.8(a). *See Moran v. Prime Healthcare Mgmt., Inc.*, 3 Cal. App. 5th 1131, 1142 (2016) ("[A] violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong."). BofA's liability for the UCL claim will turn predominately on the answers to just two questions, both of which are common to the Class and well-suited to class-wide adjudication.

*First*, whether BofA was required by Section 2954.8(a) to pay escrow interest of at least 2% per annum presents a common legal question that the Court can answer in one fell swoop for the whole Class. *See Bulmash v. Travelers Indem. Co.*, 257 F.R.D. 84, 88 (D. Md. 2009) (commonality satisfied where claim raised common question of whether defendant was required to pay the class members interest under a statutory interest requirement). The Class definition here tracks the

language of California Civil Code § 2954.8(a), and BofA has never disputed that Section 2954.8(a) facially requires the payment of escrow interest for all Residential Loans in California.[29]  This common legal question will yield a common answer that will drive the resolution of the UCL claim. Given the clear language of the statute, BofA's undisputed defiance thereof, and the fact that BofA's justification for not fully complying for a decade (i.e., NBA preemption)[30] was disposed of by the Ninth Circuit, Plaintiff respectfully submits that answering this common question will be straightforward.

Second, whether BofA, in fact, paid escrow interest to the Class is likewise a common question that can be answered through a common source of proof.  By definition, ████████████████████████████████████████████ ████████████████████.  BofA's non-payment was by design, implemented pursuant to an internal company policy, and █████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████.[31]  *Allbritton v. Wiggins*, No. 4:13-CV-00158-SWW, 2014 WL 12768317, at *8 (E.D. Ark. Mar. 14, 2014) ("Because defendants admit that Lifespring did not pay any of its employees their accrued PTO upon termination of their employment with Lifespring, the members of the proposed class will not need to present

_____

[29] ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████.

[30] *See, e.g.,* Ex. G [BANA0022230 at 257] ("█████████████████ ████████████████████████████████████████████"); Ex. F [BANA0005957 at 979] ("████████████████████████████████████ ████████████████████████████████████████████."); Ex. E [BANA00013522 at 523]; Ex. B [Orriss Dep. 101:1-10 102:4-103:22, 183:14-21].

[31] Ex. A [Olsen Report ¶¶ 11, 15, 19].

1   evidence that varies from member to member to make a prima facie showing;
2   rather, the same evidence–defendants' admission–will suffice for each member to
3   make a prima facie showing, thereby making it a common question for purposes of
4   Rule 23(b)(3).").

5       These same two questions will drive the resolution of the breach of contract
6   claim, which presents the additional common question of whether BofA's defiance
7   of Section 2954.8(a) also breached the Class members' form deeds of trust, which
8   further enshrined the Bank's obligation to follow the California law.  *See supra*
9   Background § V.  Commonality is satisfied.

10      **C.   Typicality (Rule 23(a)(3))**

11      The standard under Rule 23(a)(3) is "permissive":  a plaintiff's claims are
12  "typical" if they are "reasonably coextensive with those of absent class members;
13  they need not be substantially identical."  *Parsons*, 754 F.3d at 685 (citation
14  omitted).  "A claim is typical if it: (1) arises from the same event or practice or
15  course of conduct that gives rise to the claims of other class members; and (2) is
16  based on the same legal theory as their claims."  *Ayala v. U.S Xpress Enterprises,
17  Inc.*, No. EDCV 16-137-GW(KKX), 2017 WL 3328087, at *12 (C.D. Cal. July 27,
18  2017); *see also Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016)
19  ("Measures of typicality include whether other members have the same or similar
20  injury, whether the action is based on conduct which is not unique to the named
21  plaintiffs, and whether other class members have been injured by the same course
22  of conduct").  Typicality is satisfied here.

23      Plaintiff's claims and those of the Class are based on the same course of
24  conduct by BofA and the same legal theories.  Moreover, Plaintiff and the Class
25  members all suffered the same injury:  BofA failed to pay them escrow interest on
26  the balances in their escrow accounts in violation of California law.  *See Bulmash*,
27  257 F.R.D. at 88 ("This same course of conduct by Travelers—Travelers' failure to
28  pay statutory interest when it paid a claim more than thirty days after receipt—leads

to the claims of all class members. The same legal theory concerning the
requirements of Sections 19–505 and 19–508 exists for all class members.").

### D.    Adequacy (Rule 23(a)(4))

Rule 23(a)(4)'s adequacy inquiry asks "'(1) do the named plaintiffs and their
counsel have any conflicts of interest with other Class Members and (2) will the
named plaintiffs and their counsel prosecute the action vigorously on behalf of the
class?'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir.
2012).

