MARK W. MOSIER (*pro hac vice*)
Email: mmosier@cov.com
ANDREW SOUKUP (*pro hac vice*)
Email: asoukup@cov.com
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street
Washington, D.C. 20001-4956
Telephone: +1 (202) 662-5066
Facsimile: + 1 (202) 778-5066

ASHLEY SIMONSEN (SBN 275203)
Email: asimonsen@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067-4643
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749

DAVID L. PERMUT (*pro hac vice*)
Email:  DPermut@goodwinlaw.com
GOODWIN PROCTER LLP
901 New York Avenue NW
Washington, D.C. 20001
Telephone: + 1 (202) 346-4000

Attorneys for BANK OF AMERICA, N.A.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD M. LUSNAK, on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>BANK OF AMERICA, N.A.; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.: 2:14-CV-01855-GW(GJSx)<br><br>**BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT**<br><br>Hearing Date:  November 14, 2019<br>Hearing Time: 8:30 a.m.<br>Judge:        Hon. George Wu |

1

## TABLE OF CONTENTS

2  INTRODUCTION ................................................................................................. 1

3  BACKGROUND .................................................................................................. 2

4  PROCEDURAL STANDARD ............................................................................. 3

5  ARGUMENT ....................................................................................................... 4

6  I.    HOLA PREEMPTS SECTION 2954.8(A) AS APPLIED TO
7        PLAINTIFF'S LOAN ................................................................................ 4

8        A.   HOLA Preemption Applied When Plaintiff's Loan Was
             Originated. .................................................................................... 5

9        B.   HOLA Preemption Continued to Apply After Bank of America
10            Acquired the Loan. ....................................................................... 9

11       C.   Plaintiff's Deed Of Trust Confirms This Result. ...................... 12

12 II.   PLAINTIFF'S CLAIMS FAIL BECAUSE HE DID NOT FULFILL
        HIS CONTRACTUAL OBLIGATIONS. .............................................. 16

13       A.   Plaintiff's Breach-Of-Contract Claim Fails Because He Did Not
14            Substantially Perform. ................................................................ 16

15       B.   Plaintiff's Failures Render Restitution Inequitable Under The
             UCL. ............................................................................................ 18

16 III.  PLAINTIFF'S FAILURE TO LIST HIS CLAIMS IN HIS CHAPTER 7
17       BANKRUPTCY PREVENTS HIM FROM PURSUING THEM NOW. ........... 20

18 IV.   PLAINTIFF LACKS ARTICLE III STANDING TO SEEK
        INJUNCTIVE RELIEF. .......................................................................... 22

19 CONCLUSION .................................................................................................. 23

20

21

22

23

24

25

26

27

28

i

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY
JUDGMENT / Civil Case No. 2:14-cv-01855-GW

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adam v. Wells Fargo Bank, N.A.*,
 2018 WL 6071001 (C.D. Cal. Feb. 5, 2018) ............................................................ 12

*Aguayo v. U.S. Bank*,
 653 F.3d 912 (9th Cir. 2011) ................................................................................ 6, 8

*In re Andrews*,
 80 F.3d 906 (4th Cir. 1996) ...................................................................................... 21

*Bank of Am. v. City & Cty. of San Francisco*,
 309 F.3d 551 (9th Cir. 2002) .................................................................................... 15

*Campidoglio LLC v. Wells Fargo & Co.*,
 870 F.3d 963 (9th Cir. 2017) ...................................................................................... 5

*Castillo v. Wells Fargo Bank, N.A.*,
 2016 WL 7479403 (C.D. Cal. May 12, 2016) ......................................................... 12

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) .................................................................................................... 3

*Chavez v. Wells Fargo Bank, N.A.*,
 2016 WL 10999269 (C.D. Cal. July 5, 2016) ........................................................... 11

*Chowning v. Kohl's Dep't Stores, Inc.*,
 2016 WL 1072129 (C.D. Cal. Mar. 15, 2016) .......................................................... 19

*City of Los Angeles v. Lyons*,
 461 U.S. 95 (1983) ..................................................................................................... 23

*Clark v. Superior Court*,
 50 Cal. 4th 605 (2010) ............................................................................................... 17

*Conference of Fed. Sav. & Loan Assocs. v. Stein*,
 604 F.2d 1256 (9th Cir. 1979) ..................................................................................... 4

ii

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY
JUDGMENT / Civil Case No. 2:14-cv-01855-GW

*Cortez v. Purolator Air Filtration Prods. Co.*,
   23 Cal. 4th 163 (2000) ........................................................................ 18

*Corvello v. Wells Fargo Bank N.A.*,
   2017 WL 3449072 (N.D. Cal. May 4, 2017) ...................................... 19

*Cusano v. Klein*,
   264 F.3d 936 (9th Cir. 2001) ............................................................ 20

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) .......................................................................... 22

*Dunmore v. United States*,
   358 F.3d 1107 (9th Cir. 2004) .......................................................... 21

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*,
   458 U.S. 141 (1982) ............................................................ 4, 5, 10, 13

*First Fed. Sav. & Loan Ass'n of Boston v. Greenwald*,
   591 F.2d 417 (1st Cir. 1979) ............................................................... 7

*FirstMerit Bank, N.A. v. Reese*,
   242 Cal. App. 4th 408 (2015) ........................................................... 14

*Flagg v. Yonkers Sav. & Loan Ass'n*,
   396 F.3d 178 (2d Cir. 2005) ...................................................... 6, 7, 13

*Friedman v. U.S. Bank Nat'l Assoc.*,
   2016 WL 6745149 (C.D. Cal. Nov. 14, 2016) .................................. 17

*Grigsby v. Wells Fargo Bank, N.A.*,
   2018 WL 1779338 (C.D. Cal. Apr. 12, 2018) .................................. 12

*Hamilton v. Bank of Blue Valley*,
   746 F. Supp. 2d 1160 (E.D. Cal. 2010) ........................................... 19

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir. 2001) ............................................................ 20

*Hangarter v. Provident Life & Acc. Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ............................................................ 22

iii

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY
JUDGMENT / Civil Case No. 2:14-cv-01855-GW

*Hayes v. Wells Fargo Bank, N.A.*,
   2014 WL 3014906 (S.D. Cal. July 3, 2014) ................................................................ 7

*Hodgers-Durgin v. de la Vina*,
   199 F.3d 1037 (9th Cir. 1999) (en banc) .................................................................. 23

*In re IndyMac Bancorp, Inc.*,
   2012 WL 1037481 (Bkrtcy. C.D. Cal. 2012) ............................................................ 21

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002) ................................................................................... 18

*Kisor v. Wilkie*,
   139 S. Ct. 2400 (2019) ....................................................................................... 11, 15

*Lauriedale Assocs., Ltd. v. Wilson*,
   7 Cal. App. 4th 1439 (1992) .................................................................................... 18

*Lewis v. Casey*,
   518 U.S. 343 (1996) ................................................................................................. 23

*Lusnak v. Bank of Am.*,
   883 F.3d 1185 (9th Cir. 2018) ................................................................................... 7

*McCauley v. Home Loan Inv. Bank, F.S.B.*,
   710 F.3d 551 (4th Cir. 2013) ..................................................................................... 8

*Metzger v. Wells Fargo Bank, N.A.*,
   2014 WL 1689278 (C.D. Cal. Apr. 28, 2014) .................................................... 12, 16

