MARK W. MOSIER (*pro hac vice*)
Email: mmosier@cov.com
ANDREW SOUKUP (*pro hac vice*)
Email: asoukup@cov.com
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street
Washington, D.C. 20001-4956
Telephone: +1 (202) 662-5066
Facsimile: + 1 (202) 778-5066

ASHLEY SIMONSEN (SBN 275203)
Email: asimonsen@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067-4643
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749

DAVID L. PERMUT (*pro hac vice*)
Email:  DPermut@goodwinlaw.com
GOODWIN PROCTER LLP
901 New York Avenue NW
Washington, D.C. 20001
Telephone: + 1 (202) 346-4000

Attorneys for BANK OF AMERICA, N.A.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD M. LUSNAK, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:14-CV-01855-GW(GJSx)<br><br>**BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date:  November 14, 2019<br>Hearing Time: 8:30 a.m.<br>Judge:         Hon. George Wu |

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................... 1

BACKGROUND .......................................................................................... 2

    A.    Bank Of America's Payment Of Interest On Escrow Accounts ................. 2

    B.    Plaintiff's Complaint and Proposed Class .................................... 3

PROCEDURAL STANDARD .......................................................... 5

ARGUMENT ............................................................................... 5

I.    A CLASS SHOULD NOT BE CERTIFIED BECAUSE
INDIVIDUALIZED ISSUES PREDOMINATE. .................................. 5

    A.    Bank of America Did Not Have a Common Policy or Practice of
Not Paying Interest on Escrow Accounts ...................................... 6

    B.    Individualized Proof Is Necessary to Establish the Bank's
Obligation To Pay Interest. ....................................................... 7

        1.    HOLA Preemption Cannot Be Decided on a Classwide
Basis. ............................................................................... 7

        2.    National Bank Act Preemption Cannot Be Decided
Classwide. ....................................................................... 10

    C.    Individualized Proof Is Necessary To Identify Which Putative
Class Members Complied With Notice-and-Cure Provisions. ................. 13

    D.    Individualized Proof Is Necessary To Determine Which Class
Members Satisfied Their Obligations Under The Mortgage
Agreement. .............................................................................. 15

    E.    Plaintiff's Damages Model Does Not Resolve Important Issues on
a Classwide Basis. ..................................................................... 18

II.    A CLASS ACTION IS NOT SUPERIOR TO OTHER METHODS OF
ADJUDICATION. ......................................................................... 21

ii

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CLASS CERTIFICATION / Civil Case No.
2:14-cv-01855-GW

III.   PLAINTIFF DOES NOT SATISFY THE TYPICALITY OR
       ADEQUACY REQUIREMENTS. ........................................................ 22

IV.    ANY CLASS CERTIFIED CAN DATE BACK ONLY TO MARCH
       2010. ............................................................................................... 24

CONCLUSION ............................................................................................. 25

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*Alcantar v. Hobart Serv.*,
    800 F.3d 1047 (9th Cir. 2015) ..................................................................... 5

6
*Amchem Prods., Inc. v. Windsor*,
7
    521 U.S. 591 (1997).................................................................................... 5

8
*In re Asacol Antitrust Litig.*,
9
    907 F.3d 42 (1st Cir. 2018)....................................................................... 18

10
*Bank of Am. v. City & Cty. of San Francisco*,
11
    309 F.3d 551 (9th Cir. 2002) ................................................................... 12

12
*Barnett Bank of Marion Cty., N.A. v. Nelson*,
13
    517 U.S. 25 (1996)..................................................................................... 12

14
*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) .................................................................. 21

15
*Brown v. Wells Fargo Bank N.A.*,
16
    2018 WL 2551641 (C.D. Cal. Mar. 6, 2018)............................................ 17

17
*Campbell v. Best Buy Stores, L.P.*,
18
    2013 WL 5302217 (C.D. Cal. Sep. 20, 2013) ............................................ 7

19
*Campion v. Old Republic Home Protection Co., Inc.*,
20
    272 F.R.D. 517 (S.D. Cal. 2011) ........................................................ 16, 18

21
*Castillo v. Wells Fargo Bank, N.A.*,
22
    2016 WL 7479403 (C.D. Cal. May 12, 2016) ............................................ 9

23
*Chavez v. Wells Fargo Bank, N.A.*,
24
    2016 WL 10999269 (C.D. Cal. July 5, 2016)............................................. 9

25
*Comcast Corp. v. Behrend*,
26
    569 U.S. 27 (2013)................................................................................ 18, 20

27
*Cortez v. Purolator Air Filtration Prods. Co.*,
    23 Cal. 4th 163 (2000) .............................................................................. 16

28

*Corvello v. Wells Fargo Bank N.A.*,
2017 WL 3449072 (N.D. Cal. May 4, 2017) ........................................................ 17

*Dolan v. United States*,
560 U.S. 605 (2010) .............................................................................................. 11

*Dunmore v. United States*,
358 F.3d 1107 (9th Cir. 2004) .............................................................................. 23

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .............................................................................................. 21

*In re Facebook, Inc., PPC Advertising Litg.*,
282 F.R.D. 446 (N.D. Cal. 2012) ......................................................................... 20

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*,
458 U.S. 141 (1982) ................................................................................................ 8

*FirstMerit Bank, N.A. v. Reese*,
242 Cal. App. 4th 408 (2015) ................................................................................. 9

*Flagg v. Yonkers Sav. & Loan Ass'n*,
396 F.3d 178 (2d Cir. 2005) ................................................................................... 8

*Franklin Nat. Bank of Franklin Square v. New York*,
347 U.S. 373 (1954) .............................................................................................. 12

*Friedman v. U.S. Bank Nat. Assoc.*,
2016 WL 6745149 (C.D. Cal. Nov. 14, 2016) ...................................................... 16

*Giotta v. Ocwen Fin. Corp.*,
2016 WL 4447150 (N.D. Cal. Aug. 24, 2016) ...................................................... 14

*Grigsby v. Wells Fargo Bank, N.A.*,
2018 WL 1779338 (C.D. Cal. Apr. 12, 2018) ........................................................ 9

*Gutierrez v. Wells Fargo Bank, NA*,
704 F.3d 712 (9th Cir. 2012) ................................................................................ 12

*Hamala v. Wells Fargo Bank, N.A.*,
2019 WL 1427214 (C.D. Cal. Feb. 1, 2019) .......................................................... 7

v

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CLASS CERTIFICATION / Civil Case No.
2:14-cv-01855-GW

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F. 3d 778 (9th Cir. 2001) ...................................................................... 23

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ...................................................................... 22

*Heisler v. Convergent Healthcare Recoveries, Inc.*,
   2018 WL 6326414 (E.D. Wis. Dec. 14, 2018) ........................................ 23

*Henderson v. J.M. Smucker Co.*,
   2012 WL 12878672 (C.D. Cal. Oct. 23, 2012) ........................................ 23

*Henson v. Fid. Nat'l Fin. Inc.*,
   300 F.R.D. 413 (C.D. Cal. 2014) .................................................................. 6

*Hyderi v. Wash. Mut. Bank, FA*,
   235 F.R.D. 390 (N.D. Ill. 2006) ................................................................ 13

*Khasin v. R. C. Bigelow, Inc.*,
   2016 WL 1213767 (N.D. Cal. Mar. 29, 2016) ........................................ 20

*Kisor v. Wilkie*,
   139 S. Ct. 2400 (2019) .................................................................................. 8

*Kurzban v. Specialized Loan Servicing, LLC*,
   2018 WL 1570370 (S.D. Fla. Mar. 3, 2018) .......................................... 15

*Loughlin v. Amerisave Mortg. Corp.*,
   2018 WL 1896409 (N.D. Ga. Feb. 7, 2018) ............................................ 13

*Lukovsky v. City and Cty. of San Francisco*,
   535 F.3d 1044 (9th Cir. 2008) .................................................................. 25

*Lundgren v. Bank of America, N.A.*,
   2012 WL 929706 (N.D. Cal. Mar. 19, 2012) .......................................... 25

