Michael W. Sobol (State Bar No. 194857)
msobol@lchb.com
Roger N. Heller (State Bar No. 215348)
rheller@lchb.com
Avery S. Halfon (admitted *pro hac vice*)
ahalfon@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3336
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Richard D. McCune (State Bar No. 132124)
rdm@mccunewright.com
Elaine S. Kusel (admitted *pro hac vice*)
esk@mccunewright.com
MCCUNE WRIGHT AREVALO, LLP
3281 E. Guasti Road, Suite 100
Ontario, CA 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Attorneys for Plaintiff and Proposed Settlement Class Counsel*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD M. LUSNAK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 2:14-cv-01855-GW(GJSx)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(E)**<br><br>Date:  January 30, 2020<br>Time: 8:30 a.m.<br>Judge: Hon. George H. Wu |

TO THE ABOVE-NAMED COURT AND TO THE PARTIES AND THEIR

ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 30, 2020, at 8:30 a.m., at 350 West

1st Street, Los Angeles, CA, 90012, Courtroom 9D, 9th Floor, Plaintiff Donald M.

Lusnak ("Plaintiff") will and hereby does move the Court, under Federal Rule of

Civil Procedure 23, for an Order:

     a.     Granting preliminary approval of the proposed Class Action Settlement Agreement and Release ("Settlement")[1] entered into between the parties;

     b.     Certifying, for settlement purposes, the Settlement Class as defined in the Settlement, pursuant to Fed. R. Civ. P. 23(a) and (b)(3);

     c.     Appointing Plaintiff as Settlement Class Representative representing the Settlement Class;

     d.     Appointing McCune Wright Arevalo, LLP (Richard D. McCune and Elaine Kusel) and Lieff Cabraser Heimann & Bernstein, LLP (Roger N. Heller and Michael W. Sobol) as Settlement Class Counsel for the Settlement Class;

     e.     Approving the Parties' proposed Notice program, including the proposed forms of notice, and directing that notice be disseminated pursuant to such Notice program;

     f.     Appointing Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Settlement Administrator, and directing Epiq to carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement;

     g.     Appointing Arthur Olsen of Cassis Technology, LLC as Calculation Advisor, and directing Mr. Olsen to carry out the duties and responsibilities of the Calculation Advisor specified in the Settlement;

     h.     Setting deadlines for Settlement Class Members to request exclusion from the Settlement Class and to object to the Settlement;

     i.     Staying all non-Settlement related proceedings in this lawsuit pending final approval of the Settlement; and

     j.     Setting a Final Approval Hearing and certain other dates in connection with the final approval of the Settlement.

     This motion is based on this notice of motion and motion, the accompanying

---

[1] The Settlement is being filed herewith as Exhibit 1 to the accompanying Joint Declaration of Roger N. Heller and Richard D. McCune ("Joint Decl.").

1   memorandum of points and authorities, the Settlement Agreement, including all

2   exhibits thereto, the Joint Declaration of Roger N. Heller and Richard D. McCune

3   filed herewith, the declaration of Cameron R. Azari, Epiq Class Action & Claims

4   Solutions, Inc. filed herewith, the argument of counsel, all papers and records on

5   file in this matter, and such other matters as the Court may consider.

6        As discussed in the accompanying memorandum of points and authorities,

7   the requested relief is appropriate because the Settlement satisfies the standards for

8   preliminary approval and for direction of class notice under Fed. R. Civ. P.

9   23(e)(1).

10       This motion is made following the conference of counsel pursuant to Local

11   Rule 7-3, which took place on December 19, 2019.  Defendant Bank of America,

12   N.A. does not oppose this motion.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

Dated:  December 27, 2019

Respectfully submitted,

2

3

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP

4

5

By:    /s/ *Roger N. Heller*

6

Roger N. Heller

7

Michael W. Sobol (State Bar No. 194857)

8

msobol@lchb.com
Roger N. Heller (State Bar No. 215348)

9

rheller@lchb.com
Avery S. Halfon (admitted pro hac vice)

10

ahalfon@lchb.com

11

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP

12

275 Battery Street, 29th Floor

13

San Francisco, CA 94111-3336
Telephone: (415) 956-1000

14

Facsimile: (415) 956-1008

15

16

Richard D. McCune (State Bar No. 132124)

17

rdm@mccunewright.com
Elaine S. Kusel (admitted pro hac vice)

18

esk@mccunewright.com
MCCUNE WRIGHT AREVALO, LLP

19

3281 E. Guasti Road, Suite 100

20

Ontario, CA 91761
Telephone: (909) 557-1250

21

Facsimile: (909) 557-1275

22

23

*Attorneys for Plaintiff and Proposed
Settlement Class Counsel*

24

25

26

27

28

Michael W. Sobol (State Bar No. 194857)
msobol@lchb.com
Roger N. Heller (State Bar No. 215348)
rheller@lchb.com
Avery S. Halfon (admitted *pro hac vice*)
ahalfon@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3336
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Richard D. McCune (State Bar No. 132124)
rdm@mccunewright.com
Elaine S. Kusel (admitted pro hac vice)
esk@mccunewright.com
MCCUNE WRIGHT AREVALO, LLP
3281 E. Guasti Road, Suite 100
Ontario, CA 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Attorneys for Plaintiff and Proposed Settlement
Class Counsel*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD M. LUSNAK, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.; and DOES 1 through 10, inclusive,<br><br>        Defendant. | Case No. 2:14-cv-01855-GW(GJSx)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(E)**<br><br>Date:  January 30, 2020<br>Time: 8:30 a.m.<br>Judge: Hon. George H. Wu |

1870769.6

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

I. Procedural History .................................................................................. 3

II. Settlement Class Counsel's Investigation and Discovery ....................... 4

III. Settlement Negotiations ......................................................................... 5

THE SETTLEMENT TERMS ............................................................................. 6

I. The Settlement Class .............................................................................. 6

II. $35 Million Non-Reversionary Common Settlement Fund .................... 6

    A. Direct Payments to Settlement Class Members .............................. 7

    B. Notice and Administration Costs .................................................... 9

    C. Attorneys' Fees and Expenses; Service Award .............................. 9

III. The Notice Program ............................................................................... 9

    A. Direct Notice to Settlement Class Members ................................. 10

    B. Publication Notice ........................................................................ 11

    C. Settlement Website and Toll-Free Number .................................. 11

    D. Opt-Out and Objection Procedures .............................................. 11

IV. Release ................................................................................................. 12

V. Bank of America's Change in Practice ................................................. 12

ARGUMENT .................................................................................................... 12

I. Overview of the Class Settlement Approval Process ............................ 12

II. The Proposed Settlement Meets the Standards for Preliminary Settlement Approval. ............................................................................ 13

    A. The Settlement is the Product of Good Faith, Informed, Arm's-Length Negotiations. ..................................................................... 14

    B. Plaintiff and Settlement Class Counsel Have and Continue to Zealously Represent the Class. ..................................................... 15