Here, the interests of Plaintiff and the other Class members are aligned and
there are no intra-class conflicts.  All of them share the same interest in holding
BofA accountable for its non-payment of escrow interest and obtaining the
appropriate relief, including restitution/damages and pre-judgment interest.
Moreover, Plaintiff has retained counsel with extensive experience prosecuting
class actions and other complex litigation.  Heller Decl., ¶¶ 3-8; McCune Decl.,
¶¶ 2-10; *Ayala*, 2017 WL 3328087, at *12 ("Class Plaintiff has demonstrated that
he has selected qualified counsel and that he and said counsel do not suffer from
interests antagonistic to the remainder of the class.").

Plaintiff and proposed Class Counsel have demonstrated their commitment to
the Class by vigorously prosecuting this case for several years—in this Court, the
Ninth Circuit, and the Supreme Court—and they remain fully committed to
vigorously prosecuting this case on behalf of the Class going forward.  Mr. Lusnak
himself has been actively involved and in regular communication with his counsel
during the litigation, provided documents and information for discovery responses
and pleadings, and is scheduled to be deposed next month.[32]

### E.    The Class Members Can Be Identified by Objective Criteria.

"An identifiable class exists if its members can be ascertained by reference to
objective criteria."  *In Re Hyundai & Kia Fuel Econ. Litig.*, No. MDL 13-2424-

---

[32] Lusnak Decl., ¶¶ 8-12; Heller Decl., ¶ 9.

GW(FFMX), 2014 WL 12594158, at *4 (C.D. Cal. June 26, 2014) (citations omitted).  Here, there are clear, objective criteria that determine whether one is a Class member: (a) are they a mortgage loan customer of Bank of America or its subsidiaries; (b) is their mortgage loan for a one- to four-family residence located in California; (c) did they pay Bank of America money in advance for payment of taxes and assessments on the property, for insurance, or for other purposes relating to the property; and (d) did they not receive 2 percent simple interest per annum on the amounts so held by Bank of America since July 1, 2008.

Moreover, although not required for certification under the law in this Circuit,[33] Plaintiff further notes that each Class member here can be individually identified through BofA's historical loan and transactional data for each customer.[34]

## II.   Rule 23(b)(3) is Satisfied

In addition to satisfying Rule 23(a), the proposed Class here also satisfies Rule 23(b)(3), which requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### A.   Common Questions Will Predominate

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591,  623 (1997).  It does not require plaintiff "to prove that each element of her claim is susceptible to classwide proof. What the rule does require is that common questions *predominate*" over questions affecting only individual class members). *Amgen*, 568 U.S. at 469 (emphasis original,

---

[33] *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124–25 (9th Cir. 2017), *cert. denied sub nom.* 138 S. Ct. 313 (2017).

[34] Among other data points, the data produced by BofA identifies, ██████████ ███████████████████████████████████████████████████████████ ████████████████████████ Ex. A [Olsen Report ¶¶ 11, 15-21, 30].

citations and internal quotations omitted); *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted) (predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important" than any "non-common, aggregation-defeating, individual issues").

Here, common questions will absolutely predominate over any individualized questions.  The core questions that will drive the resolution of both claims (UCL and breach of contract) are common to the Class and well suited to class-wide adjudication through common sources of proof.[35]

### 1. Common Liability Questions Will Predominate.

To the extent any individualized issues exist at all in this case, none are more central to the resolution of this litigation than whether BofA's deliberate, years-long policy and practice of not paying escrow interest on Class members' escrow balances violated Section 2954.8(a).  In fact, two common questions will predominate in adjudicating the claims in this case.  The central *legal* question— whether California Civil Code § 2954.8(a) requires BofA to pay escrow interest—is common the Class and can be answered by the Court through the straightforward application of the statute's language.  *See Bulmash*, 257 F.R.D at 90 (common question predominated where claim was that defendant systematically did not pay interest required under state statute);[36] *Mays v. Wal-Mart Stores, Inc.*, 330 F.R.D. 562, 580 (C.D. Cal. 2019) (common questions predominated because "Plaintiff's claims arise solely from [the defendant]'s standardized policies" and "liability turns exclusively on the blanket legality of those policies").

---

[35] *See In re Hyundai*, 2014 WL 12594158, at *6 ("In order to determine whether common issues predominate, the Court must look at the underlying causes of action asserted and determine whether the issues that must be decided are susceptible of proof on a classwide basis and must balance such classwide issues against any individualized determinations that must be made.").