*Nichols v. Fearson*,
   32 U.S. (7 Pet.) 103 (1833) ..................................................................................... 14

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ................................................................................................. 22

*Oasis W. Realty, LLC v. Goldman*,
   51 Cal. 4th 811 (2011) ............................................................................................ 16

*Olvera v. Blitt & Gaines, P.C.*,
   431 F.3d 285 (7th Cir. 2005) ................................................................................... 15

*In re POM Wonderful LLC*,
    2014 WL 1225184 (C.D. Cal. Mar. 25, 2014)......................................................... 18, 19

*Reyes v. Downey Savs. & Loan Ass'n, F.A.*,
    541 F. Supp. 2d 1108 (C.D. Cal. 2008) ...................................................... 11

*Rose v. J.P. Morgan Chase, N.A.*,
    2014 WL 546584 (E.D. Cal. Feb. 11, 2014) .............................................. 17

*In re Ryerson*,
    739 F.2d 1423 (9th Cir. 1984) ................................................................... 21

*Silvas v. E*Trade Mortg. Corp.*,
    514 F.3d 1001 (9th Cir. 2008) ................................................... 1, 4, 5, 6, 10, 11

*Smith v. Flagstar Bank, FSB*,
    2019 WL 2437276 (N.D. Cal. June 11, 2019)............................................. 8

*Strike v. Trans-West Discount Corp.*,
    92 Cal. App. 3d 735 (1979) ........................................................................ 15

*Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Savs. Ass'n*,
    322 F.3d 1039 (9th Cir. 2003) ..................................................................... 4

*U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*,
    281 F.3d 929 (9th Cir. 2002) ...................................................................... 14

*United States v. Sanchez-Gomez*,
    138 S. Ct. 1532 (2018).................................................................................. 23

*United States v. Winstar Corp.*,
    518 U.S. 839 (1996)....................................................................................... 5

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (2009) ..................................................................... 18

*Wis. League of Fin. Institutions, Ltd. v. Galecki*,
    707 F. Supp. 401 (W.D. Wis. 1989) ............................................................ 7

*Wise v. Wells Fargo Bank, N.A.*,
    850 F. Supp. 2d 1047 (C.D. Cal. 2012) .................................................... 17

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY
JUDGMENT / Civil Case No. 2:14-cv-01855-GW

**Statutes**

11 U.S.C. § 521(a)(1)(B)(i) ..................................................................... 20

11 U.S.C. § 544 ...................................................................................... 21

12 U.S.C. § 1464(a) .......................................................................... 10, 15

12 U.S.C. § 1464(c)(1)(B) (2006) ............................................................ 9

12 U.S.C. § 1465(b) ................................................................................. 8

12 U.S.C. § 5553 ..................................................................................... 8

Cal. Civ. Code § 1459 ........................................................................... 14

Cal. Civ. Code § 2954.8 ................................... 1, 6, 7, 8, 9, 10, 13, 15, 20

Dodd-Frank Act, Pub. L. 111-203, Title X, § 1048, 124 Stat. 2018 ............... 8

Financial Institutions Reform, Recovery, and Enforcement Act of 1989,
   Pub. L. 101-73, 103 Stat. 183 ............................................................. 5

**Regulations**

12 C.F.R. § 560.2 (2006) ....................................... 1, 3, 4, 5, 6, 7, 8, 9, 10, 11

12 C.F.R. § 560.30 (2006) ........................................................................ 9

CFPB, *Designated Transfer Date*,
   75 Fed. Reg. 57,252 (Sept. 20, 2010) ................................................. 8

CFPB, *Escrow Requirements Under The Truth in Lending Act*,
   78 Fed. Reg. 4,726 (Jan. 22, 2013) .................................................... 2

OTS, *Lending and Investment*,
   61 Fed. Reg. 50,951, 50,952 (Sept. 30, 1996) ................................. 5, 6

**Other Authorities**

Bruce E. Foote, Mortgage Escrow Accounts: An Analysis of the Issues
   (Cong. Research Serv. 1998) ............................................................ 2

FHLBB Op. General Counsel, 1984 WL 563733 (Sept. 24, 1984) ................... 7

vi

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY
JUDGMENT / Civil Case No. 2:14-cv-01855-GW

FHLBB Op. General Counsel, 1985 WL 667310 (Aug. 13, 1985)................................ 11

H.R. Rep. No. 111-94 (2009)......................................................................................... 2

OCC Amicus Brief, *In re Rent-Rite Super Kegs West Ltd.*,
    No. 19-cv-1552, 2019 WL 4569774 (D. Col. Sept. 9, 2019) .................................. 15

OTS Op. Ltr., P-98-13, 1998 WL 998882 (Nov. 17, 1998) .......................................... 7

OTS, *Preemption of New Jersey Predatory Lending Act*, 2003 WL
    24040104 (July 22, 2003) ..................................................................................... 11

OTS, *Preemption of New York Laws Purporting to Regulate Escrow*
    *Accounts*, 2003 WL 24040106, at *2–3 (Oct. 6, 2003) ....................................... 7, 13

Restatement (Third) of Restitution (2011)................................................................... 18

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY
JUDGMENT / Civil Case No. 2:14-cv-01855-GW

## INTRODUCTION

Plaintiff Donald Lusnak asserts claims under California's Unfair Competition Law ("UCL") and for breach of contract based on his allegation that California Civil Code § 2954.8(a) mandates that Bank of America pay interest on his mortgage escrow account. For several reasons, Bank of America is entitled to summary judgment on all of Plaintiff's claims.

*First*, the Home Owners' Loan Act ("HOLA") preempts Section 2954.8(a) as applied to loans (like Plaintiff's) that were originated by federal savings associations. For loans like Plaintiff's, HOLA and its implementing regulations "occup[y] the entire field of lending regulation for federal savings associations," 12 C.F.R. § 560.2(a) (2006), leaving "no room for state regulatory control." *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008). That Plaintiff's loan was subsequently acquired by Bank of America, a national bank, is of no consequence. Under field preemption and contract law principles, HOLA preemption continues to apply even after a loan is assigned.

*Second*, Plaintiff did not fulfill his obligations under the mortgage agreement. Plaintiff's multiple defaults caused Bank of America to incur expenses that exceed $74.73—the amount that Plaintiff's expert says Plaintiff is allegedly owed in interest. Plaintiff's non-performance defeats his breach of contract claim and renders restitution under the UCL inequitable.

*Third*, Plaintiff is barred from asserting his claims because he did not disclose them in his 2011 bankruptcy filing. A bankruptcy petitioner has a duty to disclose causes of action on his schedule of assets whether or not a lawsuit has been filed. Here, Plaintiff testified that he was aware that Bank of America had not complied with Section 2954.8(a) before he filed for bankruptcy in 2011, but he waited until the date of his discharge to ever raise the issue with Bank of America. As a result, Plaintiff is now estopped from asserting his claims that he failed to disclose to the bankruptcy court. In addition, because Plaintiff's claims rightfully belong to his bankruptcy estate, Plaintiff does not have

1

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT / Civil Case No. 2:14-cv-01855-GW

prudential standing to pursue them.

*Finally*, Plaintiff lacks Article III standing to seek injunctive relief because he is no longer a Bank of America customer and will not become one in the future.  Plaintiff no longer has a mortgage escrow account with Bank of America.  Plaintiff also lives in France, has no intention to return to the United States, and testified that there is a "[z]ero percent" chance that he will apply for a Bank of America mortgage in the future.  Lusnak Dep. 24:3–5.  Because there is no threat that Plaintiff will be injured by non-payment of interest in the future, he cannot pursue injunctive relief.