*Lusnak v. Bank of Am., N.A.*,
   883 F.3d 1185 (9th Cir. 2018) ............................................................ 3, 11

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) ...................................................................... 5

*McKinsty v. Swift Transp. Co. of Arizona,*
  LLC, 2017 WL 10059288 (C.D. Cal. July 12, 2017) ................................................. 15

*Munoz v. PHH Corp.,*
  2013 WL 2146925 (E.D. Cal. May 15, 2013) ........................................................ 25

*Neal v. NatrualCare, Inc.,*
  2014 WL 346639 (C.D. Cal. Jan. 30, 2014) ........................................................ 23

*Nichols v. Fearson,*
  32 U.S. (7 Pet.) 103 (1833) ............................................................................. 9

*Niyaz v. Bank of Am.,*
  2011 WL 63655 (E.D. Va. Jan. 3, 2011) ............................................................ 15

*In re POM Wonderful LLC,*
  2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ................................................ 17, 21

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.,*
  752 F.3d 807 (9th Cir. 2014) ........................................................................... 16

*In re Rail Freight Fuel Surcharge Antitrust Litig.,*
  934 F.3d 619 (D.C. Cir. 2019) ......................................................................... 18

*In re Rail Freight Fuel Surcharge Antitrust Litig.,*
  725 F.3d 244 (D.C. Cir. 2013) ......................................................................... 18

*Rea v. Michaels Stores, Inc.,*
  2014 WL 1921754 (C.D. Cal. May 8, 2014) ....................................................... 13

*Robinson v. Chefs' Warehouse,*
  2019 WL 4278926 (N.D. Cal. Sept. 10, 2019) ................................................... 22

*Rodriguez v. Rushmore Loan Management Services LLC,*
  2019 WL 423375 (N.D. Ill. Feb. 4, 2019) ......................................................... 15

*Rose v. Chase Bank USA, N.A.,*
  513 F.3d 1032 (9th Cir. 2008) ......................................................................... 12

*Sherman v. CLP Resources Inc.,*
  2015 WL 13542762 (C.D. Cal. Feb. 4, 2015) ...................................................... 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Silvas v. E*Trade Mortg. Corp.*,
　514 F.3d 1001 (9th Cir. 2008) ........................................................................ 7

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
　904 F.2d 1301 (9th Cir. 1990) ...................................................................... 21

*Smith v. Flagstar Bank, FSB*,
　2018 WL 3995922 (N.D. Cal. Aug. 21, 2018) ............................................. 14

*Sprague v. General Motors Corp.*,
　133 F.3d 388 (6th Cir. 1998) (en banc) ....................................................... 25

*Sullivan v. Kelly Servs., Inc.*,
　268 F.R.D. 356 (N.D. Cal. 2010)................................................................... 21

*Thomas v. Baca*,
　2014 WL 7333266 (C.D. Cal. Dec. 19, 2014)............................................... 21

*In re Vioxx Class Cases*,
　180 Cal. App. 4th 116 (2009) ....................................................................... 17

*Wal-Mart Stores, Inc. v. Dukes*,
　564 U.S. 338 (2011)................................................................................. 5, 15

*Waller v. Hewlett-Packard Co.*,
　295 F.R.D. 472 (S.D. Cal. Sept. 29, 2013) ................................................... 22

*Wasco Products, Inc. v. Southwall Technologies, Inc.*,
　435 F.3d 989 (9th Cir. 2006) ....................................................................... 25

*Watters v. Wachovia Bank, N.A.*,
　550 U.S. 1 (2007).......................................................................................... 13

*Webb v. Carter's Inc.*,
　272 F.R.D. 489 (C.D. Cal. 2011) ................................................................. 22

*Weikel v. Tower Semiconductor Ltd.*,
　183 F.R.D. 377 (D.N.J. 1998)....................................................................... 23

*Werdebaugh v. Blue Diamond Growers*,
　2014 WL 7148923 (N.D. Cal. Dec. 15, 2014)............................................... 18

*Wilde v. Flagstar Bank FSB*,
   2019 WL 1099841 (S.D. Cal. Mar. 8, 2019) ............................................................. 14

*Wise v. Wells Fargo Bank, N.A.*,
   850 F. Supp. 2d 1047 (C.D. Cal. 2012) ..................................................................... 16

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ........................................................................ 5, 6, 22

**Statutes**

12 U.S.C. § 1464(c)(1)(B) ................................................................................................ 8

12 U.S.C. § 1465 .............................................................................................................. 7

15 U.S.C. § 1639d ............................................................................................ 11, 12, 13

**Regulations**

12 C.F.R. § 560.2 (2006) .................................................................................................. 8

**Other Authorities**

CFPB, *Escrow Requirements Under The Truth in Lending Act*,
   78 Fed. Reg. 4,726, 4,744 (Jan. 22, 2013) .................................................................. 2

OCC, Conditional Approval No. 276,
   1998 WL 363812 (May 8, 1998) ................................................................................. 2

OTS, *Preemption of New York Laws Purporting to Regulate Escrow
   Accounts*, 2003 WL 24040106 (Oct. 6, 2003) ............................................................ 8

# **INTRODUCTION**

Plaintiff seeks class certification by repeatedly relying on the false premise that Bank of America had a uniform policy and practice of not paying interest on mortgage escrow accounts. The evidence, however, establishes that Bank of America had no uniform policy or practice. During the proposed class period, nearly 60 percent of Bank of America's California mortgage loan customers received interest on their escrow accounts. These interest payments totaled ██████████████████ customers.

Given the absence of a common policy or practice, class certification is not warranted because common issues do not predominate and because a class action is not a superior method of adjudication. Plaintiff cannot establish liability using common proof because the Court will need to undertake a loan-by-loan inquiry to determine both who is in the class and the merits of each class member's claims. These issues include who originated each mortgage loan (to determine whether preemption under the Home Owner's Loan Act ("HOLA") applies), whether each escrow account was mandated by federal law (to determine whether National Bank Act preemption applies), and whether class members complied with their obligations to make timely mortgage payments and to give Bank of America notice of (and the opportunity to cure) any nonpayment of interest. Plaintiff's expert provides no means of answering these questions on a classwide basis, and he admitted at his deposition that his damages model is overbroad and fails to account for millions of dollars in interest payments to putative class members.

Class certification also is unwarranted because Plaintiff not a typical and adequate class representative. As set forth in Bank of America's accompanying summary judgment motion, Plaintiff's claims are preempted by HOLA. In addition, Plaintiff's delinquencies and failure to disclose his claims when he filed for bankruptcy expose him to unique defenses that other class members do not face. Plaintiff also has little incentive to vigorously litigate this case from his current home in France to recover about $74 when ████████████████████████████████████████████. For these reasons and the additional reasons set forth below, class certification should be denied.

# BACKGROUND

## A.    Bank Of America's Payment Of Interest On Escrow Accounts

A mortgage loan with an escrow account allocates a portion of a customer's monthly mortgage payment to pay taxes and insurance premiums.  Federal regulators have repeatedly acknowledged that escrow accounts provide a "benefit to the borrowers as it relieves them of the tasks of paying such regular tax and insurance obligations in a lump sum."  OCC, Conditional Approval No. 276, 1998 WL 363812, at *9 (May 8, 1998); *see also* Consumer Financial Protection Bureau, *Escrow Requirements Under The Truth in Lending Act*, 78 Fed. Reg. 4,726, 4,744 (Jan. 22, 2013) (borrowers with escrow accounts have "a lower probability of default and possible foreclosure").  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Lusnak Dep. 104:15–105:1.