    C. The Settlement Represents a Strong Result for the Settlement Class, Particularly Given the Risks and Likely Duration of Ongoing Litigation. ..................................................................... 16

    D. The Settlement Treats Settlement Class Members Equitably ......... 18

    E. Settlement Class Counsel Will Seek Reasonable Attorneys' Fees and Reimbursement of Their Litigation Expenses. ......................... 19

III. The Court Should Provisionally Certify the Settlement Class .............. 19

    A. The Requirements of Rule 23(a) are Satisfied. ............................ 19

        1. Numerosity (Rule 23(a)(1)) .............................................. 19

        2. Commonality (Rule 23(a)(2)) ........................................... 20

        3. Typicality (Rule 23(a)(3)) ................................................. 20

1

**TABLE OF CONTENTS**
**(continued)**

Page

4.    Adequacy of Representation (Rule 23(a)(4)) ........................... 20

B.    The Requirements of Rule 23(b)(3) Are Satisfied. ............................. 21

C.    The Proposed Notice Program Will Provide The Best Notice
Practicable and Should Be Approved. ................................................. 23

D.    The Court Should Schedule a Final Approval Hearing and
Related Dates. .................................................................................... 24

CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................22

*Ayala v. U.S Xpress Enterprises, Inc.*,
  No. EDCV 16-137-GW(KKX), 2017 WL 3328087 (C.D. Cal. July 27, 2017)...20

*Butler v. Sears, Roebuck & Co.*,
  702 F.3d 359 (7th Cir. 2012) ...............................................22

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ...............................................13

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ..............................................14

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)................................................................23

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012) .............................................21

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................13, 14

*In re Banc of California Sec. Litig.*,
  326 F.R.D. 640 (C.D. Cal. 2018)..........................................19

*In re First Alliance Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) ...............................................22

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) .............................................13

*Jimenez v. Allstate Ins. Co.*,
  765 F.3d 1161 (9th Cir. 2014) .............................................20

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) .............................................23

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ...............................................20

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016)...........................................................22

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)................................................................20

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) .............................................22

## STATUTES

Cal. Civ. Code § 2954.8(a) ...............................................3, 20

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(a) ................................................................2

1870769.6

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3   Fed. R. Civ. P. 23(a)(1) ...................................................................................... 19

4   Fed. R. Civ. P. 23(b)(2) ....................................................................................... 6

    Fed. R. Civ. P. 23(b)(3) ..........................................................................2, 21, 22

5   Fed. R. Civ. P. 23(c)(2)(B) .................................................................................23

6   Fed. R. Civ. P. 23(e)(1) ...........................................................................3, 13, 23

7   Fed. R. Civ. P. 23(e)(2) .....................................................................................13

    Fed. R. Civ. P. 23(e)(2)(A) ...............................................................................15

8   Fed. R. Civ. P. 23(e)(2)(B) ...............................................................................14

9   Fed. R. Civ. P. 23(e)(2)(C)(iii) .........................................................................19

10  Fed. R. Civ. P. 23(e)(2)(D) ...............................................................................18

    Fed. R. Civ. P. 23(h) .........................................................................................19

11

12

**RULES**

5 *Moore's Federal Practice—Civil*
13    § 23.22 (2016) ...............................................................................................19

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

After more than five years of litigation, the parties have reached an agreement to settle this case on a class basis.  Pursuant to the terms of the Settlement,[2] Defendant Bank of America, N.A. ("Bank of America") will pay thirty five million dollars ($35 million) to create a non-reversionary common settlement fund.  Settlement Class Members will be sent settlement checks directly, without the need to file a claim or take any other action.  The $35 million settlement amount represents approximately 75% of the alleged unpaid escrow interest for the Settlement Class (a California-only class), a very strong result.  In addition, in light of the Ninth Circuit's ruling last year in this case, Bank of America has changed its policies and practices—specifically, beginning in 2019, it began paying escrow interest for all residential mortgage escrow accounts in California.

The Settlement presented for the Court's consideration is absolutely fair, reasonable, and adequate, and warrants preliminary approval under applicable standards and the circumstances of this case.  It is the product of hard-fought, arms-length negotiations between the parties through an experienced and well-respected mediator, Eric Green of Resolutions LLC.  It also follows years of hard-fought litigation—including a Ninth Circuit appeal and petitions for en banc and certiorari review regarding federal preemption, and a fully briefed motion for class certification—as well as substantial discovery conducted by the parties.  In negotiating the Settlement, the parties and their counsel were thus well informed about the issues, the relative strengths and weaknesses of their respective positions, and about the risks faced by each side of continued litigation.

The Settlement also provides for a robust class Notice program that includes direct notice to Settlement Class Members by mail and email, publication notice, and the establishment of a dedicated, case-specific settlement website and toll-free

---

[2] The Settlement is being filed herewith as Exhibit 1 to the accompanying Joint Declaration of Roger N. Heller and Richard D. McCune ("Joint Decl.").

number where Settlement Class Members can obtain additional information.

Plaintiff and his undersigned counsel believe the Settlement to be in the best interests of the Settlement Class Members and seek to begin the Court approval process that is required for all class action settlements.  Plaintiff therefore respectfully requests that the Court review the Settlement and the other accompanying papers, and do the following:

(a)    Grant preliminary approval of the proposed Settlement;

(b)    Certify, for settlement purposes, the Settlement Class as defined in the Settlement, pursuant to Fed. R. Civ. P. 23(a) and (b)(3);

(c)    Appoint Plaintiff as Settlement Class Representative representing the Settlement Class;

(d)    Appoint McCune Wright Arevalo, LLP (Richard D. McCune and Elaine Kusel) and Lieff Cabraser Heimann & Bernstein, LLP (Roger N. Heller and Michael W. Sobol) as Settlement Class Counsel for the Settlement Class;

(e)    Approve the Parties' proposed Notice program, including the proposed forms of notice, and direct that notice be disseminated pursuant to such Notice program;

(f)    Appoint Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Settlement Administrator, and direct Epiq to carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement;

(g)    Appoint Arthur Olsen of Cassis Technology, LLC as Calculation Advisor, and direct Mr. Olsen to carry out the duties and responsibilities of the Calculation Advisor specified in the Settlement;

(h)    Set deadlines for Settlement Class Members to request exclusion from the Settlement Class and to object to the Settlement;

(i)    Stay all non-Settlement related proceedings in this lawsuit pending final approval of the Settlement; and

(j)    Set a Final Approval Hearing and certain other dates in connection

with the final approval of the Settlement, as set forth herein.

## BACKGROUND

### I.  Procedural History

Plaintiff filed this California-only putative class action on May 12, 2014 and filed a First Amended Complaint on June 27, 2014, challenging Bank of America's alleged failure to pay Plaintiff and a putative class of California Bank of America customers interest on the balances in their mortgage escrow accounts in accordance with California Civil Code § 2954.8(a).  (Dkt. 1, 22.)