[36] Predominance is even clearer in this case than it was in *Bulmash*, where the court noted that, unlike here, there were potentially individual questions regarding whether the requisite number of days had passed triggering the defendant's statutory interest obligation.  *Bulmash*, 257 F.R.D. at 90-91.

*Footnote continued on next page*

The central *factual* question—whether BofA, in fact, paid the interest—is likewise common and well-suited to class-wide adjudication through a common source of proof. BofA's failure to pay the escrow interest is not disputed and will be proven through entirely common sources of proof, including: (a) BofA's admissions of non-payment;[37] (b) internal BofA documents and BofA witness testimony showing that BofA's non-payment was carried out pursuant to a state-wide, deliberate policy of defying Section 2954.8(a);[38] and (c) expert testimony from Plaintiff's expert, Arthur Olsen, summarizing his analysis of BofA's historical loan and transactional data, which shows, ███████████████████████ ██████████████████████████████████████████████████████[39] These two questions will predominate in resolving both claims.

With respect to the breach of contract claim, as alleged, the Bank's obligation to follow California law not only flows independently from the statute itself, it is further enshrined in the Class members' form deeds of trust, which require compliance with applicable state laws.[40] Whether BofA's defiance of Section 2954.8(a) also breached the Class members' form contracts presents another common question amenable to class-wide adjudication through common proof.

---

[37] *See* Ex. D [Martin Dep. 40:3-41:13]; Ex. B [Orriss Dep. 63:1-10, 77:22-79:8, 81:20-83:10, 88:8-25]; *see also supra* Background § III; *Murfitt v. Bank of Am. NA*, No. EDCV131182JGBSPX, 2015 WL 13306363, at *9 (C.D. Cal. Oct. 8, 2015) ("[T]he fact that an issue is conceded or otherwise resolved does not mean that it ceases to be an 'issue' for the purposes of predominance analysis.") (citation omitted); *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006) ("That the class-wide proof comes in the form of a simple concession rather than contested evidence certainly shortens the time that the court must spend adjudicating the issue, but it does nothing to alter the fundamental cohesion of the proposed class, which is the central concern of the predominance requirement.") (citing See 2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 4:25 (4th ed. 2002)).

[38] *See supra* Background § III.

[39] Ex. A [Olsen Report ¶¶ 11, 15-21].

[40] *See supra* Background § V.

## 2. **Each Class Member's Restitution/Damages Amount is Capable of Calculation By Automated Means.**

Demonstrating predominance of common liability questions, as Plaintiff has done here, is sufficient to satisfy Rule 23(b)(3), even if determining class damages might require individual calculations. *See Tyson Foods*, 136 S. Ct. at 1045 (holding that a class action "may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses") (citation omitted); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987 (9th Cir. 2015) (differences in "[d]amages calculations alone cannot defeat class certification."). It is sufficient for a plaintiff seeking Rule 23(b)(3) certification to "show that such damages can be determined without excessive difficulty and attributed to their theory of liability . . . ." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017).

Restitution/damages in this case, measured as the amount of unpaid escrow interest pursuant to the statutory rate, can be calculated by automated means for each Class member, on a loan-by-loan basis, using the historical data for each loan that resides in BofA's systems of record. In fact, Plaintiff's expert, Mr. Olsen, has ***already performed*** those calculations for more than ▇▇▇▇ Class members for the period 2010 through 2018, using: (a) the data produced by BofA in this case; (b) the minimum interest rate required by the statute (2 percent simple interest per annum); and (c) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[41] This measure directly fits Plaintiff's theory of liability—i.e., that BofA failed to pay these same amounts in violation of

---

[41] Ex. A [Olsen Report ¶¶ 11, 15-21]; Cal. Civ. Code § 2954.8(a) (specifying rate of "at least 2 percent simple interest per annum"); Ex. OO [BANA0006551 at 552] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. B [Orriss Dep. 188:2-189:5]. Mr. Olsen's report also references the possibility of measuring damages for unpaid interest for other types of escrow accounts besides mortgage impound accounts, such as escrow held for property claims. Ex. A [Olsen Report ¶ 26]. Plaintiffs do not seek certification of those claims at this time.

*Footnote continued on next page*

California law.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).  In addition, Mr. Olsen can also calculate pre-judgment interest for each Class member's restitution/damages amount, which continues to run.[42]  The results of Mr. Olsen's analysis to date are summarized in his accompanying expert report (Heller Decl., Ex. A), and his final results can be presented to the Court and/or jury in an efficient and organized manner.  Predominance is satisfied.