## BACKGROUND

Like many lenders, Bank of America often establishes an escrow account at the time it makes a mortgage loan.  Escrow accounts are an important tool that banks use to mitigate risk:  If the property securing the bank's loan is damaged or destroyed, or if the government obtains a tax lien, then the value of the bank's security is diminished.  *See, e.g.*, Bruce E. Foote, Mortgage Escrow Accounts: An Analysis of the Issues 1 (Cong. Research Serv. 1998) (explaining that many banks have required escrow accounts since the 1930s as a way to prevent municipalities from obtaining tax liens superior to the bank's mortgage lien).  To prevent such loss, banks contractually obligate borrowers to secure insurance and pay their taxes on time.  When a bank establishes an escrow account, it adds additional amounts to the borrower's monthly payments to make tax and insurance payments on the borrower's behalf.  *See* H.R. Rep. No. 111-94, at 53 (2009).  This is a "benefit to the borrowers as it relieves them of the tasks of paying such regular tax and insurance obligations in a lump sum," OCC, Conditional Approval No. 276, 1998 WL 363812, at *9 (May 8, 1998), and it mitigates risk because borrowers with escrow accounts have "a lower probability of default and possible foreclosure," Bureau of Consumer Financial Protection, *Escrow  Requirements Under The Truth in Lending Act*, 78 Fed. Reg. 4,726, 4,744 (Jan. 22, 2013).

In 2009, Plaintiff obtained a mortgage loan from Countrywide Bank, FSB

("Countrywide"), a federal savings association.  *See* Statement of Uncontroverted Facts ("Facts") ¶¶ 1–2.  At that time, federal law was the exclusive source of regulation for escrow accounts established in connection with mortgage loans from federal savings associations.  *See* 12 C.F.R. § 560.2(b)(6).  Bank of America later acquired Plaintiff's mortgage loan from Countrywide.  *See* Facts ¶ 3.  Although Bank of America later agreed to modify Plaintiff's outstanding loan balance, interest rate, and monthly payment obligations, the remaining terms of Plaintiff's mortgage loan remained the same.  *Id*. ¶¶ 8, 19, 20.

From 2009 through December 2018, Plaintiff had a mortgage with an escrow account at Bank of America or one of its predecessors.  *See* Patterson Decl. ¶ 10 & Ex. F.

███████████████████████████████████████████████████████████████████████████

█████████████████████████████████  Lusnak Dep. 104:5–105:1.  Plaintiff nevertheless admits that he missed payments—including escrow payments—for "[q]uite a few months."  *Id*. at 72:3–7, 75:11–77:5; *see* Facts ¶¶ 4, 7.  As a result of these deficiencies, Plaintiff's escrow account frequently had a negative balance, and Bank of America advanced thousands of dollars on Plaintiff's behalf for tax and insurance payments.  *See* Facts ¶¶ 5, 17, 21.  Bank of America also incurred out-of-pocket costs, which it did not recover, to inspect the property that secured Plaintiff's loan to protect the value of the property that secured the mortgage loan.  *Id*. ¶¶ 13, 14.

## PROCEDURAL STANDARD

Summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish existence of an element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Where, as here, the case turns on a mixed question of fact and law and the only disputes relate to

the legal significance of undisputed facts, the controversy collapses into a question of law suitable to disposition on summary judgment." *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Savs. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003).

## ARGUMENT

## I.    HOLA Preempts Section 2954.8(a) As Applied To Plaintiff's Loan.

HOLA was "a radical and comprehensive response" to Congress's "dissatisfaction with state law and practice in the financing of home construction" during the Great Depression. *Conference of Fed. Sav. & Loan Assocs. v. Stein*, 604 F.2d 1256, 1257 (9th Cir. 1979). Through HOLA, Congress created a system of federally-chartered savings associations governed by federal regulators rather than by individual states. *See Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 161 (1982). From 1996 through 2011, federal law "occupie[d] the entire field of lending regulation for federal savings associations" and the loans they originated. 12 C.F.R. § 560.2(a). The federal regulations governing these banks had "no less preemptive effect than federal statutes" and left "no room for state regulatory control." *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004, 1005 (9th Cir. 2008).

As a result of HOLA preemption, California's interest-on-escrow statute did not apply to Plaintiff's escrow account when he first obtained his mortgage loan because that mortgage was originated by Countrywide, a federal savings association. That did not change after Bank of America acquired the loan. HOLA preemption still applied because allowing a state to regulate a HOLA-originated loan after it is transferred would make those loans less marketable and thus impermissibly interfere with federal savings associations' broad authority to sell and transfer loans. Plaintiff's deed of trust provides that its covenants bind and benefit Countrywide's successors and assigns, thus confirming that the terms of his mortgage loan did not change upon transfer from

4

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT / Civil Case No. 2:14-cv-01855-GW

Countrywide to Bank of America.[1]

### A.    HOLA Preemption Applied When Plaintiff's Loan Was Originated.

"Through HOLA, Congress gave the Office of Thrift Supervision ('OTS') broad authority to issue regulations governing thrifts," *Silvas*, 514 F.3d at 1005, including the power to promulgate regulations with the same preemptive effect as federal law, *see de la Cuesta*, 458 U.S. at 153–54.  In 1996, the OTS issued preemption regulations under HOLA that "occupie[d] the entire field of lending regulation for federal savings associations."  12 C.F.R. § 560.2(a).  The purpose of these preemption regulations was to give federal savings associations "maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation."  *Id*.  The regulations "restate[d] long-standing preemption principles applicable to federal savings associations, as reflected in earlier regulations, court cases, and numerous legal opinions issued by OTS and the Federal Home Loan Bank Board." [2]  61 Fed. Reg. 50,951, 50,952 (Sept. 30, 1996).  The regulations also made clear that, "with certain narrow exceptions, any state laws that purport to affect the lending operations of federal savings associations are preempted."  *Id*.

To apply these regulations, the Court should first look to § 560.2(b), which identifies specific "types of state laws preempted" by HOLA.  *See Campidoglio LLC v.*

---

[1] The Ninth Circuit recently accepted an interlocutory appeal of an order presenting the question of whether HOLA preemption continues to apply after a loan originated by a federal savings association is transfer or sold to a national bank.  *See* Motion to Stay (ECF No. 85) at 4–5; *McShannock v. JP Morgan Chase Bank, N.A.*, No. 19-15899 (9th Cir. 2019); *id.*, No. 19-80030, Dkt. 15 (April 23, 2019) (order granting petition for interlocutory appeal).

[2] Federal savings associations were originally regulated by the Federal Home Loan Bank Board ("FHLBB").  *See de la Cuesta*, 458 U.S. at 160–61.  In 1989, Congress replaced the FHLBB with the OTS, which assumed "responsibility for the regulation of all federally insured savings associations."  *United States v. Winstar Corp.*, 518 U.S. 839, 856 (1996); *see* Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. 101-73, Title II, § 201, 103 Stat. 183.

*Wells Fargo & Co.*, 870 F.3d 963, 971 (9th Cir. 2017) (citing *Silvas*, 514 F.3d at 1005). If a state law is of a type listed in § 560.2(b), "the analysis will end there; the law is preempted." *Silvas*, 514 F.3d at 1005. The Court's analysis here ends with § 560.2(b), because Section 2954.8(a)'s requirement to pay interest on mortgage escrow accounts is a specific type of state law preempted by HOLA.