Plaintiff alleged that Bank of America earned and kept interest from escrowed funds (FAC ¶¶ 2, 32), but discovery has conclusively proven that escrowed funds are kept in ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.  Orriss Decl. ¶ 2; Orris Dep. 95:18–96:22.  In fact, not only does the Bank not earn income on these deposits, but escrow accounts cost substantial sums to administer.  *See* Orriss Decl. ¶ 2; Orris Dep. 101:8–10.  The costs of administering escrow accounts are especially high when a borrower falls behind on payments:  If an escrow account is not regularly replenished through monthly payments, the balance in the escrow account could become negative or otherwise insufficient to make ongoing tax and insurance payments.  Orriss Decl. ¶ 3.  When that happens, Bank of America advances tax and insurance payments for borrowers.  *Id*.  Notwithstanding these costs, Bank of America does not charge borrowers fees for escrow account services.  *Id*. ¶ 2; Lusnak Dep 105:3–6.

Plaintiff also alleged in his Complaint that Bank of America did not pay interest on escrowed funds (FAC ¶ 2), but Bank of America has always paid interest on many mortgage escrow accounts.  Since 2008, Bank of America has had a written policy that

2

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CLASS CERTIFICATION / Civil Case No. 2:14-cv-01855-GW

1   generally provides that ████████████████████████████████████████

2   ██████████████████████████████████. Orriss Decl. ¶¶ 5, 7; *see, e.g.*, Pltf.'s Ex. F, at

3   5979–80.  But Bank of America's written policy also allows for interest to be paid on

4   many escrow accounts.  Orriss Decl. ¶¶ 5, 7; *see, e.g.*, Pltf.'s Ex. F, at 5979–80.  These

5   accounts include █████████████████████████████████████████████

6   █████████████████████████████████████████████████████████████████

7   ████.  *See* Martin Dep., 60:5–21; Orriss Decl. ¶¶ 5, 7.  And in light of the Ninth Circuit's

8   decision in this case, *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1188 (9th Cir. 2018),

9   █████████████████████████████████████████████████████████████████

10  ████████████████.  Orriss Decl. ¶ 9; Orriss Dep. 53:12–23.

11      Bank of America's practice of paying interest on most escrow accounts has re-

12  sulted in substantial payments to many California customers.  Indeed, the parties' experts

13  agree that Bank of America paid interest on escrowed funds for approximately 60 percent

14  of loans that it owned or serviced in California from March 2010 through 2018.  Skander-

15  son Report ¶ 19; Olsen Dep. 42:14–18.  Those interest payments to more than ████████

16  California customers total at least ████████.  Skanderson Report ¶ 19; Olsen Dep.

17  58:10–17, 60:6–9.[1]

18      **B.    Plaintiff's Complaint and Proposed Class**

19      Plaintiff filed this putative class action in 2014 (Dkt. 22), alleging that Bank of

20  America failed to pay him interest on escrowed funds in violation of Section 2954.8(a).

21  Plaintiff seeks to recover damages for Bank of America's alleged breach of its mortgage

22  agreement to pay interest if "Applicable Law requires interest to be paid" and restitution

23  for violations of California's "unlawful" prong of the UCL.  (FAC ¶¶ 10, 32.)  Plaintiff

24  does not know how much interest he is owed, *see* Lusnak Dep. 124:16–21, 139:5–12, but

---

25  [1] Plaintiff's expert believes that ████████ individuals did not receive any interest on es-

26  crowed funds. Olsen Report ¶ 15.  But ████████ of these individuals never had a positive
    escrow balance, and therefore had no claim to receive interest on escrowed funds.

27  Skanderson Report ¶ 20.  Accordingly, only ████████ borrowers had a positive escrow
    balance and did not receive interest on escrowed funds. *Id.*

28

3

his expert calculated the amount to be $74.73.  Olsen Report ¶ 20.

Plaintiff's experience demonstrates how expensive administering an escrow account can be for a servicer.  Plaintiff admits he repeatedly defaulted on his mortgage obligations, including his obligation to make escrow payments.  Lusnak Dep. 72:3–7, 75:11–77:5.  From November 2009 to March 2011, Plaintiff missed four payments.  Patterson Decl. ¶ 11.  From May 2012 to May 2013, Plaintiff missed twelve more payments.  *Id*. ¶ 14.  As a result of these defaults, Plaintiff's escrow account had a negative balance for extended periods of time, as Bank of America advanced thousands of dollars on Plaintiff's behalf for tax and insurance payments.  *Id*. ¶¶ 12–14.  Bank of America also incurred $165 in out-of-pocket costs to protect the value of the property securing the loan.  *Id.* ¶ 15.  The Bank never recovered these costs from Plaintiff.  *Id.* ¶ 16.

Plaintiff now seeks certification of a class of Bank of America's "mortgage loan customers" who paid "money in advance for payment of taxes and assessments on the property, for insurance, or for other purposes relating to the property, and did not receive at least 2 percent simple interest per annum from July 1, 2008 to the date of class certification."  Pltf.'s Mem. in Support of Class Certification ("Mem.") at 12–13.  This proposed class is limited to customers with "loans made by Bank of America or where Bank of America purchased obligations secured by the property"—it does not include mortgages that Bank of American services, but never owned.  *Id.*

Plaintiff proposes representing this class without addressing the many factors that distinguish him from the rest of the class.  Plaintiff's mortgage was originated by Countrywide Bank, F.S.B. ("Countrywide"), a federal savings bank.  Patterson Decl. ¶ 7.  Plaintiff also no longer has a Bank of America mortgage:  He sold his home and moved to France in 2018, and he has no intention to live in the United States again.  Lusnak Dep. 22:11–12, 23:9–11.  ███████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████.  *Id.* at 102:13–103:14; Request for Jud. Notice, Ex. F.

4

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CLASS CERTIFICATION / Civil Case No. 2:14-cv-01855-GW

1

## PROCEDURAL STANDARD

"Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). The prerequisites include each requirement in Rule 23(a), as well as one of the requirements in Rule 23(b). *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015). "The party seeking class certification has the burden of affirmatively demonstrating that the class meets the requirements." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012). That is, "he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).

## ARGUMENT

### I.  A Class Should Not Be Certified Because Individualized Issues Predominate.

Class certification is warranted only if Plaintiff has carried his burden of showing that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This requirement "asks a qualitative question:  whether the common questions are sufficiently central to the case (even if undisputed) that aggregation will materially advance the resolution of multiple claims in an efficient and procedurally fair manner." *Sherman v. CLP Resources Inc.*, 2015 WL 13542762, at *9 (C.D. Cal. Feb. 4, 2015) (Wu, J.). "[C]ommon questions are questions capable of resolution through proof common to the class; individualized questions are those for which answers come through examining class-member specific evidence." *Id.* at *9 n.12.

Plaintiff has not satisfied this "demanding" requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). The central questions in the case—whether the Bank was obligated to pay (and did in fact pay) interest on mortgage escrow accounts, and whether borrowers complied with their obligations to remain current on their repayment

obligations and to give Bank of America notice of any nonpayment—cannot be established on a classwide basis using common proof.   As Plaintiff's damages expert conceded, these questions can be answered only through a burdensome review of each putative class member's loan records, making class certification improper. *See Zinser*, 253 F.3d at 1189 (affirming finding of no predominance where determining liability required the resolution of "many triable individualized issues"); *Henson v. Fid. Nat'l Fin. Inc.*, 300 F.R.D. 413, 420 (C.D. Cal. 2014) (denying certification where liability required findings about "each putative class member's mortgage").

### A. Bank of America Did Not Have A Common Policy Or Practice Of Not Paying Interest On Escrow Accounts.

Plaintiff contends that he is challenging Bank of America's "years-long policy and practice of not paying escrow interest on Class members' escrow balances." Mem. at 20. Plaintiff's strategy is understandable:  By portraying his claims as challenging a common policy and practice, Plaintiff makes class certification seem appropriate.  But undisputed evidence shows that Bank of America had no such common policy or practice.

Bank of America's general policy permitted large numbers of loans to receive interest during the proposed class period.  Most notably, Bank of America paid interest for ███████████████████████████████████████████████████████. Orriss Decl. ¶ 5. And for much of the proposed class period, the Bank paid interest on ████████ ████████████ even if payment was not necessarily warranted under the Bank's written policy.[2] *See, e.g.*, Skanderson Report ¶ 12d.  As a result, of the 2.1 million California loans that Bank of America serviced from March 2010 to the present, more than ████ ████ customers received at least █████████ in interest on escrowed funds. *Id*. ¶ 19.