On July 31, 2014, Bank of America filed a motion to dismiss the case based on, *inter alia*, its argument that the California statute is preempted by federal law. (Dkt. 26.)  On October 29, 2014, the Hon. George H. King, (Ret.) granted Bank of America's motion to dismiss and entered judgment for Bank of America.  (Dkt. 33, 34.)  Plaintiff appealed to the Ninth Circuit.

After full briefing on Plaintiff's appeal, oral argument on the appeal was heard by the Ninth Circuit panel on November 7, 2016.  On March 2, 2018, the Ninth Circuit issued an opinion reversing the dismissal of the case and holding that California Civil Code § 2954.8(a) was not preempted.  (Dkt. 40.)  After the panel issued its opinion, Bank of America filed a petition for rehearing en banc. (Appeal Dkt. 40-1.)  The Office of the Comptroller of the Currency ("OCC") and certain trade groups and organizations filed amicus briefs in support of en banc review (Appeal Dkt. 43, 46.)  On May 16, 2018, the Ninth Circuit denied Bank of America's en banc petition.

On May 22, 2018, Bank of America moved to stay issuance of the mandate pending its forthcoming petition to the U.S. Supreme Court for certiorari review. Plaintiff opposed the motion to stay.  On June 6, 2018, the Ninth Circuit granted Bank of America's motion to stay the mandate (Appeal Dkt. 53-56.)  On August 14, 2018, Bank of America filed a petition for certiorari review.  Plaintiff filed an opposition, and Bank of America filed a reply.  On November 19, 2018, the

1   U.S. Supreme Court denied certiorari review and the mandate issued, returning

2   jurisdiction to this Court. (Dkt. 47.)

3        On November 21, 2018, this case was reassigned to this Court, in light of

4   Judge King's retirement.  (Dk. 48.)  On December 21, 2018, Bank of America filed

5   its Answer (Dkt. 57), after which the parties conducted significant discovery over

6   the course of the next several months, as summarized below.

7        On August 8, 2019, Plaintiff filed his motion for class certification.  (Dkt.

8   76.)  On September 27, 2019, Bank of America filed its opposition to class

9   certification (Dkt. 84), and also filed two additional motions—a motion for

10  summary judgment and a motion to stay the case pending the result in another case

11  before the Ninth Circuit.  (Dkt. 83, 85.)  On October 24 and 25, 2019, Plaintiff filed

12  his reply in support of class certification and filed oppositions to Bank of America's

13  summary judgment and stay motions.  (Dkt. 94, 95, 102-1.)  The parties' respective

14  filings in connection with the class certification and other motions were voluminous

15  and included numerous declarations, deposition excerpts, and supporting

16  documents.  Moreover, each party designated experts and submitted expert reports

17  from their respective experts (and, for Plaintiff's expert, a supplemental report),

18  both of whom were deposed.  With the class certification motion fully briefed and

19  the hearing on the motions pending, through the mediation efforts described below,

20  the parties reached an agreement to resolve this case on a class-wide basis.

21  **II.    <u>Settlement Class Counsel's Investigation and Discovery</u>**

22       The Settlement in this case was negotiated by counsel who were well-

23  informed about the issues and litigation risks as a result of their substantial

24  investigation and discovery efforts.  Prior to filing suit, and continuing through the

25  course of the litigation, proposed Settlement Class Counsel conducted an extensive

26  investigation into the factual and legal issues raised in this litigation.  These

27  investigative efforts have included analyzing Bank of America's relevant practices

28  regarding the establishment and maintenance of escrow accounts and the payment

1   of escrow interest, investigating the impact of the Dodd-Frank Act on such

2   practices and on the practices of other lenders in California, identifying potential

3   fact witnesses, and speaking with borrowers about their experiences.  Proposed

4   Settlement Class Counsel also thoroughly researched and analyzed the legal issues

5   regarding the claims pled and Bank of America's defenses and potential defenses,

6   including but not limited to conducting extensive research throughout the course of

7   the proceedings on the issue of federal preemption.  Joint Decl., ¶ 3.

8        Moreover, the parties have engaged in extensive discovery, making them

9   well-informed about the relative strengths and weaknesses of their respective

10  positions, and providing them with information needed to negotiate the proposed

11  Settlement.  Among other things, proposed Settlement Class Counsel deposed three

12  pertinent Bank of America employee witnesses about the issues in this case

13  (including two Rule 30(b)(6) corporate designees), reviewed and analyzed

14  approximately 25,000 pages of pertinent documents and data produced by Bank of

15  America,[3] and propounded and responded to numerous written discovery requests.

16  Moreover, Plaintiff was deposed by Bank of America's counsel, and the parties

17  deposed each other's designated experts.  Further, the parties held multiple meet

18  and confer sessions regarding, *inter alia*, the scope and details of Bank of

19  America's electronic document search, the nature and scope of the class member

20  loan and transactional data to be produced by Bank of America, and to resolve

21  various discovery disputes and potential disputes without the need for Court

22  intervention.  Joint Decl., ¶ 4.

23  **III.   <u>Settlement Negotiations</u>**

24       The Settlement here is the product of hard-fought, arms-length negotiations

25  between the parties.  On October 28, 2019, with Plaintiff's class certification

26  _____

27  [3] Some of the files were produced by Bank of America in native format.  If those
    native files had been produced in pdf format, the total number of pages produced
28  would have been significantly greater than 25,000 pages.

1   motion fully briefed and the hearing on that motion scheduled to occur on

2   November 14, 2019, the parties participated in a full day mediation session with

3   Eric Green of Resolutions LLC.  Through arms-length negotiations, through Prof.

4   Green, the parties reached an agreement in principle on the terms of a settlement.

5   The parties did not discuss the issue of Settlement Class Counsel's attorneys' fees

6   and expenses as part of the negotiations (other than that any amount awarded would

7   be paid from the common settlement fund).  Since reaching an agreement in

8   principle, the parties have worked diligently to craft the Settlement Agreement and

9   related papers, including the Notice program, working together with the proposed

10  Settlement Administrator.  Joint Decl., ¶¶ 11-12.

11  ## THE SETTLEMENT TERMS

12          The full Settlement terms are set forth in the Settlement Agreement, which is

13  attached as Exhibit 1 to the accompanying Joint Decl.  The following is a summary

14  of the Settlement terms.

15  **I.      The Settlement Class**

16          Plaintiff seeks provisional certification under Rule 23(b)(3), for settlement

17  purposes only, of a "Settlement Class," defined as:

18  All mortgage loan customers of Bank of America—including any
19  customers whose loans were originated by Bank of America, whose loans
    Bank of America later acquired an ownership interest in, or whose loans
20  Bank of America serviced—whose mortgage loan is for a one- to four-
    family residence located in California, and who paid Bank of America
21  money in advance for payment of taxes and assessments on the property,
    for insurance, or for other purposes relating to the property, and did not
22  receive at least 2 percent simple interest per annum on the amounts so
    held by Bank of America from July 1, 2008 to December 31, 2018.
23  "Bank of America" as used in this definition includes Bank of America
    Corp., Bank of America, N.A., and their subsidiaries or predecessors.