### B.   A Class Action is Superior to Other Methods of Adjudication

Fed. R. Civ. P. 23(b)(3)'s superiority inquiry calls for a comparative analysis of whether a class action is "superior to other available methods for fair and efficient adjudication of the controversy."  *Amchem*, 521 U.S. at 615; *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy.").  In considering "superiority," courts analyze: (i) class members' interest in individually controlling separate actions; (ii) the extent and nature of existing litigation by class members concerning the same claims; (iii) the desirability of concentrating the litigation in a particular forum; and (iv) any likely difficulties of managing a class action.

With respect to the first two factors, Plaintiff is unaware of any individual actions against BofA regarding the issues raised in this case.  The size of each class member's individual damages[43] would be dwarfed by the expense of prosecuting an individual case, and thus class members are unlikely to pursue individual claims.  *See Just Film*, 847 F.3d at 1123 (class action superior where the "risks, small recovery, and relatively high costs of litigation make it unlikely that plaintiffs would individually pursue their claims.") (internal quotation marks omitted).

With respect to the third factor, it would be far more efficient for the judicial system and the parties to have a single adjudication, rather than multiple separate

---

[42] Ex. A [Olsen Report ¶¶ 22-24, 28].

[43] Ex. A [Olsen Report ¶¶ 19-20].

1   cases about the same issues. *Amchem*, 521 U.S. at 615; *Zinser v. Accufix Research*

2   *Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (class action "superior to other

3   methods of adjudication " if it "will reduce litigation costs and promote greater

4   efficiency.").

5           With respect to the fourth factor, this case presents no significant

6   manageability issues. In fact, given it is undisputed that BofA, as a matter of

7   company policy, failed to pay escrow interest to the Class, Plaintiffs submit that

8   there may not even need to be a trial in this case, and that liability and damages

9   might be adjudicated on a motion for summary judgment, following notice and an

10  opt-out period and a brief window for post-certification discovery and expert

11  submission(s). At the very least, the threshold central legal question of what the

12  statute requires can be decided by the Court without a trial. To the extent there

13  needs to be trial in this case, it would be concise and efficient. This case centers on

14  the application of a single California statute to BofA's policy and practice of

15  deliberately and systematically defying that statute. As discussed above, both

16  liability and damages can be adjudicated using common sources of proof.

17          Consistent with Rule 23(b)(3), certification of this action as a class action

18  would not only be *superior* to other methods, it is for all practical purposes the *only*

19  method for fairly and efficiently litigating the claims here.

20  **III.    The Court Should Appoint Plaintiff His Counsel to Represent the Class.**

21          "An order certifying a class action . . . must appoint class counsel under Rule

22  23(g)." Fed. R. Civ. P. 23(c)(1)(B). In evaluating proposed class counsel, the court

23  considers: "(i) the work counsel has done in identifying or investigating potential

24  claims in the action, (ii) counsel's experience in handling class actions, other

25  complex litigation, and claims of the type asserted in the action, (iii) counsel's

26  knowledge of the applicable law, (iv) the resources counsel will commit to

27  representing the class." Fed. R. Civ. P. 23(g)(1)(A); *see also Fendler v. Westgate-*

28  *California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975) (the inquiry looks to the "the

zeal and competence of the counsel and party who wish to prosecute the action."). Here, proposed Class Counsel have extensive experience litigating class actions, are knowledgeable about the applicable law, have been vigorously prosecuting this case on behalf of the Class for more than five years, and remain fully committed to doing so going forward.[44]  Plaintiff respectfully requests that the Court appoint them as Class Counsel pursuant to Rule 23(g)(1).

Plaintiff Lusnak has also been actively involved, provided information, devoted substantial time, and remains fully committed to prosecuting this case on behalf of the Class.[45]  He is well-suited to serve as class representative and respectfully requests that the Court appoint him to represent the Class.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion and: (a) certify the proposed Class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (b) appoint Plaintiff as class representative; and (c) appoint his counsel as Class Counsel.

---

[44] Heller Decl., ¶¶ 3-9; McCune Decl., ¶10.

[45] Lusnak Decl., ¶¶ 8-12.

Dated:  August 9, 2019

Respectfully submitted,

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP


By:     /s/ *Roger N. Heller*[46]
          Roger N. Heller

Michael W. Sobol (State Bar No. 194857)
msobol@lchb.com
Roger N. Heller (State Bar No. 215348)
rheller@lchb.com
Avery S. Halfon (admitted pro hac vice)
ahalfon@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3336
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Richard D. McCune (State Bar No. 132124)
rdm@mccunewright.com
Elaine S. Kusel (admitted pro hac vice)
esk@mccunewright.com
MCCUNE WRIGHT AREVALO, LLP
3281 E. Guasti Road, Suite 100
Ontario, CA 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Attorneys for Plaintiff and the Proposed
Class*

---

[46] I, Richard D. McCune, attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.