Multiple provisions in § 560.2(b) expressly preempt Section 2954.8(a). These regulations provide that HOLA preempts "without limitation, state laws purporting to impose requirements regarding … [e]scrow accounts, impound accounts, and similar accounts." 12 C.F.R. § 560.2(b)(6). The regulations further provide that savings associations may exercise their mortgage-lending authority without regard to state laws relating to the "terms of credit," *id.* § 560.2(b)(4), or mortgage "servicing," *id.* § 560.2(b)(10). An escrow account is a "term of credit" and part of loan "servicing" because it eliminates the need for borrowers to save for lump sum payments of taxes and insurance premiums by allowing a lender to collect and make those payments on behalf of borrowers, thereby making it less likely that borrowers will default on their mortgage loan. Escrow accounts also protect the security that the borrower has pledged to the bank.[3]

Courts and regulators consistently have agreed that HOLA preempts state laws like Section 2954.8. The Second Circuit, for example, held that New York's interest-on-escrow statute is preempted as applied to federal savings associations. *See Flagg v.*

---

[3] Even if § 560.2(b) did not expressly preempt Section 2954.8, HOLA preemption would still apply unless Section 2954.8 "can clearly be shown to fit within the confines" of § 560.2(c). *Silvas*, 514 F.3d at 1005. Section 560.2(c) "is intended to be interpreted narrowly," and it only saves generally applicable contract, commercial, property, tort, or criminal laws that "incidentally affect" lending. *See Aguayo v. U.S. Bank*, 653 F.3d 912, 921 (9th Cir. 2011) (quoting 61 Fed. Reg. at 50,966–67); 12 C.F.R. § 560.2(c). Section 2954.8 is not the type of generally applicable law that § 560.2(c) saves; rather, California law specifically targets mortgage lenders and regulates their decision to pay interest on escrow accounts.

6

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT / Civil Case No. 2:14-cv-01855-GW

*Yonkers Sav. & Loan Ass'n*, 396 F.3d 178 (2d Cir. 2005).  In holding that the law was preempted, the Second Circuit explained that "reliev[ing] institutions of any legal duty to pay interest on escrow funds while preserving the possibility that individual institutions and their clients may negotiate provision of some interest, provides a consistent nationwide playing field while giving individual institutions a level of flexibility."  *Id.* at 184.  That is the exact policy that § 560.2(a) mandates.  *Flagg* is not alone; several courts have concluded that states cannot regulate how federal savings associations use escrow accounts.  *See, e.g.*, *First Fed. Sav. & Loan Ass'n of Boston v. Greenwald*, 591 F.2d 417, 425–26 (1st Cir. 1979) (holding that Massachusetts's requirement to pay interest on escrow accounts is preempted); *Hayes v. Wells Fargo Bank, N.A.*, 2014 WL 3014906, at *5 (S.D. Cal. July 3, 2014) (holding that challenges to escrow payment calculations are preempted); *Wis. League of Fin. Institutions, Ltd. v. Galecki*, 707 F. Supp. 401, 404–06 (W.D. Wis. 1989) (holding that state law cannot regulate escrow disclosures).

These decisions are consistent with the long-held views of federal regulators charged with interpreting HOLA.  *See, e.g.*, OTS, *Preemption of New York Laws Purporting to Regulate Escrow Accounts*, 2003 WL 24040106, at *2–3 (Oct. 6, 2003) (reiterating that New York's requirement to pay interest on mortgage escrow accounts is preempted as applied to federal savings associations); OTS Op. Ltr., P-98-13, 1998 WL 998882 (Nov. 17, 1998) (compiling opinion letters from 1991, 1985, and 1984 concluding that state law requirements to pay interest on mortgage escrow accounts are preempted as applied to federal savings associations); FHLBB Op. General Counsel, 1984 WL 563733, at *1 (Sept. 24, 1984) ("state laws or regulations which would impose upon federal associations obligations to pay interest on escrow accounts other than those provided for in their loan contracts are preempted").

The Ninth Circuit's prior ruling in this case does not dictate a different result.  The Ninth Circuit addressed only whether the *National Bank Act* preempts Section 2954.8(a).  *See Lusnak v. Bank of Am.*, 883 F.3d 1185, 1190 (9th Cir. 2018).  In answering that

7

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT / Civil Case No. 2:14-cv-01855-GW

question, the court of appeals expressly distinguished HOLA and its stronger preemptive force from the preemption that applies under the National Bank Act.  *See id.* at 1196 & nn. 8, 9 (calling *Flagg* and *Greenwald* "inapposite").  In addition to National Bank Act preemption, Bank of America has consistently claimed the benefit of the same HOLA preemption that Countrywide enjoyed, and no court has addressed that argument with respect to Plaintiff's loan.  *See, e.g.*, ECF No. 26-1 at 13 n.13 (raising HOLA preemption in support of dismissal); ECF No. 57 at 9 (raising HOLA preemption as an affirmative defense).

In sum, the OTS's preemption regulations leave "*no room*" for most state laws to apply to federal savings associations and their lending activities.  *Aguayo*, 653 F.3d at 921 (emphasis in original). [4]  Because the regulations expressly preempt state-law requirements regarding, among other things, escrow accounts, Section 2954.8 is preempted as to loans originated by federal savings associations.

---

[4] If Plaintiff's loan had continued to be held by a savings association, Section 2954.8 would have remained preempted for the life of the loan.  Although the Dodd-Frank Act modified HOLA preemption to the same conflict preemption scheme applicable to the National Bank Act, those changes did not take effect until July 21, 2011.  *See* 12 U.S.C. § 1465(b); Pub. L. 111-203, Title X, § 1048, 124 Stat. 2018 (preemption amendment was "effective on the designated transfer date"); 75 Fed. Reg. 57,252 (Sept. 20, 2010) (setting July 21, 2011 as the designated transfer date).  Moreover, Congress specifically directed that the changes "shall not be construed to alter or affect the applicability of any regulation . . . established by . . . the Director of the Office of Thrift Supervision regarding the applicability of State law under Federal banking law to any contract entered into on or before July 21, 2010, by . . . Federal savings associations[.]" 12 U.S.C. § 5553. As a result, courts continue to apply field preemption to mortgages entered into with federal savings associations before July 21, 2010. *See, e.g.*, *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 554 n.2 (4th Cir. 2013) ("Because 12 C.F.R. § 560.2 was in effect when the loan contract was entered into, it governs here."); *Smith v. Flagstar Bank, FSB*, 2019 WL 2437276, at *3 (N.D. Cal. June 11, 2019) (Congress "did not split hairs"— "contracts entered into before July 21, 2010, remained bound by the law to the same extent as it was prior to the enactment of Dodd-Frank.").

## B. HOLA Preemption Continued to Apply After Bank of America Acquired the Loan.

Bank of America's acquisition of Plaintiff's loan from Countrywide did not affect the HOLA preemption governing the loan. That is because HOLA preempts any state law that purports to require payment of interest on an escrow account for a loan originated by a savings association regardless of whether the loan is transferred to a third party. Such a state law is preempted because it impermissibly interferes with the savings association's federal power to sell or transfer loans.