---

[2] More than ███████ customers that received interest had Bank of America-originated loans, and thus ███████████████████████████████████████████████████████. Skanderson Report, at 12 (Table 1). ████████████████████████████████ ████████████████████████████ borrowers who received interest prior to this date continued to receive interest payments. *See* Orriss Decl. ¶¶ 6–8.

Plaintiff's inability to identify a uniform policy or practice significantly undercuts his contention that this case is appropriate for classwide treatment. *See, e.g.*, *Campbell v. Best Buy Stores, L.P.*, 2013 WL 5302217, at *13 (C.D. Cal. Sep. 20, 2013) (failure to demonstrate "a uniform policy" meant "individual questions . . . will predominate over any common questions"). As explained below, the absence of a common policy or practice means that common questions do not predominate.

**B.    Individualized Proof Is Necessary To Establish The Bank's Obligation To Pay Interest.**

Plaintiff incorrectly asserts that "whether [Bank of America] was required by Section 2954.8(a) to pay escrow interest of at least 2% per annum presents a common legal question that the Court can answer in one fell swoop for the whole class." Mem. at 15. But any obligation to pay interest under Section 2954.8 depends on who originated the loan and whether federal law mandated that an escrow account be established. Plaintiff cannot answer these questions on a classwide basis using common proof.

**1.    HOLA Preemption Cannot Be Decided On A Classwide Basis.**

Hundreds of thousands of putative class members, including Plaintiff, are not entitled to interest because their loans were originated by a federal savings association, and thus the Home Owners' Loan Act ("HOLA") preempts California's interest-on-escrow law as to those loans. *See* ECF No. 83-1, at 4–16. "The general presumption against preemption is not applicable" under HOLA. *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004–05 (9th Cir. 2008). Instead, and unlike the type of preemption available under the National Bank Act, HOLA preempted "the field of lending regulation of federal savings associations." *Id.*[3] Because a loan-by-loan review is necessary to identify loans originated by federal savings associations and therefore subject to HOLA preemption, no

---

[3] Although Dodd-Frank changed the preemption framework to eliminate field preemption on HOLA-originated loans, *see* 12 U.S.C. § 1465, these amendments apply only on a prospective basis. *See, e.g.*, *Hamala v. Wells Fargo Bank, N.A.*, 2019 WL 1427214, at *4 n.7 (C.D. Cal. Feb. 1, 2019).

class can be certified in this case.

Putative class members with loans made by federal savings associations are not entitled to interest on escrow.  HOLA preempts, among others, "state laws purporting to impose requirements regarding . . . escrow accounts, impound accounts, and similar accounts."  12 C.F.R. § 560.2(b)(6).  For this reason, both federal courts and federal regulators have consistently held that HOLA and its regulations preempt laws like Section 2954.8 as applied to loans originated by federal savings associations.  *See, e.g.*, *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 181–85 (2d Cir. 2005) (holding that HOLA preempts a similar New York statute); OTS, *Preemption of New York Laws Purporting to Regulate Escrow Accounts*, 2003 WL 24040106, at *2–3 (Oct. 6, 2003) (same).

HOLA preemption continues to apply even after these loans are acquired by a national bank.  Federal savings associations are authorized to sell loans.  12 U.S.C. § 1464(c)(1)(B).  This authority is critical to permitting savings associations to mitigate risk by participating in the secondary mortgage market.  *See, e.g.*, *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 148 n.10 (1982).  Section 2954.8 intrudes upon the exclusive field of federal regulation of savings associations if it applies to loans originated by those entities after those loans are sold to a third party.  By making the terms of the loan less favorable for the lender, the state law would reduce the marketability of the loan and interfere with the savings association's ability to sell it.  For this reason, federal regulations expressly preempt state laws that limit a federal savings association's power to sell or transfer loans.  12 C.F.R. § 560.2(b)(10) (preempting state laws that impose requirements on the "sale or purchase of … mortgages").  If there were any ambiguity on this point, the Court should defer to the federal agency's view "that loan terms should not change simply because an originator entitled to federal preemption may sell or assign a loan to an investor that is not entitled to federal preemption."  OTS, *Preemption of New Jersey Predatory Lending Act*, 2003 WL 24040104, at *4 n.18 (July 22, 2003); *see also Kisor v. Wilkie*, 139 S. Ct. 2400, 2416–17 (2019) (courts should defer to agencies' interpretations of ambiguous regulations when interpretations are reasonable

1  and based on agencies' "substantive experience").

2      Traditional contract law principles also confirm this result.  As illustrated by Plain-

3  tiff's 2009 Deed of Trust, Countrywide was "not . . . required to pay [Plaintiff] any

4  interest or earnings" on the funds held in his escrow account unless "an agreement is

5  made in writing or Applicable Law requires."  Patterson Decl., Ex. C, § 3.  Because "Ap-

6  plicable Law" includes HOLA and its implementing regulations, no interest was due

7  under the original Deed of Trust.  This agreement also expressly stated that the "cove-

8  nants and agreements of this Security Instrument shall bind . . . and benefit the successors

9  and assigns of [Countrywide]."  *Id*. § 13.  This plain reading of the agreement—which

10 provides that the mortgage terms did not change when Bank of America acquired the

11 loan—is further supported by the well-settled contract law principles that an assignee

12 "'stands in the shoes' of the assignor, taking his or her rights and remedies," *FirstMerit*

13 *Bank, N.A. v. Reese*, 242 Cal. App. 4th 408, 413 (2015), and the "valid-when-made" doc-

14 trine, which holds that loan agreements valid at origination do not become unlawful upon

15 transfer, *Nichols v. Fearson*, 32 U.S. 103, 109 (1833).

16     Although courts are split on this issue, a "majority" of courts have adopted the

17 "better reasoned approach" that HOLA continues to preempt state laws even after the

18 loans are acquired by a national bank.  *Chavez v. Wells Fargo Bank, N.A.*, 2016 WL

19 10999269, at *3–4 (C.D. Cal. July 5, 2016).  This Court embraced this approach in *Cas-*

20 *tillo v. Wells Fargo Bank, N.A.*, 2016 WL 7479403, at *3 n.3 (C.D. Cal. May 12, 2016)

21 (Wu, J.), and it should do so again here.[4]

22     A significant portion of the proposed class—including Plaintiff—have loans orig-

23 inated by federal savings associations and therefore subject to HOLA preemption.

24 _____

25 [4] This Court has issued decisions on both sides of the split.  *Compare Grigsby v. Wells Fargo Bank, N.A.*, 2018 WL 1779338, at *7–8 (C.D. Cal. Apr. 12, 2018) (holding

26 that HOLA preemption does not transfer when loan is acquired by a national bank) *with Cas-*

27 *tillo*, 2016 WL 7479403, at *3 n.3  (holding that HOLA preemption survives assignment to a national bank).  The Ninth Circuit has accepted an interlocutory appeal to resolve the

28 issue.  *See McShannock v. JP Morgan Chase Bank N.A.*, No. 19-15899 (9th Cir. 2019).

9

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CLASS CERTIFICATION / Civil Case No. 2:14-cv-01855-GW

Skanderson Report ¶ 32.  Of the loans that Plaintiff's expert believes did not receive interest on escrowed funds, the data produced in this case identifies ███████ loans that were originated by "Countrywide Financial Corporation"—an entity affiliated with a federal savings association—that are presumptively entitled to HOLA preemption. *Id.*, at 12 (Table 1).

Plaintiff has no systematic way to identify *all* loans entitled to HOLA preemption on a classwide basis. *See* Olsen Dep. 99:23–107:9.  The data in the Bank's mortgage servicing systems ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████. Krier Decl. ¶ 7; Skanderson Report ¶¶ 32–35.  For ████████ loans that Plaintiff's expert believes did not receive interest on escrowed funds, the ███████████████████████ ████████████████████████████.  *See* Olsen Dep. 99:23–107:9.  Instead, the data identify ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████.  Krier Decl. ¶¶ 7–8.  ███████████████ █████████████████████████████████████.  *Id.* ¶ 9; Skanderson Report ¶ 22; Martin Dep. 60:22–61:2.  The need to conduct a loan-by-loan review to identify which loans are entitled to HOLA preemption means that individualized issues predominate.