24  BofA does not oppose certification of the above Settlement Class, for settlement

25  purposes only.  (Settlement, § 3.1)

26  **II.     $35 Million Non-Reversionary Common Settlement Fund**

27          Under the Settlement, Bank of America will pay thirty five million dollars

28  ($35 million) to establish a non-reversionary common settlement fund (the

"Settlement Consideration").  As detailed below, the common settlement fund will be used to pay:  the settlement payments to Settlement Class Members, the costs of Notice and other costs of the Settlement Administrator, and any attorneys' fees and expenses and any Plaintiff service award granted by the Court.  (Settlement, § 3.2)

### A.      Direct Payments to Settlement Class Members

The entirety of the Net Settlement Amount—i.e., the $35 million Settlement Consideration, less:  notice and administration costs, Court-awarded attorneys' fees and expenses for Settlement Class Counsel and any Plaintiff service award—will be distributed to the Settlement Class directly, via mailed checks, without the need for Settlement Class Members to submit claims.  The full Net Settlement Amount will be divided among the mortgage loans in the Settlement Class in amounts based on the unpaid escrow interest each of them is allegedly owed for the settlement class period, July 1, 2008 through December 31, 2018.  Specifically, each loan in the Settlement Class will receive: (a) a minimum payment of $5.00; plus (b) a portion of the remaining settlement payment funds—i.e., most of the funds (the Net Settlement Amount minus the minimum payments)—which will be allocated among the loans in the Settlement Class (on top of the minimum payment) in amounts directly proportionate to the alleged unpaid escrow interest for each loan.[4]

To that end, the Calculation Advisor will utilize the class-wide transactional

---

[4] Based on the data produced by Bank of America in the litigation (which covered January 1, 2010 through December 31, 2018—i.e., most of the settlement class period) and reasonable assumptions about the data for the additional 18 months at the start of the settlement class period (i.e., July 1, 2008 through December 31, 2009), the estimated total number of mortgage loans within the Settlement Class definition is approximately 800,000 to 850,000 loans and average alleged damages (i.e., unpaid interest) per loan is approximately $55.  It is currently projected that the average settlement payment check will be approximately $30, based on the Settlement Administrator's estimate of administrative costs (Azari Decl., ¶ 23) and assuming the Court awarded attorneys' fees and costs of 25% of the fund.  Updated numbers will be available after the Calculation Advisor receives the July 2008-December 2009 data and performs the calculations in connection with preparing the Preliminary Settlement Class Member List.  The class notices will be updated before dissemination to include information about the estimated average payment.

data and mortgage loan data provided by Bank of America to calculate the unpaid escrow interest and the settlement payment amount for each loan in the Settlement Class.[5]  (Settlement, § 3.4)

Within 45 days after the Effective Date (following the payment amount calculations and Bank of America's provision of updated mailing address information for current customers), the Settlement Administrator will mail the settlement payments to the Settlement Class Members.   The settlement checks will be valid for 180 days.  For any checks that are returned undeliverable with forwarding address information, the Settlement Administrator will re-mail the check to the new address indicated.  For any checks that are returned undeliverable without forwarding address information, the Settlement Administrator will conduct a skip-trace to try to identify an updated address and will re-mail the check if an updated address is identified.  (Settlement, §§ 3.4, 3.5)

For any checks that remain uncashed or are deemed undeliverable by the Settlement Administrator one year after the checks are initially mailed, such residual funds will be treated as unclaimed property of the corresponding Settlement Class Members (i.e., of those who have not negotiated their checks), subject to applicable state unclaimed property procedures, pursuant to which the funds will remain available for the Settlement Class Members in question to claim.[6]

---

[5] The proposed Calculation Advisor, Arthur Olsen, has extensive experience utilizing bank data (including Bank of America data) to perform damages and settlement payment calculations, and is well qualified to serve in the role of Calculation Advisor here.  Mr. Olsen's qualifications are summarized in the expert report that he submitted in connection with Plaintiff's class certification motion. *See* Dkt. 76-7, ¶¶ 3-8, Exs. A-B.

[6] Any additional administrative costs associated with this residual process will be paid from the residual funds, and will reduce *pro rata* the respective unclaimed property amounts for the Settlement Class Members with uncashed or undeliverable checks.  (Settlement, § 3.5(c))  The unclaimed property process and timing vary by state.  In California, where most Settlement Class Members are expected to reside, following a "dormancy period," during which the funds would be claimable from the Settlement Administrator, and after a "due diligence" notice is sent to the individuals in question, the funds that remain unclaimed, along with the

*Footnote continued on next page*

1    (Settlement, § 3.5(c))

2        **B.    Notice and Administration Costs**

3        The fees and costs of the Settlement Administrator, in implementing the

4    Notice program, mailing the checks, and performing the other administrative tasks

5    described in the Settlement, will be paid from the Settlement Consideration.[7]

6    (Settlement, § 2.4)

7        **C.    Attorneys' Fees and Expenses; Service Award**

8        Settlement Class Counsel will apply to the Court for an award of reasonable

9    attorneys' fees and reimbursement of litigation expenses in a total amount not to

10   exceed $8,750,000 (i.e., 25% of the common settlement fund).  Settlement Class

11   Counsel will also apply for a service award for Plaintiff, of up to $10,000, to

12   compensate him for his effort and commitment on behalf of the Settlement Class in

13   this case.  Settlement Class Counsel's application for attorneys' fees, expenses, and

14   service award will be filed no later than 15 days after the Notice Date (i.e., 45 days

15   before the proposed Exclusion/Objection deadline).  Any attorneys' fees, expenses,

16   and Plaintiff service award granted by the Court will be paid from the Settlement

17   Consideration. (Settlement, §§ 3.6, 3.7)

18   **III.   The Notice Program**

19       The parties' proposed Notice program is set forth in Section 4.2 of the

20   Settlement Agreement, and will consist of the following:

21

22   _____

23   *Footnote continued from previous page*
     corresponding names, payment amounts, and last known addresses, would be sent
24   to the California State Controller's Office for deposit in the State's general fund.
     At that point, the Settlement Class Members in question will still be able to claim
25   the funds by following the state unclaimed property procedure;  in California, there
     is no time limit for submitting such claims (i.e., the funds would be available to
26   claim in perpetuity).  *See* Cal. Code Civ. Proc. §§ 1501.5, 1531;
     https://ucpi.sco.ca.gov/UCP/#.
27   [7] The proposed Settlement Administrator (Epiq) estimates that notice and
28   administration costs will be approximately $1,004,968.  *See* Azari Decl., ¶23.