When Bank of America acquired Plaintiff's loan from Countrywide, HOLA and its implementing regulations expressly authorized federal savings associations to "sell" or "otherwise deal in" residential real property loans. 12 U.S.C. § 1464(c)(1)(B) (2006); 12 C.F.R. § 560.30 (2006). The OTS's field preemption regulations gave federal savings associations "maximum flexibility" to exercise this power, 12 C.F.R. § 560.2(a), which the OTS made clear by expressly preempting state laws purporting to impose requirements regarding the "sale or purchase of, or investment or participation in, mortgages," *id.* § 560.2(b)(10).

The OTS's preemption regulations therefore continue to preempt state laws like Section 2954.8 even after Countrywide no longer owned Plaintiff's mortgage. *See id.* If state laws like Section 2954.8 applied, then a federal savings association's ability to sell its mortgage loans would be substantially curtailed. The purchaser of the mortgage could acquire the loan subject to the same terms and conditions as when the agreement was made only if the purchaser was also a federal savings association. For any other potential acquirer, the loan would be less valuable because the purchaser would, among other things, be responsible for paying interest on the escrow account. If it were applicable to assignees other than federal savings associations, California's requirement to pay interest on mortgage escrow accounts would be a "state law[] purporting to impose requirements regarding . . . sale or purchase of . . . mortgages." *Id.* The analysis ends there; "the law

9

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT / Civil Case No. 2:14-cv-01855-GW

1   is preempted." *Silvas*, 514 F.3d at 1005.

2       Even without the benefit of § 560.2(b), however, Section 2954.8 is preempted as

3   applied to Plaintiff's loan because a contrary result would adversely "affect[] lending" by

4   harming the salability of mortgage loans on the secondary mortgage market. *See id.* "The

5   marketability of a mortgage in the secondary market is critical to a savings and loan, for

6   it thereby can sell mortgages to obtain funds to make additional home loans." *de la

7   Cuesta*, 458 U.S. at 155 n.10.   Put differently, a federal savings association's ability to

8   *make* new loans depends on its ability to *sell* its old loans. *See id.*  If state law could

9   impose new and burdensome loan requirements once a federal savings association sells

10  a loan, then the loan would be less attractive to buyers like national banks, state-chartered

11  banks or other investors.   Because a loan burdened by new state law requirements is less

12  attractive on the secondary market, the new state law requirements infringe on federal

13  savings associations' power to sell mortgages with "maximum flexibility."   12 C.F.R.

14  § 560.2(a).   That, in turn, "affects lending" by reducing the capital available to federal

15  savings associations to make more loans.   *Silvas*, 514 F.3d at 1005; *cf.* 12 U.S.C.

16  § 1464(a) (providing that HOLA's mandate is "to encourage [federal savings

17  associations] to provide credit for housing").   Thus, "the presumption arises" that Section

18  2954.8—a new state law requirement that applies only on sale or transfer—"is

19  preempted" as applied to Plaintiff's loan.   *Silvas*, 514 F.3d at 1005.

20      The Supreme Court has confirmed that state law cannot indirectly reduce the

21  salability of federal savings associations' mortgages on the secondary market.   In *de la

22  Cuesta*, the Supreme Court held that HOLA and its implementing regulations preempt

23  California's prohibition against "due-on-sale" clauses that "declare the entire balance of

24  a loan immediately due and payable if the property securing the loan is sold or otherwise

25  transferred."   458 U.S. at 145.   The Court held that it was reasonable to expect that

26  banning due-on-sales clauses would "impair the ability of Federal associations to sell

27  their loans in the secondary markets" and "reduce the amount of home-financing funds

28

available to potential home buyers." *Id*. at 168.  The same is true here with regard to California's requirement to pay interest on mortgage escrow accounts.

Federal regulators agree.  They have consistently taken the view that HOLA preemption does not allow states to attach new requirements to loans upon sale or transfer to another institution.  As early as 1985, the Federal Home Loan Bank Board concluded—in the specific context of state law requirements to pay interest on mortgage escrow accounts—that "preemption would exist regardless of whether the loans in question are sold by the federal association to a third party, are being serviced by a third party, or whether the escrow deposits are held at a federal association while the loans have been sold in the secondary market."  FHLBB Op. General Counsel, 1985 WL 667310, at *2 (Aug. 13, 1985).  The OTS later reiterated "the general principle that loan terms should not change simply because an originator entitled to federal preemption may sell or assign a loan to an investor that is not entitled to federal preemption."  OTS, *Preemption of New Jersey Predatory Lending Act*, 2003 WL 24040104, at *4 n.18 (July 22, 2003).  A contrary rule "might interfere with the ability of federal savings associations to sell mortgages that they originate under a uniform federal system."  *Id*.[5]

A "majority" of courts have adopted the "better reasoned approach" that HOLA preempts state laws even after they are acquired by a national bank.  *Chavez v. Wells Fargo Bank, N.A.*, 2016 WL 10999269, at *3–4 (C.D. Cal. July 5, 2016).  Relying on the views of the federal regulators, these courts have explained that "if state laws were applied to the management and servicing of loans originated by federal savings

---

[5] Courts routinely defer to guidance of this sort when applying the OTS's preemption regulations, and this Court should do the same.  *See, e.g.*, *Silvas*, 514 F.3d at 1005 n.1 (giving "controlling weight" to the OTS's construction of § 560.2); *Reyes v. Downey Savs. & Loan Ass'n, F.A.*, 541 F. Supp. 2d 1108, 1114 (C.D. Cal. 2008) (looking to the OTS's interpretation of § 560.2); *see also Kisor v. Wilkie*, 139 S. Ct. 2400, 2416–17 (2019) (courts should defer to agencies' interpretations of ambiguous regulations when interpretations are reasonable and based on agencies' "substantive experience").

associations after the loans are sold or assigned to other entities, such laws 'might interfere with the ability of federal savings associations to sell mortgages that they originate under a uniform federal system.'"   *Metzger v. Wells Fargo Bank, N.A.*, 2014 WL 1689278, at *4 (C.D. Cal. Apr. 28, 2014) (quoting OTS Opinion Letter, P–2003–5 (July 23, 2003)); *see also Adam v. Wells Fargo Bank, N.A.*, 2018 WL 6071001, at *4 (C.D. Cal. Feb. 5, 2018) ("adopt[ing] the interpretation" from *Metzger*).

If this case is not stayed until the Ninth Circuit resolves this issue in *McShannock*, the Court should adopt the majority position and hold that HOLA preemption is not affected by the sale or transfer of a loan originated by a federal savings association.[6]

### C.   Plaintiff's Deed Of Trust Confirms This Result.

The HOLA preemption analysis is confirmed by terms of Plaintiff's deed of trust. Under both the plain contractual language and well-settled contract law doctrines, Bank of America has no obligations in excess of those that bound Countrywide.