### 2.    National Bank Act Preemption Cannot Be Decided Classwide.

The Ninth Circuit's decision in this case established that the National Bank Act does not preempt California's interest-on-escrow law for escrow accounts (like Plaintiff's) that must be established under federal law.  But the court's reasoning does not extend to the many escrow accounts that were not mandated by federal law, but were instead established voluntarily by the parties.  Because the California interest-on-escrow law also is preempted by the National Bank Act as to those accounts, individualized proof is necessary to determine why an escrow account was established, which in turn determines whether National Bank Act preemption will apply.

In opposing Bank of America's motion to dismiss, Plaintiff relied heavily on a

10

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CLASS CERTIFICATION / Civil Case No. 2:14-cv-01855-GW

provision of the Dodd-Frank Act requiring payment of interest on escrow accounts that are "subject to this section" only "[i]f prescribed by applicable federal and state law."  15 U.S.C. § 1639d(g)(3).  According to Plaintiff, in enacting this provision, "Congress expressed a clear intent that application of state escrow interest requirements does not interfere with national banks' powers."  ECF No. 28, at 9.  Although Judge King rejected this argument and dismissed Plaintiff's claims because the California law was preempted, the Ninth Circuit reinstated the claims by agreeing with Plaintiff's view that § 1639d(g)(3) "expresses Congress's view" that the National Bank Act does not preempt California's interest-on-escrow law.  *Lusnak*, 883 F.3d at 1194–95.

Even assuming that a Congressional directive to require national banks to pay interest on escrowed funds may be inferred from § 1639d(g)(3), that directive extends only to escrow accounts that are "subject to" § 1639d(g)(3).  Section 1639d requires lenders to establish escrow accounts only in four situations:  when a mortgage "is made, guaranteed, or insured by a State or Federal governmental lending or insuring agency"; for certain so-called high-priced mortgage loans; when otherwise required "by Federal or State law"; or when so required pursuant to regulation. 15 U.S.C. § 1639d(b).  Unless one of these situations is present, an escrow account is not required, and the account is not "subject to" Section 1639d's requirements.

In other words, Congress required lenders to pay interest in accordance with state law only on *some* escrow accounts—those that lenders *must* establish, as a matter of federal law, on mortgage loans referenced in § 1639d(a)–(b).  Accounts established at the borrower's request or at the lender's discretion are "not covered" by Section 1639d, *id.* § 1639d(f), and thus are not "subject to" § 1639d's requirements.  It would ignore the limits of congressional intent to read § 1639d(g)(3) as requiring lenders to pay state-law prescribed interest on *all* mortgage escrow accounts.  *See Dolan v. United States*, 560 U.S. 605, 625 (2010) ("[I]t frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law.").

Thus, for escrow accounts not mandated by federal law, a preemption analysis

11

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CLASS CERTIFICATION / Civil Case No. 2:14-cv-01855-GW

must be performed without regard to § 1639d(g)(3), since that provision does not apply to those accounts.  Under this analysis, the National Bank Act preempts this state law.[5]

The Supreme Court has long "interpret[ed] grants of both enumerated and incidental 'powers' to national banks . . . as grants of authority not normally limited by, but rather ordinarily preempting, contrary state law."  *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 25–26 (1996).  For example, the Supreme Court has held that a state law prohibiting the use of the word "savings" in advertising was preempted because it interfered with national banks' exercise of their federal deposit-taking powers.  *Franklin Nat. Bank of Franklin Square v. New York*, 347 U.S. 373 (1954).  And the Ninth Circuit has held that the National Bank Act preempts laws prohibiting national banks from charging ATM fees, *Bank of Am. v. City & Cty. of San Francisco*, 309 F.3d 551, 561–64 (9th Cir. 2002), requiring credit card issuers that offered preprinted checks to include the finance charges incurred by using the check, *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1037 (9th Cir. 2008), and regulating the order in which a national bank posts transactions to customer accounts, *see Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 723 (9th Cir. 2012).

The California law is preempted under this standard because it seeks to prohibit Bank of America from exercising its federal authority to include a term in mortgage loans requiring an escrow account unless the Bank pays interest on that account balance.  By stripping national banks of the power to decide whether, and how much, interest to pay on escrow accounts, the law seeks to regulate quintessential banking decisions.  The requirement to pay interest makes escrow accounts a less attractive mechanism for mitigating lending risks, and compels banks to (i) use other means (such as higher mortgage interest rates or loan origination fees, or reduced loan amounts) to mitigate its risk, (ii) do nothing and assume greater risk, or (iii) refrain from making the loan at all.  Where

---

[5] Because Plaintiff's loan is guaranteed by the Department of Veterans' Affairs, it is "subject to" § 1639d(g).  The Ninth Circuit therefore had no occasion to consider whether National Bank Act preemption applies to escrow accounts not required under federal law.

state law so directly restricts and burdens a national bank's federally granted lending authority, nothing more is required to show preemption.  *See, e.g.*, *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 13 (2007) ("Beyond genuine dispute, state law may not significantly burden a national bank's own exercise of its real estate lending power, just as it may not curtail or hinder a national bank's efficient exercise of any other power, incidental or enumerated under the [National Bank Act].").

A class should not be certified because Plaintiff has no systematic way to identify which putative class members have escrow accounts that must be established by federal law and therefore are "subject to" § 1639d(g).  *See* Olsen Dep. 126:7–127:22. ███████ ███████████████████████████████████████ Krier Decl. ¶ 10; Skanderson Report ¶ 40. ███████████████████████████████████████████████████ ███████████████████████. Krier Decl. ¶¶ 10–11; Skanderson Report ¶ 40.

Courts have held that the predominance requirement is not satisfied when a loan-by-loan review is necessary to determine whether the loan is subject to a particular federal law.  *See, e.g.*, *Rea v. Michaels Stores, Inc.*, 2014 WL 1921754, at *4 (C.D. Cal. May 8, 2014) (Wu., J.) ("class proceeding in this case would almost necessarily devolve into individual mini-trials regarding whether each particular class member actually met the requirements" to receive overtime pay); *Loughlin v. Amerisave Mortg. Corp.*, 2018 WL 1896409, at *24 (N.D. Ga. Feb. 7, 2018) (finding no predominance where "an individual loan-by-loan review" was required); *Hyderi v. Wash. Mut. Bank, FA*, 235 F.R.D. 390, 403 (N.D. Ill. 2006) (same).  The Court should reach the same result here.

## C.   Individualized Proof Is Necessary To Identify Which Putative Class Members Complied With Notice-and-Cure Provisions.

Most mortgage agreements require the borrower to give Bank of America written notice and an opportunity to cure before bringing suit or joining a suit against the Bank. For example, the standard Fannie Mae/Freddie Mac California deeds of trust provide that, before a person may be "joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security

13

Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument," the person must first provide Bank of America written notice of alleged breach and an opportunity "to take corrective action."[6]

The claims in this case fall squarely within the scope of this provision.  Plaintiff challenges Bank of America's administration of escrow accounts.  How Bank of America administers escrow accounts are "actions pursuant to this Security Instrument," because the creation of the escrow account and any attendant duties are owed only because of the Security Instrument.  Any failure to pay interest in the manner required by the mortgage agreements are also claims based on allegations "that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument."[7]

Thus, under the plain language of the class members' agreements, the overwhelming majority of the class claims "fall squarely within the ambit of the notice-and-cure provision. " *Giotta v. Ocwen Fin. Corp.*, 2016 WL 4447150, at *4 (N.D. Cal. Aug. 24, 2016), *aff'd*, 706 Fed. App'x 421, 422–23 (9th Cir. 2017) (holding that a statutory claim regarding defendant's charging of fees "for services performed in connection with [plaintiff's] default" was subject to a notice-and-cure clause in a mortgage agreement).  District courts have held that this provision applies to claims arising out of violations of Section 2954.8(a), and they have dismissed those claims for failure to plead compliance with the provision.  *See, e.g.*, *Wilde v. Flagstar Bank FSB*, 2019 WL 1099841, at *2 (S.D. Cal. Mar. 8, 2019); *Smith v. Flagstar Bank, FSB*, 2018 WL 3995922, at *4 (N.D. Cal. Aug. 21, 2018).  Other courts have reached similar conclusions in statutory cases.[8]

---

[6] *See, e.g.*, Pl.'s Motion for Class Certification, Exs. Q–U, W–Y, AA, CC, § 20.  To the extent that any deeds of trust do not contain this obligation, that creates another individualized issue that defeats class certification.