## A.   Direct Notice to Settlement Class Members

Notice will be sent directly to Settlement Class Members by mail and email. No later than 30 days after entry of the Preliminary Approval Order, Bank of America will provide a Mortgage Escrow List to the Calculation Advisor, including the transactional data and mortgage loan data for the mortgages potentially within the Settlement Class definition.  No later than 50 days after entry of the Preliminary Approval Order, the Calculation Advisor will utilize such data to calculate which mortgages on the Mortgage Escrow List are within the Settlement Class definition (i.e., they did not receive at least 2% interest per annum on their escrow account balances held by Bank of America from July 1, 2008 through December 31, 2018), and will provide a list of such mortgages (the Preliminary Settlement Class Member List) to Bank of America and Settlement Class Counsel.  No later than 70 days after entry of the Preliminary Approval Order, Bank of America will provide the Settlement Administrator with the Settlement Class Member List, including the corresponding borrower names and contact information for all of the mortgages on the Preliminary Settlement Class Member List.

*Mailed Notice*:  No later than 90 days after entry of the Preliminary Approval Order (the "Notice Date"), the Settlement Administrator will send to all Settlement Class Members, via first class U.S. Mail, the Postcard Notice, substantially in the form attached as Exhibit E to the Settlement.  Before sending the Postcard Notice, the Settlement Administrator will update each Settlement Class Member's mailing address through the U.S. Postal Service National Change of Address database and use the mailing address as updated.  For Postcard Notices that are returned undeliverable with forwarding address information, the Settlement Administrator will re-send the Postcard Notice to the new address indicated within seven (7) days of receiving the returned Postcard Notice.  For Postcard Notices that are returned undeliverable without forwarding address information, the Settlement Administrator will perform a skip trace to try to identify an updated address and

will re-send the Postcard Notice if an updated address is identified.

*Email Notice*:  No later than the Notice Date, the Settlement Administrator will also send the Email Notice, substantially in the form attached as Exhibit D to the Settlement, to the Settlement Class Members who have an email address listed in the Settlement Class Member List.  (Settlement, § 4.2)

**B.**     **Publication Notice**

No later than the Notice Date, the Settlement Administrator will cause the Publication Notice, substantially in the form attached as Exhibit F to the Settlement, to be published once (no smaller than 1/4 page advertisements) in each of the following publications:  San Francisco Chronicle, Sacramento Bee, Los Angeles Times, and San Diego Union-Tribune.  (Settlement, § 4.2(c))

**C.**     **Settlement Website and Toll-Free Number**

In addition, the Settlement Administrator will establish a Settlement Website, www.EscrowInterestSettlement.com, which will contain, *inter alia*, the long-form Website Notice (substantially in the form attached as Exhibit C to the Settlement), the full Settlement Agreement, the Preliminary Approval Order, and Settlement Class Counsel's fee and cost application (after it is filed), as well as additional relevant information and documents.  The Settlement Website will be optimized for mobile device use.  The Settlement Administrator will also establish a toll-free telephone number, with message and interactive voice response (IVR) capabilities, which Settlement Class Members can refer to for information about the lawsuit and the Settlement.  The Settlement Website and toll-free number will be operational before the email and mail notices are sent, and will remain operational until at least one year after the Effective Date.  (Settlement, §§ 4.2(d)-(e))

**D.**     **Opt-Out and Objection Procedures**

Any person within the Settlement Class definition may request to be excluded from the Settlement Class by sending a signed request, including their contact information and stating their desire to be excluded, to the Settlement

1   Administrator, postmarked or delivered by the deadline proscribed by the Notice.[8]

2   (Settlement, § 4.3)   Any Settlement Class Member who does not submit a timely

3   and valid exclusion request may object to the Settlement, Settlement Class

4   Counsel's application for attorneys' fees and expenses, and/or the request for a

5   Plaintiff service award.  To be considered, an objection must be in writing, must be

6   filed with or mailed to the Court, and mailed to the Settlement Administrator, at the

7   addresses listed in the Website Notice, must be filed/postmarked by the deadline

8   stated in the Notice, and must include the information proscribed by the Website

9   Notice.  (Settlement, § 4.6)   The parties propose that the deadline for exclusion

10  requests and objections (the "Exclusion/Objection Deadline") be set sixty (60) days

11  after the Notice Date.

12  **IV.   Release**

13  In exchange for the consideration provided under the Settlement, Settlement

14  Class Members will release Bank of America and its affiliates from any claims

15  about the issues in this case.  (Settlement, § 3.8)

16  **V.    Bank of America's Change in Practice**

17  In addition to the relief that is provided in the Settlement, in light of the

18  Ninth Circuit's ruling in this case last year, Bank of America changed its policies

19  and practices regarding the payment of escrow interest.  Specifically, beginning in

20  2019, Bank of America will pay escrow interest for all residential mortgage escrow

21  accounts in California.  This will, of course, result in additional escrow interest

22  being paid to California customers.  (Settlement, Recitals ¶ 5)

23  **ARGUMENT**

24  **I.    Overview of the Class Settlement Approval Process**

25  Pursuant to Rule 23(e), a class action settlement must be approved by the

26  ─────────────

27  [8] Requests for Exclusion must be specific to individual Settlement Class Members.
    Settlement Class Members cannot request exclusion as a class or group.  Any
    Request for Exclusion from a Settlement Class Member that is a co-borrower on a
28  mortgage must be signed by all co-borrowers on that mortgage.  (Settlement, § 4.3)

1   court before it can become effective.  The process for court approval is comprised

2   of three principal steps:

3       (1)   Preliminary approval of the proposed settlement and direction to
        disseminate notice to the class, after submission to the court of a
4       written motion for preliminary approval;
        (2)   Dissemination of notice to the class; and
5       (3)   A final approval hearing, at which evidence and argument
        concerning the fairness, adequacy, and reasonableness of the
6       settlement are presented.

7       By this Motion, Plaintiff respectfully asks the Court to take the first step in

8   the approval process and enter an order preliminarily approving the Settlement and

9   directing class notice, pursuant to the parties' proposed Notice program, under Rule

10  23(e)(1).  Preliminary approval should be granted, and notice directed to the class,

11  if the Court determines that it is likely to: (i) approve the proposed settlement as

12  fair, reasonable, and adequate, after considering the factors outlined in Rule

13  23(e)(2), and (ii) certify the settlement class after the final approval hearing.  *See*

14  Fed. R. Civ. P. 23(e)(1).

15  **II.**   **The Proposed Settlement Meets the Standards for Preliminary**
        **Settlement Approval.**
16

17      In evaluating a motion for preliminary settlement approval, the court

18  conducts a preliminary assessment of the factors that will be evaluated at the final

19  settlement approval stage.  Fed. R. Civ. P. 23(e)(1).  The touchstone for the analysis

20  is whether the proposed settlement is "fair, reasonable, and adequate."  Fed. R. Civ.

21  P. 23(e)(2).  In applying the factors, the Court should consider the strong public

22  policy favoring "settlements, particularly where complex class action litigation is

23  concerned."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008);

24  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).