Plaintiff's 2009 Deed of Trust speaks directly to the obligation to pay interest on Plaintiff's mortgage escrow account:   Countrywide was "not . . . required to pay [Plaintiff] any interest or earnings" on the funds held in his escrow account unless "an agreement is made in writing or Applicable Law requires."   Patterson Decl., Ex. C, § 3. The Deed of Trust defines "Applicable Law" as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."   *Id.*, Definitions § J.   The Deed of Trust also provides that "[a]ll rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law."   *Id.* § 16.   Because HOLA and its implementing regulations were

---

[6] The Court has issued decisions on both sides of the split. *Compare Grigsby v. Wells Fargo Bank, N.A.*, 2018 WL 1779338, at *7–8 (C.D. Cal. Apr. 12, 2018) (HOLA preemption does not apply after transfer to a national bank), *with Castillo v. Wells Fargo Bank, N.A.*, 2016 WL 7479403, at *3 n.3 (C.D. Cal. May 12, 2016) (HOLA preemption survives transfer to a national bank).

controlling federal law, no interest was due under the original Deed of Trust.  *See id.*

Nor did Countrywide consent to comply with Section 2954.8.  Although the Deed of Trust is "governed by federal law and the law of the jurisdiction in which the Property in located," *id.*, the purpose of that language was "not to elevate state law over federal law."  *de la Cuesta*, 458 U.S. at 157 n.12.  Instead, as the Supreme Court explained when construing materially identical language, "the 'law of the jurisdiction' includes federal as well as state law," and this choice-of-law language does not manifest an "agree[ment] to be bound by local law."  *Id.*  Following *de la Cuesta*, courts and the OTS have consistently concluded that general choice-of-law language is insufficient to create an agreement to pay interest on mortgage escrow accounts.  *See Flagg*, 396 F.3d at 186 (because "HOLA and OTS regulations" do not require payment of interest, "the contract does not commit [the lender] to pay interest"); OTS, *Preemption of New York Laws Purporting to Regulate Escrow Accounts*, 2003 WL 24040106, at *2 (Oct. 6, 2003) ("The reference in the mortgage loan document to the law of the place the property is located . . . , together with a reference to federal law, is insufficient to establish a contractual agreement to pay interest on escrow funds.").

Under the Deed of Trust's plain terms, Bank of America inherited the same obligations that bound Countrywide.  The Deed of Trust provides that the "covenants and agreements of this Security Instrument shall bind . . . *and benefit* the successors and assigns of [Countrywide]."  Patterson Decl., Ex. C, § 13 (emphasis added).  The "agreements" in the Deed of Trust include the important bargain that Countrywide would provide escrow services free of charge, but also free from Section 2954.8's requirement to pay interest on the escrowed funds.  *See id.* § 3.  Bank of America, as Countrywide's successor, is entitled to the "benefit" of that same bargain.  *Id.* § 13.  This "plain language" reading of the agreement should control.  *See U.S. Cellular Inv. Co. v. GTE*

13

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT / Civil Case No. 2:14-cv-01855-GW

*Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002) (applying California contract law).[7]

Any contrary result would violate two important background principles. *First*, an assignee takes all the rights and remedies that belonged to the assignor. *Second*, a contract that was valid when made does not become invalid or unlawful after a transfer.

Under the first principle, Bank of America took Plaintiff's loan "subject to all equities and defenses existing in favor of the maker" at the time of assignment. *See* Cal. Civ. Code § 1459. Thus, Bank of America "'stands in the shoes' of the assignor, taking his or her rights and remedies." *FirstMerit Bank, N.A. v. Reese*, 242 Cal. App. 4th 408, 413 (2015). Among the rights and defenses that Bank of America inherited from Countrywide is the benefit of HOLA field preemption as applied to Plaintiff's loan. Any other result would sanction a dramatic change in the relationship between the borrower and the lender, without any accompanying meeting of the minds between the parties.

Second, the "valid-when-made" doctrine independently shields Bank of America from an obligation to pay interest to Plaintiff. Generally, the "valid-when-made" rule protects contracts from becoming usurious after a sale or transfer. *See, e.g.*, *Nichols v. Fearson*, 32 U.S. (7 Pet.) 103, 109 (1833) (holding that one of the "cardinal rules in the doctrine of usury" is that "a contract, which, in its inception, is unaffected by usury, can never be invalidated by any subsequent usurious transaction"). This rule has persevered for centuries because it rests on the commonsense principle that "a contract, wholly innocent in its origin" should not be "rendered . . . valueless, in the hands of the otherwise legal holder," who cannot transfer the contract without its becoming unlawful. *Id.* at 110. To "prohibit—make uneconomic—the assignment or sale by banks of their commercial property to a secondary market . . . would be disastrous in terms of bank operations[.]"

---

[7] Bank of America's agreement with Plaintiff to modify his mortgage did not affect the pre-existing benefits that Bank of America inherited from Countrywide. *See* Facts ¶¶ 8, 20. For example, the parties' 2011 loan modification agreement expressly states that payment amounts would change but "[a]ll other terms and conditions of the Mortgage will remain the same[.]" Patterson Decl., Ex. G, § A.

*Strike v. Trans-West Discount Corp.*, 92 Cal. App. 3d 735, 745 (1979); *see also Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 287–88 (7th Cir. 2005) (describing as "senseless" a rule that "would push the debt buyers out of the debt collection market and force the original creditors to do their own debt collection").

The logic of the "stands-in-the-shoes" and "valid-when-made" rules apply here. Under HOLA's preemption regime, Countrywide originated Plaintiff's loan free from any obligation to comply with most California mortgage-related laws, including Section 2954.8.  If those laws applied after Countrywide no longer owned any interest in the loan, the result could "make uneconomic" the sales and transfers that support an efficient secondary market in mortgages.  *Cf. Strike*, 92 Cal. App. 3d at 745.  Rather than "encourage [federal savings associations] to provide credit for housing," 12 U.S.C. § 1464(a), this rule would choke the secondary market and restrict the capital available for new home loans.

The Office of the Comptroller of the Currency ("OCC")—which now has primary authority for interpreting HOLA, 12 U.S.C. § 5412(b)(2)(B)—shares this view.  In a recent amicus brief discussing federal preemption of state interest rate laws, the OCC and another bank regulatory agency recognized that because "[l]enders often need to transfer loans," the valid-when-made rule ensures that loan terms (in that case, those relating to interest rates) do not violate state law simply because a loan has been transferred from the original lender.  OCC Amicus Br., *In re Rent-Rite Super Kegs West Ltd.*, No. 19-cv-1552, 2019 WL 4569774, at *12 (D. Col. Sept. 9, 2019).  The OCC separately recognized that the stand-in-the-shoes doctrine allows assignee to benefit from any federal preemption enjoyed by an assignor, because "the assignee is merely enforcing the rights of the assignor."  *Id.* at *14.  If the Court concludes that the regulations themselves are ambiguous, it should defer to the OCC's positions in its amicus brief, which reflect the agency's considered views on an issue with its expertise.  *See Kisor*, 139 S. Ct. at 2416–17; *Bank of Am. v. City & Cnty. of San Francisco*, 309 F.3d 551, 563 (9th Cir. 2002)

1    (giving "great weight" to OCC position in amicus brief).

2           The Deed of Trust's plain language, background principles of contract law, and

3    sound policy all point to the same result:  Bank of America has no greater liability to

4    Plaintiff than Countrywide had to him.  *See, e.g.*, *Metzger*, 2014 WL 1689278, *4

5    (discussing the "general principle that loan terms should not change simply because an

6    originator entitled to preemption may sell or assign a loan to an investor that is not entitled

7    to preemption").  Plaintiff's claims fail because the Deed of Trust requires the continued

8    application of the HOLA field preemption that Countrywide enjoyed at origination.

9    **II.    Plaintiff's Claims Fail Because He Did Not Fulfill His Contractual**

10           **Obligations.**

11          Even if Plaintiff's claims were not preempted, they would still fail on their merits

12   because Plaintiff's failure to abide by the terms of his mortgage precludes relief under a

13   breach-of-contract or UCL theory of recovery.