[7] *See, e.g.*, *id.*, Exs. Q–CC, § 3.

[8] *See, e.g.*, *Rodriguez v. Rushmore Loan Management Services LLC*, 2019 WL 423375, at *4 (N.D. Ill. Feb. 4, 2019) (collecting cases and holding that notice-and-cure provision applied to statutory claims); *Kurzban v. Specialized Loan Servicing, LLC*, 2018 WL 1570370, at *2 (S.D. Fla. Mar. 3, 2018) (similar); *Niyaz v. Bank of Am.*, 2011 WL 63655,

14

Bank of America does not lose the right to enforce the notice-and-cure provision in its mortgage agreements simply because Plaintiff has filed this case as a class action. Indeed, the notice-and-cure provision applies both to initiating a lawsuit and to joining a class.  The Court cannot certify a class "on the premise" that Bank of America "will not be entitled to litigate its . . . defenses to individual claims." *Wal-Mart Stores,* 564 U.S. at 367.  To do so would not only raise due process concerns, but also violate the Rules Enabling Act, which "forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" *Id.* (quoting 28 U.S.C. § 2072(b)).

Determining which class members complied with the notice-and-cure provision will require a file-by-file review of hundreds of thousands of loan records.  ███████

████████████████████████████████████████████████████████████████████████

████████████████████████.  *See* Pierce Decl. ¶ 10; Krier Decl. ¶ 12.  A search of Bank of America's customer complaint databases identified just 59 customers who contacted Bank of America regarding interest on their escrow accounts.  Pierce Decl. ¶ 7.

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████, *id.* ¶ 11; Krier Decl. ¶ 12; in Plaintiff's case, that file is 750 pages long, *see* Patterson Decl. ¶ 5.  Class certification therefore is inappropriate under these circumstances.  *See, e.g.*, *McKinsty v. Swift Transp. Co. of Arizona*, LLC, 2017 WL 10059288, at *10 (C.D. Cal. July 12, 2017) (no class certification where "manual review of" each class member's "wage statements and load files" was required).

### D.   Individualized Proof Is Necessary To Determine Which Class Members Satisfied Their Obligations Under The Mortgage Agreement.

Of the California customers that Plaintiff's expert believes did not receive interest on escrowed funds, Bank of America's data indicates that nearly ██████ borrowers—including Plaintiff—were delinquent on their repayment obligations at some point during

---

at *2 (E.D. Va. Jan. 3, 2011) (notice-and-cure provision applied to statutory claims because "plaintiff's allegations arose from actions taken pursuant to the Deed of Trust").

15

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CLASS CERTIFICATION / Civil Case No. 2:14-cv-01855-GW

the class period.  Skanderson Report ¶ 55.  Those delinquencies bar or limit recovery under a breach-of-contract or UCL theory of recovery.  Class certification is improper because individualized inquiries will be necessary to determine whether class members satisfied their repayment obligations and, if not, the legal consequences of delinquency.

To prevail on a breach of contract claim, every class member must prove his or her "performance or excuse for nonperformance" under the contract.  *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 818 (9th Cir. 2014).[9]  Borrowers who were delinquent on their repayment obligations did not substantially perform their obligations under their contracts, and are therefore not entitled to relief under a breach-of-contract theory.  *See, e.g.*, *Friedman v. U.S. Bank Nat. Assoc.*, 2016 WL 6745149, at *5–6 (C.D. Cal. Nov. 14, 2016) (dismissing breach of contract claim with prejudice where plaintiff failed to make payments for taxes and insurance as required by mortgage); *Wise v. Wells Fargo Bank, N.A.*, 850 F. Supp. 2d 1047, 1056 (C.D. Cal. 2012) (because plaintiff defaulted on her mortgage, her "breach of contract cause of action fails as a matter of law").  Tens of thousands of putative class members therefore cannot satisfy the elements of a breach of contract claim because they defaulted on their loan obligations.

Likewise, the Court must consider a putative class member's individual circumstances to decide whether to award restitution under the UCL.  *See Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 179–81 (2000) (equitable considerations may "guide the court's discretion in fashioning the equitable remedies authorized by [the UCL]," because "consideration of the equities between the parties is necessary to ensure an equitable result"); *Brown v. Wells Fargo Bank N.A.*, 2018 WL 2551641, at *1–2 (C.D. Cal. Mar. 6, 2018) (equitable considerations limit available relief under UCL for wrongful-foreclosure and breach-of-mortgage-contract claims).

---

[9] Even if a putative class member had an excuse for non-performance, that question is necessarily an individualized inquiry, further weighing against predominance.  *See Campion v. Old Republic Home Protection Co., Inc.*, 272 F.R.D. 517, 530–31 (S.D. Cal. 2011) (questions regarding non-performance for breach-of-contract claim in class action required determination of "individual inquir[ies]," weighing against predominance).

16

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CLASS CERTIFICATION / Civil Case No. 2:14-cv-01855-GW

A proper restitution analysis requires consideration of the "difference between what the plaintiff paid and the value of what the plaintiff received," *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009), because a party "seeking restitution must generally return any benefit it has received." *In re POM Wonderful LLC*, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) (quotation omitted); *see also Brown*, 2018 WL 2551641, at *1–2 (defendant bank could present defenses of offset and recoupment against UCL restitution claim). This analysis must account for the benefit Bank of America provided each delinquent customer in the form of, for example, no-cost escrow services, default-related expenses incurred by the Bank, lost or delayed principal and interest payments, and tax and insurance payments the Bank advanced on a borrower's behalf. *See, e.g.*, *Corvello v. Wells Fargo Bank N.A.*, 2017 WL 3449072, at *2–3 (N.D. Cal. May 4, 2017) (granting summary judgment on UCL claim where delinquent plaintiffs were allowed to stay in their home, but the restitution analysis did not "account[] for this benefit").

Under this analysis, many class members are not entitled to receive restitution, as Plaintiff's experience illustrates. Plaintiff's "loss" for restitution purposes is at most $74.73 in unpaid interest. Olsen Report ¶ 20. But he was often delinquent on his mortgage loan, forcing Bank of America to incur $165 in out-of-pocket costs to protect the value of the property securing the mortgage loan. Patterson Decl. ¶ 15. The Bank never recovered these costs from Plaintiff. *Id.* ¶ 16. Plaintiff's delinquency also forced Bank of America to advance funds for tax and insurance payments. *Id.* ¶ 20. Because Plaintiff caused Bank of America to spend more than he now seeks to recover, *see* Skanderson Report ¶ 54, he is not entitled to restitution here. *Corvello*, 2017 WL 3449072, at *2–3.

Given the need for an individualized inquiry to determine which putative class members are or were delinquent on their repayment obligations, Skanderson Report ¶ 53, Plaintiff has not shown that he can establish the putative class's right to recovery on a classwide basis using common proof. *See, e.g.*, *Campion*, 272 F.R.D at 531–53 (individual issues would predominate on restitution question because determining entitlement to restitution would require quantifying the benefit received by each class member). Of the

████ borrowers who Plaintiff's expert believes did not receive interest on escrow, at least ████ borrowers were delinquent on their repayment obligations at some point during the class period.  Skanderson Report ¶ 55.  That so many putative class members—more than 10 percent of any putative class—are certain to recover nothing confirms that Rule 23's predominance requirement is not satisfied.  *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 623–26 (D.C. Cir. 2019) (no predominance where 2,037 class members had no viable claim); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 58 (1st Cir. 2018) (no predominance where 10 percent of putative class had no viable claim).