25      "[T]he decision to approve or reject a settlement is committed to the sound

26  discretion of the trial judge because he is exposed to the litigants and their

27  strategies, positions, and proof."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026

28  (9th Cir. 1998) (internal quotation omitted).  In exercising such discretion, the

Court should give "proper deference to the private consensual decision of the parties…[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027 (citation and quotation marks omitted). The Settlement here readily satisifies the applicable standards for preliminary approval.

### A. The Settlement is the Product of Good Faith, Informed, Arm's-Length Negotiations.

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992); *see also* Fed. R. Civ. P. 23(e)(2)(B).  The Settlement submitted for the Court's consideration here is the product of hard-fought, arms-length negotiations between the parties and their qualified and informed counsel.  The parties participated in a full-day mediation session with an experienced and well-respected mediator—Eric Green of Resolutions LLC—and were able to reach an agreement with the help of Prof. Green.  During the past several weeks, the parties have been working diligently to finalize the settlement papers and to select a proposed Settlement Administrator. Throughout these negotiations, the parties were represented by counsel experienced in the prosecution, defense and settlement of complex class actions.

Moreover, as discussed above, the Settlement is informed by Settlement Class Counsel's substantial investigation and discovery regarding the legal and factual issues in the litigation.  Before filing suit, proposed Settlement Class Counsel investigated the factual underpinnings of the alleged practices and omissions at issue and the applicable law.  Additionally, Settlement Class Counsel

1   engaged in ongoing factual investigation throughout the course of the litigation,

2   including identifying potential witnesses and speaking with borrowers about their

3   experiences.  Settlement Class Counsel also conducted extensive ongoing research

4   about the issues in this case, including but not limited to regarding federal

5   preemption.  Settlement Class Counsel also conducted substantial formal discovery,

6   including deposing three key Bank of America employees, reviewing

7   approximately 25,000 pages of documents and data produced by Bank of America,

8   propounding and responding to numerous written discovery requests, and engaging

9   in multiple meet and confers with Bank of America's counsel.  Both sides also

10  designated experts who submitted expert reports and were deposed. *See supra*

11  Background § II.

12        Further, as the Court is aware, there was significant litigation and motion

13  practice in this case, including:  Bank of America's motion to dismiss, Plaintiff's

14  appeal to the Ninth Circuit, Bank of America's en banc petition, Bank of America's

15  petition for Supreme Court certiorari review, Bank of America's motion for

16  summary judgment, Bank of America's motion to stay, and Plaintiff's motion for

17  class certification, which was fully briefed and scheduled to be heard when the

18  parties reached an agreement.  In negotiating the Settlement, the parties and their

19  counsel were significantly informed by their work in briefing these issues and by

20  the various court rulings.

21        **B.**    **Plaintiff and Settlement Class Counsel Have and Continue to**
22               **Zealously Represent the Class.**

23        Plaintiff and proposed Settlement Class Counsel have prosecuted this action

24  on behalf of the Settlement Class with vigor and dedication for more than five

25  years, in this Court and on appeal.  Fed. R. Civ. P. 23(e)(2)(A).  As detailed above,

26  Settlement Class Counsel have thoroughly investigated the factual and legal issues

27  involved, conducted extensive discovery, and engaged in considerable motions,

28  appellate, and expert practice in furtherance of prosecuting the claim here.  This

included, but was not limited to, litigating Plaintiff's appeal to the Ninth Circuit, opposing Bank of America's certiorari petition, and moving for class certification. *See supra* Background § I.  Likewise, Plaintiff has been actively engaged—he provided information, produced pertinent documents, responded to written discovery requests, had his deposition taken by Bank of America, and communicated regularly with Settlement Class Counsel up to and including evaluating and approving the proposed Settlement.  Joint Decl., ¶ 15, Exs. 4-5.

## C. <u>The Settlement Represents a Strong Result for the Settlement Class, Particularly Given the Risks and Likely Duration of Ongoing Litigation.</u>

The Settlement provides substantial monetary relief that is well-tailored to the alleged harm.  Plaintiff in this case alleges that Bank of America violated California law by failing to pay 2% interest per year on the Settlement Class Members' mortgage loan escrow balances.  The Settlement directly addresses the alleged harm by providing monetary payments for each loan in the Settlement Class, pursuant to an allocation plan that is appropriately designed to give the most compensation to the Settlement Class Members with the most alleged harm.

The $35 million settlement amount represents approximately 75% of the estimated class damages,[9] a very strong result for the Settlement Class, particularly in light of the remaining risks and the substantial delay of ongoing litigation.  As the Court is aware, Bank of America filed a vigorous opposition to class certification, wherein the Bank argued, *inter alia,* that a class trial here would be

---

[9] In connection with Plaintiff's class certification motion, Plaintiff's expert, Mr. Olsen, calculated a total of approximately $40.6 million in unpaid escrow interest for the period 2010 through 2018.  The data provided by Bank of America as of that time did not include data for 2008 or 2009, however Mr. Olsen estimated through extrapolation approximately $5.4 million in additional unpaid escrow interest for the period July 1, 2008 through December 31, 2009—i.e., for a total of approximately $46 million in estimated unpaid escrow interest (without pre-judgment interest) for the full settlement class period, July 1, 2008 through December 31, 2018.  (Dkt. 76-7, ¶¶ 18-19).  The $35 million settlement amount represents approximately 76.1% of the $46 million total estimated damages figure.

unmanageable.  Bank of America also filed a motion for summary judgment and a motion to stay this case for up to a year or more pending a Ninth Circuit decision in another case.  Bank of America has also disputed whether damages can be precisely measured on a class-wide basis.  Moreover, notwithstanding the Ninth Circuit's ruling last year, Bank of America has made it clear that it will continue to pursue its federal preemption argument, including in cases pending in other Circuits involving similar state escrow interest requirements where Bank of America hopes to create a Circuit split.  If Bank of America were to prevail on certain of these issues, it is quite possible the result could be no recovery at all for the Settlement Class.

While Plaintiff absolutely believes he can overcome these challenges, they are indicative of the risks that Plaintiff and the proposed Settlement Class would face if the litigation were to continue.  The proposed Settlement provides substantial, appropriately-tailored relief while allowing Settlement Class Members to avoid the risks of unfavorable, and in some cases dispositive (or effectively so), rulings on these and other issues.

Moreover, the method for distributing the settlement payments—direct payments via mailed checks, without the need for Settlement Class Members to submit claims—further supports the reasonableness of the Settlement.  The entirety of the Net Settlement Amount will be issued to Settlement Class Members.  No money will revert to Bank of America.

The Settlement also provides another significant benefit that would not be available if the litigation were to continue—prompt relief.  Proceeding to trial could add years to the resolution of this litigation, given the legal and factual issues raised and likelihood of additional appeals.