14          **A.    Plaintiff's Breach-Of-Contract Claim Fails Because He Did Not**

15                 **Substantially Perform.**

16          To prevail on a breach-of-contract claim under California law, Plaintiff must show

17   that he performed all obligations under the contract or was excused from performance.

18   *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  There is no dispute

19   that Plaintiff did not perform his obligations under his mortgage agreement, nor is there

20   any basis to excuse Plaintiff's non-performance.

21          Plaintiff's 2009 Deed of Trust obligated Plaintiff to "pay when due the principal

22   of, and interest on, the debt evidenced by the Note."  Patterson Decl., Ex. C, § 1; *accord*

23   Lusnak Dep. 55:20–56:2, 61:19–22.  The Deed of Trust also required Plaintiff to make

24   monthly payments into his escrow account.  Patterson Decl., Ex. C, § 3; *accord* Lusnak

25   Dep. 61:15–18.

26          It is undisputed that Plaintiff did not satisfy these obligations.  *See* Facts ¶¶ 4, 9,

27   21.  Plaintiff fell behind on his mortgage payments from November 2009 until March

28

2011 and again from May 2012 until May 2013.  *See id.* ¶¶ 4, 9.  During these times of default, Plaintiff failed to make payments into his escrow account.  *Id.* ¶ 4, 11.  As a result, Bank of America had to advance payment for taxes and insurance on Plaintiff's behalf.  *Id.* ¶¶ 5, 17, 21.

Plaintiff concedes that he did not perform his obligations.  When he modified his loan in 2011, Plaintiff acknowledged that he "failed to pay the Mortgage in accordance with its terms, and [was then] in Default on the Mortgage."  Patterson Decl. ¶ 12 & Ex. G; *see* Facts ¶ 7.  Plaintiff also admitted at his deposition that he repeatedly defaulted on his obligations to repay his mortgage and make escrow payments.  Lusnak Dep. 72:3–7, 76:13–77:5, 82:6–18.

Courts applying California law have consistently rejected breach of contract claims under similar circumstances.  For example, in *Wise v. Wells Fargo Bank, N.A.*, 850 F. Supp. 2d 1047 (C.D. Cal. 2012), the plaintiff sued for breach of contract arising out of an alleged misapplication of her payments under the terms of her Deed of Trust.  *Id.* at 1056.  There, as here, the plaintiff admitted that she did not make of all the required payments and defaulted under the terms of the deed.  *Id.*  The court held that because she "failed to perform under the contract, Plaintiff's breach of contract claim fails as a matter of law." *Id.*  Other courts have reached similar results.  *E.g. Friedman v. U.S. Bank Nat'l Assoc.*, 2016 WL 6745149, at *3, 5–6 (C.D. Cal. Nov. 14, 2016) (dismissing breach-of-contract claim with prejudice where the plaintiff admitted that he did not perform under his mortgage contract, even though breach had been cured while suit pending); *Rose v. J.P. Morgan Chase, N.A.*, 2014 WL 546584, at *10 (E.D. Cal. Feb. 11, 2014) (granting defendant's motion for summary judgment and holding that because "plaintiff is in default on her mortgage loan, she has failed to perform under the terms of that loan and therefore cannot prevail on her breach of contract claim").  The same result is warranted here.

### B.     Plaintiff's Failures Render Restitution Inequitable Under The UCL.

The UCL limits its remedies to injunctive relief and restitution; damages are not available. *See, e.g.*, *Clark v. Superior Court*, 50 Cal. 4th 605, 610 (2010).  These remedies are equitable in nature, and courts may consider many factors when determining whether to award them.  *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 840 (9th Cir. 2002) (equitable remedies depend on more than "determination of legal rights and wrongs" (quoting *Md.-Nat'l Capital Park & Planning Comm'n v. U.S. Postal Serv.*, 487 F.2d 1029 (D.C. Cir. 1973)); *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 179, 181 (2000) (equitable considerations may "guide the court's discretion in fashioning the equitable remedies authorized by [the UCL]" and that "consideration of the equities between the parties is necessary to ensure an equitable result").

Restitution seeks to award plaintiffs the "difference between what the plaintiff paid and the value of what the plaintiff received."  *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009).  As a result, restitution is not appropriate when the amount a plaintiff seeks is outweighed by the benefits that plaintiff has received.  *See In re POM Wonderful LLC*, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) ("Plaintiffs do not cite, nor is the court aware of, any authority for the proposition that a plaintiff seeking restitution may retain some unexpected boon, yet obtain the windfall of a full refund and profit from a restitutionary award."); *Lauriedale Assocs., Ltd. v. Wilson*, 7 Cal. App. 4th 1439, 1448–49 (1992) (holding that allowing plaintiff to receive restitution from "the very persons harmed by his" conduct would be "patently inequitable"); *accord* Restatement (Third) of Restitution § 63 (2011) ("Recovery in restitution to which an innocent claimant would be entitled may be limited or denied because of the claimant's inequitable conduct in the transaction that is the source of the asserted liability.").

Plaintiff's entitlement to restitution therefore must take into account and weigh the value of the benefits he received.  According to Plaintiff's expert, Plaintiff is owed only $74.73 in unpaid interest from 2010 to 2018.  Olsen Report ¶ 20.  But it is undisputed

1  that Plaintiff was frequently in default on his mortgage during this same period, and that

2  the value of the benefits that Plaintiff received from Bank of America—despite his

3  default—and the costs he imposed on Bank of America significantly exceed the amount

4  he could recover.  *See* Facts ¶¶ 23, 24. ████████████████████████████

5  ████████████████████████████████████████████████████████████████

6  ██████████  Lusnak Dep. 104:5–105:1.  Plaintiff also received a benefit by remaining in

7  his home during his defaults.  *Id.* 72:21–73:1, 82:19–22; *cf. Hamilton v. Bank of Blue*

8  *Valley*, 746 F. Supp. 2d 1160, 1179 (E.D. Cal. 2010) (plaintiffs had "no damages"

9  because they "continue[d] to live rent-free" in their home despite being "delinquent on

10  their mortgage").   At the same time, Bank of America incurred costs as a result of

11  Plaintiff's default.  By May of 2013, the Bank had already advanced thousands of dollars

12  on Plaintiff's behalf for tax and insurance payments—several times the amount Plaintiff

13  now seeks.  *See* Facts ¶ 17.  Bank of America also waived $628.43 in fees over the life

14  of Plaintiff's loan, of which $165 was for out-of-pocket costs related to property

15  inspections Bank of America conducted while Plaintiff was in default to protect its

16  security interest in the property.  *Id.* ¶¶ 14, 16.  In short, there can be no dispute that

17  Plaintiff received benefits and imposed costs on Bank of America that exceed the $74.73

18  that he now seeks to recover in this case.  *Id.* ¶¶ 23, 24.

19       When, as here, a plaintiff has received a net benefit, California courts regularly

20  deny restitution because doing otherwise would result in unjust enrichment.  *See, e.g.*,

21  *Corvello v. Wells Fargo Bank N.A.*, 2017 WL 3449072, at *2–3 (N.D. Cal. May 4, 2017)

22  (granting summary judgment to defendants on UCL restitution claim because "the

23  restitution award must account for benefits that the homeowners received"); *Chowning*

24  *v. Kohl's Dep't Stores, Inc.*, 2016 WL 1072129, at *7 (C.D. Cal. Mar. 15, 2016) (granting

25  summary judgment to defendants on UCL restitution claim and rejecting various

26  restitution arguments in part because it was undisputed that plaintiffs were "each

27  provided some value"); *In re POM Wonderful LLC*, 2014 WL 1225184, at *3 ("Plaintiffs

28

do not cite, nor is the court aware of, any authority for the proposition that a plaintiff seeking restitution may retain some unexpected boon, yet obtain the windfall of a full refund and profit from a restitutionary award.").