### E. Plaintiff's Damages Model Does Not Resolve Important Issues On A Classwide Basis.

Rule 23 requires "a hard look at the soundness of [the] statistical models that purport to show predominance."  *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253, 255 (D.C. Cir. 2013); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 34–35 (2013) (predominance mandates "rigorous analysis" to ensure that plaintiff's damages model only measures "damages attributable" to the liability theory).  In taking this hard look, courts must reject damage models that are "speculative" or based on "arbitrary [] measurements." *Id.* at 35–36 (quotation omitted).  A plaintiff has not satisfied its evidentiary burden if its expert "assumes, without investigating," important factors relevant to the plaintiff's clams. *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *13 (N.D. Cal. Dec. 15, 2014).  These principles preclude class certification here.

Plaintiff's expert conceded that his model cannot be used to identify whether a particular loan was owned by Bank of America, or whether the Bank merely serviced the loan on behalf of the mortgage's owner.  Olsen Dep. 79:21–83:24.  This factor is critical because Plaintiff limited the class to those with "loans made by Bank of America or where Bank of America purchased obligations secured by the property."  Mem. at 12–13.  The class definition excludes customers with mortgages that Bank of America services, but

never made or owned.[10]  *Id*.  But Plaintiff's damages model does not account for this distinction.  Instead, it includes loans that are owned *or* serviced by Bank of America, and Plaintiff's expert admits that he has no way to distinguish between the two.  Olsen Dep. 81:1–16, 83:13–21. ███████████████████████████████████████ ██████████████████████████████.  Krier Decl. ¶ 6; Skanderson Report ¶ 30.

A similar loan-by-loan inquiry will be necessary to determine whether Bank of America paid interest to many putative class members.  The transaction data uses two relevant codes: "029" for interest payments and "020" for miscellaneous transactions.  Although most interest payments received the "029" code, a significant number of interest payments—as much as ███████ in payments—are coded with the "020" miscellaneous code.  *See* Skanderson Report ¶ 36; Orriss Dep: 113:1–114:2.  Plaintiff's damages model does not account for interest payments recorded as miscellaneous transactions.  Olsen Dep. 109:2–110:9.  Because Bank of America also used this category to record non-interest-related transactions, Plaintiff's expert also admitted it was impossible for him to determine which "020" transactions were actually interest payments.  *Id.* 114:13–115:2.  For the ██████ loans Plaintiff's expert believes did not receive interest, ██████ loans had 020 transactions.  Skanderson Report ¶ 12c; *see also id.* ¶¶ 38–39 (identifying over ██████ loans with 020 transactions that likely correspond to interest payments).  Thus, a loan-by-loan review is the only way to determine (i) which miscellaneous transactions were interest payments and (ii) whether a customer received all required interest once all interest payments are accounted for.[11]  Skanderson Report ¶ 38.

Plaintiff's expert's calculations of interest owed also failed to account for gaps in time when Bank of America neither owned nor serviced the loans.  More than ██████

---

[10] In the mortgage market, the right to *service* a mortgage loan may be acquired separate from the mortgage asset itself—*i.e.*, separate from the rights secured by the property.  *See* Skanderson Report ¶ 28 n.12.

[11] Plaintiff's expert identified ██████ loans that he concludes received some interest, but not all of the interest he expected it to receive, and he did not know why.  Olsen Dep. 63:7–10, 66:4–6.  This uncertainty confirms why a loan-by-loan review is necessary.

19

loans had at least a 13-month gap in the servicing records, which likely indicates that a loan was serviced by another entity besides Bank of America during at least some portion of time.  Skanderson Report ¶¶ 42–44; *see* Olsen Dep. 98:10–13.  Yet Plaintiff's expert improperly assumed that Bank of America was obligated to pay interest to these borrowers during these servicing gaps.  Skanderson Report ¶¶ 45–47; *see* Olsen Dep. 97:14–24. Only a loan-by-loan review of these loans can determine when Bank of America had an obligation to pay interest.

Plaintiff's damages model also fails to account for the many factors necessary for a proper restitution calculation.  *See* Skanderson Report ¶¶ 48–65.  Even for class members entitled to some restitution, individualized inquiries will still predominate because restitution cannot be calculated using common evidence.  Plaintiff's expert admitted that his calculations make no attempt to account for the individualized costs and benefits that must be included in the restitution calculation.  Olsen Dep. 116:8–12; *see supra* at 16–18.  Class certification is thus improper because Plaintiff did not "establish[] that the appropriateness of and entitlement to restitution can be said to constitute a common question that can be resolved for all members of the class in a single adjudication."  *In re Facebook, Inc., PPC Advertising Litg.*, 282 F.R.D. 446, 461 (N.D. Cal. 2012) (denying class certification for UCL claim on predominance grounds).  Because Plaintiff's proposed method for restitution fails to consider mitigating factors that might lead to reduced or no restitution, the model "cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."  *Comcast*, 569 U.S. at 34; *see also Khasin v. R. C. Bigelow, Inc.*, 2016 WL 1213767, at *3 (N.D. Cal. Mar. 29, 2016) (denying motion for class certification on predominance grounds where restitution model failed to account for benefits received); *In re POM Wonderful LLC*, 2014 WL 1225184, at *3 ("Because [plaintiff's damages] model makes no attempt to account for benefits conferred upon Plaintiffs, it cannot accurately measure damages.").

## II.     A Class Action Is Not Superior To Other Methods Of Adjudication.

Plaintiff has not established that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This superiority inquiry considers "the likely difficulties in managing" the class action, *id.*(b)(3)(D), which "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). These problems include "the potential difficulties in notifying class members of the suit, calculation of individual damages, and distribution of damages." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1304 (9th Cir. 1990). Plaintiff cannot overcome the serious manageability concerns in this case.

*First*, Plaintiff is incapable of identifying who is in his proposed class. *Thomas v. Baca*, 2014 WL 7333266, at *1 (C.D. Cal. Dec. 19, 2014) (class certification inappropriate because no "viable method of ascertaining class membership"), *aff'd*, 703 F. App'x 508, 511 (9th Cir. 2017); *see also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127–28 (9th Cir. 2017) (difficulties in ascertaining class members should be analyzed as part of superiority analysis). Plaintiff cannot easily differentiate loans that were made or purchased by Bank of America (and therefore are included in the class) from those merely serviced by the Bank (and therefore fall outside of the proposed class). *See supra* at 18–19. And Plaintiff's expert cannot identify which customers might actually have received all required interest, either because interest payments were coded as miscellaneous transactions or because another entity was servicing the loan. *See supra* at 19–20.

*Second*, Plaintiff offers no explanation of how this Court could address Bank of America's various defenses to each class member's claim while still "managing this case as a class action." *Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356, 365 (N.D. Cal. 2010). Instead, Plaintiff boldly suggests "there may not even need to be a trial in this case," speculating instead that liability and damages can be adjudicated classwide on summary judgment. Mem. at 24. But the numerous individualized issues identified above will

preclude classwide summary judgment.  "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'"  *Zinser*, 253 F.3d at 1192.

*Third*, Plaintiff ignores that each putative class member can obtain relief through the Bank's notice-and-cure process.  This alternative, no-cost relief defeats his superiority arguments.  *See Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472, 487–489 (S.D. Cal. Sept. 29, 2013) (denying class certification motion and finding that availability of free software update that would provide effective relief precluded finding of superiority); *Webb v. Carter's Inc.*, 272 F.R.D. 489, 504 (C.D. Cal. 2011) ("[A] class action is not superior because Carter's is already offering the very relief that Plaintiffs seek.").