Further, in addition to the relief achieved via the Settlement itself, it should be noted that in light of the Ninth Circuit's ruling in this case, Bank of America changed its policies and practices regarding the payment of escrow interest.  Specifically, beginning in 2019, Bank of America will pay escrow interest for all

residential mortgage escrow accounts in California.  This will, of course, result in additional escrow interest being paid to California customers.

### D.     The Settlement Treats Settlement Class Members Equitably

The settlement benefits will be distributed pursuant to a fair and equitable allocation plan.  Fed. R. Civ. P. 23(e)(2)(D).  All Settlement Class Members will be sent a settlement check, and the settlement payments will be based on the unpaid escrow interest each of them is allegedly owed for the settlement class period, July 1, 2008 through December 31, 2018.[10]  Specifically, each loan in the Settlement Class will receive: (a) a minimum payment of $5.00; plus (b) a portion of the remaining settlement payment funds—i.e., most of the funds (the Net Settlement Amount minus the minimum payments)—which will be allocated among the loans in the Settlement Class (on top of the minimum payment) in amounts directly proportionate to the alleged unpaid escrow interest for each loan.  This allocation plan ensures that all Settlement Class Members will be sent meaningful compensation and that the most compensation will be provided to Settlement Class Members who incurred the most alleged harm.[11]  Moreover, a class representative service award, as will be requested for Plaintiff here, is commonly awarded in class actions, is well-justified under the circumstances here, and is appropriate in amount given Plaintiff's commitment and effort in the litigation.

---

[10] Bank of America began paying escrow interest for all California residential mortgage escrow accounts beginning in 2019.

[11] A significant number of Settlement Class Members will have low calculated damages amounts, including many with less than $1.  Plaintiff and Settlement Class Counsel believe it is appropriate for all borrowers who were subject to this alleged violation to receive a meaningful settlement payment, and that the proposed allocation plan—i.e., a $5 minimum payment for all Settlement Class Members, plus an allocation of most of the funds proportionate to the amounts of alleged unpaid interest for each loan—is reasonable and appropriately serves the function of ensuring all Settlement Class Members get meaningful relief and that Settlement Class Members with the most alleged damages get the highest payments.

E.    **Settlement Class Counsel Will Seek Reasonable Attorneys' Fees and Reimbursement of Their Litigation Expenses.**

Settlement Class Counsel will move the Court for an award of reasonable attorneys' fees and reimbursement of their litigation expenses.  Fed. R. Civ. P. 23(e)(2)(C)(iii).  The total amount requested will not exceed 25% of the common settlement fund.  Settlement Class Counsel will file their fee application, which will provide the supporting basis for their request, at least 45 days in advance of the Exclusion/Objection deadline, and it will be available on the Settlement Website after it is filed.  Settlement Class Members will thus have the opportunity to comment on or object under Fed. R. Civ. P. 23(h) prior to the Final Approval Hearing.  As with the payments to Settlement Class Members, any attorneys' fees and expenses awarded by the Court will be paid from the Settlement Consideration following the Effective Date of the Settlement.

III.    **The Court Should Provisionally Certify the Settlement Class.**

The Court should provisionally certify the Settlement Class for settlement purposes because the standards of Rule 23(a) and Rule 23(b)(3) are satisfied.  Bank of America does not oppose certification of the Settlement Class for settlement purposes only.

A.    **The Requirements of Rule 23(a) are Satisfied.**

1.    **Numerosity (Rule 23(a)(1))**

Rule 23(a)(1) requires that "the class is so numerous that joinder of all class members is impracticable."  Fed. R. Civ. P. 23(a)(1).  A "class of 41 or more is usually sufficiently numerous."  5 *Moore's Federal Practice—Civil* § 23.22 (2016); *see also In re Banc of California Sec. Litig.*, 326 F.R.D. 640, 646 (C.D. Cal. 2018).  Numerosity is easily satisfied here.  The Settlement Class, as defined, includes hundreds of thousands of California mortgage loans (some of which have multiple co-borrowers).

### 2.     <u>Commonality (Rule 23(a)(2))</u>

Rule 23(a)(2) requires that there be one or more questions common to the class.  Commonality "does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims."  *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).  "Even a single question of law or fact common to the members of the class will satisfy the commonality requirement."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011).  This case raises multiple common questions, including whether Bank of America failed to pay 2% interest per year on the Settlement Class Members' escrow balances and whether that violated California Civil Code § 2954.8(a). Commonality is satisfied here.

### 3.     <u>Typicality (Rule 23(a)(3))</u>

Under Rule 23(a)(3), a plaintiff's claims are "typical" if they are "reasonably coextensive with those of absent class members; they need not be substantially identical."  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted). "A claim is typical if it: (1) arises from the same event or practice or course of conduct that gives rise to the claims of other class members; and (2) is based on the same legal theory as their claims."  *Ayala v. U.S Xpress Enterprises, Inc.*, No. EDCV 16-137-GW(KKX), 2017 WL 3328087, at *12 (C.D. Cal. July 27, 2017). Typicality is satisfied here.  Plaintiff's claims and those of the Settlement Class are based on the same course of conduct and the same legal theories.  Moreover, Plaintiff and the Settlement Class Members all suffered the same alleged injury— i.e., the non-payment of escrow interest.

### 4.     <u>Adequacy of Representation (Rule 23(a)(4))</u>

Rule 23(a)(4)'s adequacy inquiry asks "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir.

2012).  Proposed Settlement Class Counsel here have extensive experience litigating and resolving class actions and other complex matters, and are well qualified to represent the Settlement Class.[12]  Since filing this case, Settlement Class Counsel have vigorously litigated this action on behalf of the Settlement Class, conducted extensive investigation and discovery, negotiated the proposed Settlement, and have and will continue to fairly and adequately protect the interests of the Settlement Class.[13]  Likewise, Plaintiff has demonstrated his commitment to the Settlement Class, including by sitting for deposition and otherwise participating in discovery, regularly communicating with his counsel about the case, and reviewing and approving the proposed Settlement.[14]  Finally, Plaintiff's and Settlement Class Counsel's interests are aligned with and are not antagonistic to the interests of the Settlement Class.  Plaintiff and the Settlement Class Members share an interest in obtaining relief from Bank of America for the alleged statutory violation.

### B.   The Requirements of Rule 23(b)(3) Are Satisfied.

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must be satisfied.  Here, Plaintiff seeks certification of the Settlement Class, for settlement purposes, under Rule 23(b)(3), which requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 136

---

[12] Joint Decl., Exs. 2-3.

[13] Joint Decl., ¶¶ 3-12.

[14] Joint Decl., ¶ 15, Ex. 4-5.

S. Ct. 1036, 1045 (2016) (citation omitted)).  At its core, "[p]redominance is a question of efficiency."  *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012).  The Ninth Circuit favors class treatment of claims stemming from a "common course of conduct," like that alleged in this case.  *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006).