Restitution is not appropriate because Plaintiff has failed to account for the net benefit he received from the Bank and the costs he imposed on the Bank.  Accordingly, summary judgment should be awarded in the Bank's favor on Plaintiff's UCL claim.

## III.   Plaintiff's Failure to List His Claims in His Chapter 7 Bankruptcy Prevents Him From Pursuing Them Now.

A Chapter 7 bankruptcy petitioner has a duty to schedule all of his assets on his bankruptcy schedules, including "causes of action" that "accrued pre-petition." *Cusano v. Klein*, 264 F.3d 936, 946 (9th Cir. 2001); *see* 11 U.S.C. § 521(a)(1)(B)(i).  When Plaintiff filed his Chapter 7 bankruptcy petition in 2011, the causes of action that he now asserts had already accrued because he had not been paid interest on his escrowed funds. Plaintiff testified that he knew in early 2011 that Bank of America violated Section 2954.8(a).  *See* Facts ¶ 31.  Yet Plaintiff failed to identify these causes of action in his August 2011 bankruptcy filing.  *Id.* ¶ 30.  Instead, Plaintiff waited until the date his bankruptcy discharge order was entered to first contact Bank of America to complain about not receiving interest on escrowed funds.  *Id.* ¶ 33.

Plaintiff may not pursue his breach-of-contract or UCL claims under either the doctrines of judicial estoppel or prudential standing.  "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).  Bankruptcy filers are "judicially estopped from asserting a cause of action" that they failed to "raise[] in a reorganization plan or otherwise mention[] in [their] schedules or disclosure statements," and courts routinely dismiss claims that plaintiffs have not listed in their initial bankruptcy filings.  *Id.* at 783.  Because Plaintiff did not list his claims in his bankruptcy

20

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT / Civil Case No. 2:14-cv-01855-GW

filing, he is judicially estopped from pursuing them now and they must be dismissed.

Even if the claims could still be asserted, they cannot be asserted by Plaintiff because he lacks prudential standing to assert them.  Assets not listed in a debtor's bankruptcy schedule, including causes of action, "remain[] the bankruptcy estate's property, even after the court discharge[s] his debt." *Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004); *accord* 11 U.S.C. § 544(c), (d).  As a result, only the bankruptcy trustee has prudential standing to pursue these claim, because the bankruptcy estate is the "real party plaintiff in interest." *Dunmore*, 358 F.3d at 1112.  Plaintiff lacks prudential standing to pursue his claims because he failed to list them in his bankruptcy schedules. *Id.*

This is true even if, as Plaintiff alleges, Bank of America did not pay Plaintiff interest after the conclusion of his 2011 bankruptcy proceeding.  Courts have held that rights to future payments remain the property of the bankruptcy estate even if the payments were not owed when bankruptcy was filed. *See, e.g.*, *In re Ryerson*, 739 F.2d 1423, 1426 (9th Cir. 1984) (termination payment employer owed to bankruptcy petitioner was part of bankruptcy estate even though petitioner was terminated eight months after filing for chapter 7 bankruptcy because termination pay was based on years of service, most of which were completed years prior to bankruptcy); *In re Andrews*, 80 F.3d 906, 910 (4th Cir. 1996) (quarterly payments due to plaintiff under agreement that must be paid several years after bankruptcy were part of bankruptcy estate because payments were rooted in pre-petition agreement); *In re IndyMac Bancorp, Inc.*, 2012 WL 1037481, at *12 (Bkrtcy. C.D. Cal. 2012) ("[A] debtor's contingent interest in future income has consistently been found to be property of the bankruptcy estate," because "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541.").  As in those cases, any right Plaintiff had to receive interest on escrow attached when he obtained a mortgage from Bank of America's predecessor—an event which occurred well before Plaintiff filed for bankruptcy.  Any

21

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT / Civil Case No. 2:14-cv-01855-GW

claim arising from that right became the bankruptcy estate's property when Plaintiff filed for Chapter 7 bankruptcy, and it remained the bankruptcy estate's property thereafter.

## IV. Plaintiff Lacks Article III Standing To Seek Injunctive Relief.

Plaintiff's claim for injunctive relief fails for a final reason:  He lacks Article III standing to seek such relief because he will not benefit from any injunction.  "[A] plaintiff must demonstrate standing for each claim he seeks to press" and "for each form of relief sought."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  "In the context of injunctive relief, the plaintiff must demonstrate a *real or immediate threat* of an irreparable injury" to establish Article III standing.  *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (emphasis in original).  This is because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Plaintiff cannot make this showing because he no longer has an escrow account with Bank of America, and therefore will not benefit from any injunction.  In 2018, Plaintiff sold his home, paid off his mortgage, and ended his relationship with Bank of America.  *See* Facts ¶¶ 25, 26, 27.  That same year, Plaintiff moved to France, and he does not intend to live or purchase property in the United States in the future.  *Id.* ¶¶ 27, 28.  When asked "What are the chances you might apply for a mortgage from Bank of America in the future?", Plaintiff replied:  "Zero percent."  *Id.* ¶ 28; Lusnak Dep. 24:3–5.  Because Plaintiff does not currently—and will never again—have a Bank of America escrow account, Plaintiff does not face a future "real or immediate threat of irreparable injury," depriving him of standing to seek injunctive relief.  *Hangarter*, 373 F.3d at 1021 (emphasis omitted).[8]

---

[8] It makes no difference that Plaintiff is seeking to maintain this case as a class action. Plaintiff has not sought certification of an injunctive-relief class, and in any event Article

## **CONCLUSION**

The Court should grant the motion and enter judgment in favor of Bank of America.

DATED:  September 27, 2019                    Respectfully submitted,

                                              By:   */s/ Ashley Simonsen*
                                                    MARK W. MOSIER
                                                    ANDREW SOUKUP
                                                    ASHLEY SIMONSEN
                                                    COVINGTON & BURLING LLP

                                                    DAVID L. PERMUT
                                                    GOODWIN PROCTER LLP

                                                    *Attorneys for Defendant*
                                                    BANK OF AMERICA, N.A.

---

III requires "that a named plaintiff with a live claim exist at the time of class certification." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1539 (2018).  This means that named plaintiffs in a putative class action "must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996).  "Any injury unnamed members of this proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) (en banc); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (named plaintiffs lack standing to seek classwide injunctive relief "[a]bsent a sufficient likelihood that [they] will again be wronged in a similar way").

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on September 27, 2019, I caused a true and correct copy of

3

Defendant Bank of America, N.A.'s Memorandum of Points and Authorities in Support

4

of Summary Judgment to be filed through the Court's CM/ECF system, which caused a

5

true and correct copy of the same to be served on all counsel registered to receive

6

electronic notices.

7

8

DATED:  September 27, 2019            By:    */s/ Ashley Simonsen*

9

ASHLEY SIMONSEN
COVINGTON & BURLING LLP

10

11

*Attorney for Defendant*
BANK OF AMERICA, N.A.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY
JUDGMENT / Civil Case No. 2:14-cv-01855-GW