## III.   Plaintiff Does Not Satisfy The Typicality Or Adequacy Requirements.

Rule 23 requires that "the claims or defenses of the representative parties are typi-cal of the claims or defenses of the class," and that the representative "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  Plaintiff is neither a typical nor an adequate representative of the class he seeks to represent.

As a threshold matter, Plaintiff lacks a viable claim because his claims are preempted by HOLA.  *See* ECF No. 83-1, at 4–16.  When "claims are preempted," that "eliminates [Plaintiff] as a viable class representative."  *Robinson v. Chefs' Warehouse*, 2019 WL 4278926, at *5 (N.D. Cal. Sept. 10, 2019).

Plaintiff's claims also are not typical of the class because he faces additional de-fenses as a result of his numerous delinquencies.  *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (typicality not satisfied if "there is a danger that absent class members will suffer [because] their representative is preoccupied with defenses unique to it").  As someone who repeatedly defaulted on his mortgage loan, Plaintiff will face defenses that class members who remained current on their mortgages will not face.  For example, his breach of contract claim will fail because he did not perform under his contract, and he is not entitled to UCL restitution because he caused Bank of America to suffer losses that exceed the $74.73 he seeks to recover in this case.  *See supra* at 16–17.

Plaintiff also faces defenses that other class members do not because he filed for bankruptcy and did not disclose the claims asserted here. *See* ECF No. 83-1, at 20–22. Plaintiff knew of his potential claim against Bank of America by early 2011, Lusnak Dep. 111:11–112:12, but did not disclose that claim in his 2011 bankruptcy petition, *id.* 136:22–137:3; Request for Jud. Not., Ex. A. Plaintiff therefore is "judicially estopped from asserting a cause of action" he failed to "raise[] in a reorganization plan or otherwise mentioned in [their] schedules or disclosure statements." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F. 3d 778, 783 (9th Cir. 2001). Those undisclosed claims also "remain[] the bankruptcy estate's property, even after the court discharge[] his debt," depriving Plaintiff of prudential standing to pursue the claims. *Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004). Because the vast majority of the putative class has not filed for bankruptcy and is thus not subject to these estoppel and standing defenses, class certification is improper. *See Henderson v. J.M. Smucker Co.*, 2012 WL 12878672, at *3 (C.D. Cal. Oct. 23, 2012) ("[O]nce a class action plaintiff's claims become part of the bankruptcy estate, she no longer has standing to prosecute the action [on behalf of the class]."); *Neal v. NatrualCare, Inc.*, 2014 WL 346639 (C.D. Cal. Jan. 30, 2014) (decertifying class after plaintiff failed to disclose claims in bankruptcy petition); *Heisler v. Convergent Healthcare Recoveries, Inc.*, 2018 WL 6326414 (E.D. Wis. Dec. 14, 2018) (plaintiff inadequate due to unique estoppel and standing defenses).

Plaintiff is also not an adequate representative because he may be unable—or unwilling—to attend trial. *See Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 396 (D.N.J. 1998) (putative class representative who was not "readily available to attend trial" was inadequate because his unavailability had "the potential for seriously interfering with his obligation to vigorously prosecute this action"). Plaintiff recently moved to France and has no intention to live again in the United States. Lusnak Dep. 22:11–12, 23:9–11, 24:3–5. Plaintiff will be able to attend trial only if he has a valid visa, but he had difficulty obtaining the necessary visa to travel back to the United States to fulfill his obligations associated with representing the proposed class. *Id.* 24:6–21.

Even with a visa, Plaintiff may reasonably decide not to return to California for trial. Plaintiff did not know how much in damages he is seeking, *id.* 124:3–125:2, and learned for the first time at his deposition that his expert has said he is entitled to just $74.73 in damages, *id.* 139:5–9. ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████. *Id.* 102:13–18; Request for Jud. Not. Ex. F.

███████████████████████████████████████████████

███████████████████████████████████████. Lusnak Dep. 103:11–21. ███████████

███████████████████████████████████████████████

███████████████████████████████████.[12] Lusnak Dep. 94:16–95:1, 96:1–5, 96:22–97:2, 97:17–98:2, 101:13–102:3. Plaintiff may ultimately decide to avoid the risk that he could be pursued by his creditors by not coming to trial. Now that he knows how little he stands to recover if his claims are successful, there is a significant risk that Plaintiff will abandon his duties to the class.

## IV. Any Class Certified Can Date Back Only To March 2010.

Plaintiff acknowledges that claims seeking recovery for unpaid interest before March 12, 2010 are time-barred under the applicable four-year statutes of limitations for UCL and breach-of-contract claims. Mem. at 13. Without citing any authority, Plaintiff nevertheless asks the Court to apply "equitable tolling principles" to extend the class period back to June 2008. There is no basis to do so.

Plaintiff cannot raise equitable tolling for the first time at the class certification stage. Plaintiffs seeking to toll the statute of limitations "must have included the allegation in their pleadings," which Plaintiff never did. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 991 (9th Cir. 2006).

---

[12] These creditors were prohibited from pursuing Plaintiff while his Chapter 13 bankruptcy proceeding was pending. Plaintiff dismissed that proceeding in late 2018 because ████████████████████████████████████, shortly before he moved to France. Lusnak Dep. 93:16–94:1, 102:7–12; Request for Jud. Not. Ex. D.

Even if he could raise it now, Plaintiff has not identified any basis for applying equitable tolling.  This is not a case where there has been "some active conduct by the defendant . . . 'to prevent the plaintiff from suing in time.'"  *Lukovsky v. City and Cty. of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008) (quotation omitted).  Plaintiff was aware that Bank of America had potentially violated Section 2954.8 as early as 2011, Lusnak Dep. 112:6–12, and had discussed this issue with a lawyer from one of the law firms that currently represents him in August 2012, *id.* 27:15–28:3.  Plaintiff had no explanation for why he waited until March 2014 to file suit.  *Id.* 38:13–18.

Plaintiff's tolling argument appears to be based on a notice that Bank of America provided some mortgage customers, in which Bank of America set forth its legal position that federal law preempted Section 2954.8.  But Plaintiff testified that he never received this notice.  *Id.* 65:7–67:21.  He also kept and reviewed a copy of his closing documents to confirm that he never received this notice.[13]  *Id.* 67:6–16, 71:3–21.  Plaintiff cannot "expand the scope of [his] proposed Class by invoking a tolling doctrine that does not have any applicability to [his] own claims."  *Munoz v. PHH Corp.*, 2013 WL 2146925, at *21 (E.D. Cal. May 15, 2013).  And accounting for equitable estoppel creates another individualized issue that defeats class certification.  *E.g.*, *Sprague v. General Motors Corp.*, 133 F.3d 388, 398 (6th Cir. 1998) (en banc) ("estoppel claims are typically inappropriate for class treatment" because they require "individualized proof").

## CONCLUSION

The Court should deny the motion for class certification.

---

[13] Even if Plaintiff had received the notice, "a misrepresentation of law, as opposed to fact, does not justify equitable estoppel."  *Lundgren v. Bank of America, N.A.*, 2012 WL 929706, *5 (N.D. Cal. Mar. 19, 2012).

DATED:  September 27, 2019

Respectfully submitted,

By:   */s/ Ashley Simonsen*

MARK W. MOSIER
ANDREW SOUKUP
ASHLEY SIMONSEN
COVINGTON & BURLING LLP

DAVID L. PERMUT
GOODWIN PROCTER LLP

*Attorneys for Defendant*
BANK OF AMERICA, N.A.

BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CLASS CERTIFICATION / Civil Case No.
2:14-cv-01855-GW

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2019, I caused a true and correct copy of Defendant Bank of America, N.A.'s Memorandum of Points and Authorities to be filed through the Court's CM/ECF system, which caused a true and correct copy of the same to be served on all counsel registered to receive electronic notices.

DATED:  September 27, 2019        By:   */s/ Ashley Simonsen*
                                        ASHLEY SIMONSEN
                                        COVINGTON & BURLING LLP

                                        *Attorney for Defendant*
                                        BANK OF AMERICA, N.A.