Common questions predominate.  The Settlement Class Members' claims all arise under the same California law and the same alleged course of conduct.  The questions that predominate are whether Bank of America failed to pay 2%  per annum escrow interest and whether that conduct violated California Civil Code § 2954.8(a).  Moreover, under the proposed Settlement, there will not need to be a class trial, meaning there are no potential concerns about any individual issues, if any, creating trial inefficiencies.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there will be no trial.").

Fed. R. Civ. P. 23(b)(3)'s superiority inquiry calls for a comparative analysis of whether a class action is "superior to other available methods for fair and efficient adjudication of the controversy."  *Amchem*, 521 U.S. at 615; *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy.").  In considering "superiority," courts analyze: (i) class members' interest in individually controlling separate actions; (ii) the extent and nature of existing litigation by class members concerning the same claims; (iii) the desirability of concentrating the litigation in a particular forum; and (iv) any likely difficulties of managing a class action.

Class treatment is superior to other methods for the resolution of this case.  Plaintiff is unaware of any individual actions against regarding the issues raised in this case, and the size of each Settlement Class Member's individual damages

would be dwarfed by the expense of prosecuting an individual case. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017) (class action superior where the "risks, small recovery, and relatively high costs of litigation make it unlikely that plaintiffs would individually pursue their claims.") (internal quotation marks omitted). In all events, they remain free to exclude themselves from the Settlement Class if they wish to do so. Moreover, it would be far more efficient for the Court and the parties to have a single resolution (as with the proposed Settlement here), rather than multiple separate cases about the same issue.

C.   **The Proposed Notice Program Will Provide The Best Notice Practicable and Should Be Approved.**

Before a proposed class settlement may be finally approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where certification of a Rule 23(b)(3) settlement class is sought, the notice must also comply with Rule 23(c)(2)(B), which requires:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

The proposed Notice program here (Settlement, § 4.2) was designed in consultation with the proposed Settlement Administrator and meets all applicable

standards.[15]  The Notice program here includes direct notice to Settlement Class Members sent via first class U.S. Mail and email, publication notice, the establishment of a Settlement Website—where Settlement Class Members can view the full Settlement Agreement, the detailed Website Notice, and other key case documents—and the establishment of a toll-free telephone number where Settlement Class Members can get additional information.  Moreover, the proposed forms of notice (Settlement, Exs. C-F) inform Settlement Class Members, in clear and concise terms, about the nature of this case, the Settlement, and their rights, including all of the information required by Rule 23(c)(2)(B).  The Court should approve the proposed Notice program.

### D.   The Court Should Schedule a Final Approval Hearing and Related Dates.

The next steps in the settlement approval process are to notify Settlement Class Members of the proposed Settlement, allow Settlement Class Members an opportunity to exclude themselves or file comments or objections, and hold a Final Approval Hearing.  Towards those ends, the parties propose the following schedule:

| | |
|---|---|
| Last day for Bank of America to provide the Mortgage Escrow List to the Calculation Advisor | **30 days after entry of Preliminary Approval Order** |
| Last day for the Calculation Advisor to provide the Preliminary Settlement Class Member List to Bank of America and Settlement Class Counsel | **50 days after entry of Preliminary Approval Order** |
| Last day for Bank of America to provide the Settlement Class Member List to the Settlement Administrator | **70 days after entry of Preliminary Approval Order** |
| Notice Date | **90 days after entry of the Preliminary Approval Order** |
| Last day for Settlement Class Counsel to file motion for final approval of the Settlement, and motion for attorneys' fees, expenses and service award | **15 days after Notice Date** |
| Exclusion/Objection Deadline | **60 days after Notice Date** |

---

[15] *See generally* Azari Decl., filed herewith.

| Last day for the Parties to file any responses to objections, and any replies in support of motion for final settlement approval and/or Settlement Class Counsel's application for attorneys' fees, expenses and service awards | **14 days before**<br>**Final Approval Hearing** |
|---|---|
| Final Approval Hearing | **[July 27, 2020, 8:30 a.m.]**[16] |

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court do the following:

    (a)    Grant preliminary approval of the proposed Settlement;

    (b)    Certify, for settlement purposes, the Settlement Class as defined in the Settlement, pursuant to Fed. R. Civ. P. 23(a) and (b)(3);

    (c)    Appoint Plaintiff as Settlement Class Representative representing the Settlement Class;

    (d)    Appoint McCune Wright Arevalo, LLP (Richard D. McCune and Elaine Kusel) and Lieff Cabraser Heimann & Bernstein, LLP (Roger N. Heller and Michael W. Sobol) as Settlement Class Counsel for the Settlement Class;

    (e)    Approve the Parties' proposed Notice program, including the proposed forms of notice, and direct that notice be disseminated pursuant to such Notice program;

    (f)    Appoint Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Settlement Administrator, and direct Epiq to carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement;

    (g)    Appoint Arthur Olsen of Cassis Technology, LLC as Calculation Advisor, and direct Mr. Olsen to carry out the duties and responsibilities of the Calculation Advisor specified in the Settlement;

    (h)    Set deadlines for Settlement Class Members to request exclusion from the Settlement Class and to object to the Settlement;

    (i)    Stay all non-Settlement related proceedings in this lawsuit pending final approval of the Settlement; and

    (j)    Set a Final Approval Hearing and certain other dates in connection with the final approval of the Settlement, as set forth herein.

---

[16] This is the earliest date for the Final Approval Hearing, assuming the Preliminary Approval Order is entered January 30, 2020.  If the Preliminary Approval Order is entered later, the Final Approval Hearing will need to be set for a later date.

- 25 -

1

2   Dated:  December 27, 2019          Respectfully submitted,

3                                      LIEFF CABRASER HEIMANN &
                                       BERNSTEIN, LLP
4

5                                      By:   /s/ *Roger N. Heller*

6                                          Roger N. Heller

7                                      Michael W. Sobol (State Bar No. 194857)
8                                      msobol@lchb.com
                                       Roger N. Heller (State Bar No. 215348)
9                                      rheller@lchb.com
10                                     Avery S. Halfon (admitted pro hac vice)
                                       ahalfon@lchb.com
11                                     LIEFF CABRASER HEIMANN &
12                                     BERNSTEIN, LLP
                                       275 Battery Street, 29th Floor
13                                     San Francisco, CA 94111-3336
                                       Telephone: (415) 956-1000
14                                     Facsimile: (415) 956-1008
15

16                                     Richard D. McCune (State Bar No. 132124)
                                       rdm@mccunewright.com
17                                     Elaine S. Kusel (admitted pro hac vice)
18                                     esk@mccunewright.com
                                       MCCUNE WRIGHT AREVALO, LLP
19                                     3281 E. Guasti Road, Suite 100
20                                     Ontario, CA 91761
                                       Telephone: (909) 557-1250
21                                     Facsimile: (909) 557-1275
22

23                                     *Attorneys for Plaintiff and Proposed*
                                       *Settlement Class Counsel*
24

25

26

27

28